IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BRETT RAIO, PEREZ NDI, and REETIK DHAMALA, *Plaintiffs*, v. The CITY OF CHICAGO, an Illinois municipal corporation, and Chicago Police Officers MARIO L. JACKSON, NICO A. SUTOR, CARLOS R. CAMEY SANDOVAL, MICHAEL P. JOYCE, WILLIAM E. GATLIN, and MICHAEL PETRASKI in their official and individual capacities, *Defendants*. | Case No. 1:25-cv-02709<br><br>Hon. Sara L. Ellis<br><br>**JURY DEMAND** |

**FIRST AMENDED COMPLAINT**

Plaintiffs Brett Raio, Perez Ndi, and Reetik Dhamala, by and through counsel, bring this action for declaratory, compensatory, and injunctive relief in order to vindicate their constitutional and civil rights.

**STATEMENT OF THE CASE**

1. Defendants have adopted a de facto policy of arresting street preachers, regardless of evidence, simply for sharing the Gospel on the streets of Chicago. Such a policy constitutes an egregious violation of constitutional rights, unmoored from any of the actual published ordinances of Chicago.

2. Chicago ordinances, on their face, only require permits for excessively loud amplification that is louder than an average conversational level at a distance of a hundred feet. Chi., Ill., Code § 8-32-070.

3. Rather than properly enforcing this ordinance, however, Defendants cite and even arrest anyone who uses amplification without a permit, despite the fact the requirement for a permit for all amplification is expressly contradicted by law.

4. Defendants have cited and arrested Plaintiffs for conduct, i.e., amplification without a permit, that is simply not prohibited by Chicago ordinances.

5. This action is brought pursuant to 42 U.S.C. § 1983 to vindicate Plaintiffs' constitutional rights.

6. Defendants' policies and practices have deprived and will continue to deprive Plaintiffs of paramount rights and guarantees under the United States Constitution, under the color of state law.

## JURISDICTION & VENUE

7. This civil rights action raises federal questions under the United States Constitution, particularly the First, Fourth, and Fourteenth Amendments, as protected by the Civil Rights Act, 42 U.S.C. § 1983.

8. This Court has original jurisdiction over these federal claims pursuant to 28 U.S.C. §§ 1331 and 1343.

9. This Court has authority to award the requested damages pursuant to 28 U.S.C. § 1343; the requested declaratory relief pursuant to 28 U.S.C. §§ 2201–02; the requested injunctive relief pursuant to 28 U.S.C. § 1343 and Fed. R. Civ. P. 65; and costs and attorneys' fees under 42 U.S.C. § 1988.

10. This action is also brought under Article I of the Illinois Constitution and the Illinois Religious Freedom Restoration Act ("RFRA"), 775 ILCS 35/1 et seq. Because these ancillary

state law claims involve the same parties and arise from the same incident as their federal claims, this Court has supplemental jurisdiction under 28 U.S.C. § 1367.

11. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because Defendants reside in this district and division and/or all the acts described in this Complaint occurred within this district.

## THE PARTIES

12. Plaintiff Brett Raio is a full-time Gospel singer and entrepreneur based out of Maine who travels the country to evangelize in public areas.

13. Raio frequently uses amplification for his evangelization, and is well-versed on the case law regarding the use of amplification. He always carries with him a fact sheet of First Amendment law regarding the use of amplification.

14. Plaintiff Perez Ndi is a street preacher based out of Chicago, Illinois. Since immigrating to the United States from Cameroon, he has felt a religious calling to deliver religious prophecies to the public of Chicago and beyond, also traveling the country to evangelize.

15. Plaintiff Reetik Dhamala is a street preacher based out of Wheaton, Illinois. Since immigrating to the United States from Nepal, he has been an active member of a local Nepali church and assisted local street preachers.

16. Defendant City of Chicago is a municipal corporation duly incorporated under the laws of the State of Illinois and is the employer and principal of defendant police officers.

17. Defendant Mario L. Jackson is a member of the Chicago Police Department with a badge number of 18102 and participated in the arrest of Raio on December 10, 2024. He is named in his individual and official capacity.

18. Defendant Nico A. Sutor is a member of the Chicago Police Department with a badge number of 3860 and participated in the arrest of Raio on December 10, 2024. He is named in his individual and official capacity.

19. Defendant Carlos R. Camey Sandoval is a member of the Chicago Police Department with a badge number of 7055 and participated in the arrest of Raio on December 10, 2024. He is named in his individual and official capacity.

20. Defendant Michael P. Joyce is a member of the Chicago Police Department with a badge number of 6870 who participated in the arrest of Ndi and Dhamala on February 24, 2025. He is named in his individual and official capacity.

21. Defendant William E. Gatlin is a member of the Chicago Police Department with a badge number of 9376 who participated in the arrest of Ndi and Dhamala on February 24, 2025. He is named in his individual and official capacity.

22. Defendant Michael J. Petraski is a member of the Chicago Police Department with a badge number of 245 who participated in the arrest of Ndi and Dhamala on February 24, 2025. He is named in his individual and official capacity.

23. Defendants were at all times material to this Complaint acting under color of law.

**FACTUAL BACKGROUND**

24. The facts of this case stem from two separate, but related, arrests at the same location: the intersection of East Madison Street and North Michigan Street next to Millenium Park in Chicago, Illinois.

I. **The Arrest of Raio on December 10, 2024**

25. On December 10, 2024, Brett Raio, Perez Ndi, and Reetik Dhamala were at the Madison/Michigan intersection, engaged in street preaching.

26. They livestreamed their preaching on social media.

27. Plaintiffs used a microphone connected to a battery-powered speaker, owned by Ndi, to play music and amplify their voice.

28. Shortly before 11:00 am, an individual approached and heckled Plaintiffs, who then moved the speaker away from the heckler in an attempt to help appease him.

29. The individual continued heckling, so Raio explained, "This is the best we can do because we still want everyone to hear the Gospel, you know."

30. Upon information and belief, this individual called the police about their conduct.

31. A Chicago Police Department car drove up and started watching the street preachers at approximately 11:15 am.

32. Raio took his phone from his pocket to begin recording Defendants Jackson and Sutor, wearing badges of the Chicago Police Department, as they approached Plaintiffs.

33. Officer Jackson ordered Plaintiffs to lower the sound and demanded a permit.

34. In response, Raio, said, "Officer there's no permit for the First Amendment."

35. Officer Jackson then turned the speaker off, told the Plaintiffs that they needed a permit, and grabbed the speaker.

36. Ndi said, "Hey don't touch our speaker!" and went to grab his speaker, but Officer Jackson kicked the speaker hard enough to move it back about four feet before grabbing Ndi by the collar and holding his wrist, threatening Ndi with handcuffs.

37. The officers continued to question Plaintiffs as to whether they had a permit.

38. Plaintiffs made clear that they had no permit and were exercising their First Amendment right to free speech.

39. The officers placed Raio in handcuffs.

40. Plaintiffs repeatedly asked the officers to identify themselves but they did not do so.

41. As Officer Jackson put handcuffs on Raio, he stated, "You're putting me in handcuffs right now? Am I being detained?"

42. The officer replied. "Yes you are being detained, I asked you for a permit."

43. Raio asked what crime he was committing and was not given an answer.

44. Raio asked to speak with a supervisor and was not given an answer.

45. Raio asked to share information about his First Amendment rights, explaining that the Supreme Court had protected these rights in *Saia v. New York*. He was not given a response.

46. The officer told Raio "You cannot have amplified music out here."

47. When a supervising officer, Officer Sandoval, finally arrived a few minutes later, he completely ignored Raio as Raio attempted to speak with him and ordered the officers to "Yeah arrest him, do whatever you need to do."

48. At one point, an officer said, "I'm going to take you to jail because you're playing amplified music."

49. Throughout this interchange, the officers kept Raio handcuffed for over twenty minutes, despite his in no way resisting or otherwise demonstrating any threat.

50. The heckler who, Plaintiffs believe, called the police came up and yelled at Plaintiffs for their religious speech. He said: "Every time you're out here I'm going to call the police, I'm just letting you know. I'm going to keep calling and we'll play this game all fucking summer. Get a life."

51. Throughout this time, the amplitude of the sound remained low. Plaintiffs had a decibel meter with them and measured their volume after the officers left.

52. Raio crossed Michigan Avenue and measured the decibel level with a decibel meter. The decibel of their preaching was a consistent 74db, while the ambient noise of noisy downtown Chicago was between 71-85db, demonstrating that their amplified noise was lower than the ambient noise.

53. The police officers never used a decibel meter, but did mention that a citizen who called in a complaint had measured Raio's sound with a decibel meter app and determined it was "too loud," despite no decibel level being in the ordinance.

54. Instead, the officers consistently suggested that noise amplification is itself illegal.

55. Raio was given a Notice of Administrative Ordinance Violation ("ANOV") and was ordered to appear at the Chicago Department of Administrative Hearings on February 21, 2025.

56. Raio was charged with violating Chicago Municipal Code §§ 8-4-055 (Sound Emitting Devices on Public Conveyances), and 2-84-300(a) (Resisting Police Officer or Aiding Escape). Notably, the offense did not occur on a public conveyance, and the officer presumably intended to cite Raio for violating § 8-32-070 (Music and Amplified Sound).

57. The officers left the scene after serving Raio with the ANOV.

58. On February 21, 2025, counsel for Raio showed the video taken of the incident to the prosecuting attorney, who promptly dismissed both charges after viewing the video.

II. **The Arrests of Ndi and Dhamala on February 24, 2025**

59. The next business day after the charges against Raio were dismissed, February 24, 2025, Ndi and Dhamala were arrested.

60. Ndi and Dhamala were preaching at the same intersection.

61. Police officers, including Defendants Joyce and Gatlin, arrived in a police car, got out, and immediately yelled at Ndi and Dhamala to turn down the volume.

62. The officers accused Ndi and Dhamala of violating Chicago noise ordinances.

63. Ndi and Dhamala informed the officers that they had gone to court and won already in Raio's case and had a constitutional right to continue. The officers continued to order them to stop.

64. Dhamala asked the officers if they had conducted a sound reading of the volume of his speech. The officer replied, "It's not a requirement."

65. Ndi and Dhamala were handcuffed and then arrested by the police officers and taken to jail.

66. Ndi and Dhamala were both held in jail for approximately seven hours.

67. Upon release, their personal possessions, i.e., their speaker, microphone, and camera stand, were not returned.

68. Ndi and Dhamala were each charged with violating Chicago Ordinance § 8-32-070 (Music and Amplified Sound).

69. Unlike the citation of Raio, an ANOV, Ndi and Dhamala were charged criminally and received pretrial release conditions.

70. At all times relevant to this Complaint, each and all the acts alleged herein were attributed to Defendants who acted under color of a statute, regulation, custom, or usage of the State of Illinois.

71. The officers' conduct was tolerated by the practices, customs, and policies of the City of Chicago, which did nothing to correct or stop this conduct but has allowed the conduct to continue.

72. The policies and practices that led to the violation of Plaintiffs' constitutional rights remain in full force and effect.

73. Defendants have thereby shown deliberate indifference to the ongoing violation of Plaintiffs' First Amendment rights.

74. Plaintiffs are suffering irreparable harm from the policies, customs, and practices of Defendants which cannot be fully compensated by an award of money damages.

75. Plaintiffs have no adequate or speedy remedy at law to correct or redress the ongoing deprivation of Plaintiffs' rights by Defendants.

76. Unless the policies and conduct of Defendants are enjoined, Plaintiffs will continue to suffer irreparable injury.

## COUNT I

### Violation of Right to Freedom of Speech Under the First Amendment

### (42 U.S.C. § 1983)

77. Plaintiffs repeat, reallege, and incorporate by reference herein all preceding paragraphs as though fully set forth herein.

78. Pursuant to 42 U.S.C. § 1983, Plaintiffs bring this claim against Defendants for acting under color of state law to deprive them of their First Amendment right to free speech as guaranteed by the U.S. Constitution.

79. Religious and political speech are protected under the Free Speech Clause of the First Amendment to the United States Constitution and are at the very core of the rights it protects.

80. Plaintiffs were engaging in religious and political speech and intend to continue to engage in such speech on the streets of Chicago.

81. Defendants retaliated against Plaintiffs for engaging in constitutionally protected activity and for the content and viewpoint of the expressions.

82. Defendants' retaliation is part of a pattern or practice of unconstitutional conduct that is certain to continue absent any relief.

83. Plaintiffs' speech was on a public sidewalk, a traditional public forum.

84. The use of amplification has been recognized by the Supreme Court to be protected by the First Amendment.

85. Restricting speech on a sidewalk restricts speech in a traditional public forum and accordingly must be justified by the government, without reference to the content of its speech.

86. For an ordinance to constitute a valid time, place, manner ordinance it must be narrowly tailored to serve a significant governmental interest, and it must leave open ample alternative channels for communication of the information.

87. It is the unwritten policy and practice of Chicago police to cite all street preachers, regardless of whether they meet the requirements of Chi., Ill., Code § 8- 32-070 and regardless of the evidence. Such a targeted policy of enforcement based on religious practice constitutes a violation of the First Amendment.

88. While the precise scope of this unwritten Chicago policy is unclear because it has not been articulated, what is clear is that street preaching is de facto forbidden.

89. It is also clear that Chicago's policy has increased in severity, as demonstrated by the much more extreme actions on February 24, 2025, as compared to December 10, 2024, in regard to the duration of arrest, seizure of property, and change from an administrative citation to a criminal one.

90. Plaintiffs have been arrested and cited without any investigation conducted at a distance of 100 feet, as the law requires, in order to determine whether their conduct was unlawful.

91. Upon information and belief, Defendants are engaging in a targeted practice of enforcing their interpretation of the noise ordinance against only religious speakers.

92. Viewpoint discrimination strikes at the very heart of the First Amendment.

93. Viewpoint discrimination is an egregious form of content discrimination.

94. The government cannot constitutionally regulate speech when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction.

95. Discrimination against speech because of its viewpoint is presumed to be unconstitutional.

96. Defendants have discriminated on the basis of viewpoint, targeting religious viewpoints for suppression that is unjustified by the written text of the ordinance.

97. Discriminating based on viewpoint in the creation of a de facto ban on the use of amplification constitutes a violation of the First Amendment.

98. This unwritten policy impermissibly infringes on the First Amendment's protection of Plaintiffs' rights of speech and assembly without serving any compelling state interest(s).

99. This unwritten policy is impermissibly vague in that a person of common intellect, such as Plaintiffs, must necessarily guess as to what conduct it forbids, its meaning, and its application, failing to give persons fair warning as to what conduct is forbidden.

100. This unwritten policy allows Chicago Police Officers to arrest those lawfully exercising their First Amendment rights, such as Plaintiffs, by criminalizing otherwise legal, protected First Amendment conduct.

101. This unwritten policy fails to provide adequate safeguards to ensure that Chicago Police Officers do not abuse their discretion.

102. Defendants have arrested and cited Plaintiffs in the implementation of their unwritten policy, regardless of the dictates of written policy.

103. Plaintiffs continue to suffer irreparable harm because their speech has been chilled out of concern they will be arrested again if they were to use amplification to speak in public anywhere in Chicago, even though they are rightfully entitled to do so under the Constitution.

104. The acts of Defendants would chill a reasonable person from continuing to engage in the constitutionally protected activity of Plaintiffs.

## COUNT II

**Violation of Right to Free Exercise of Religion Under the First Amendment**

**(42 U.S.C. § 1983)**

105. Plaintiffs repeat, reallege, and incorporate by reference herein all preceding paragraphs as though fully set forth herein.

106. Pursuant to 42 U.S.C. § 1983, Plaintiffs bring this claim against Defendants for acting under color of state law to deprive them of their First Amendment right to free exercise of religion as guaranteed by the U.S. Constitution.

107. The First Amendment prohibits the government from impermissibly burdening the free exercise of religion.

108. Defendants' policy substantially burdens Plaintiffs' sincerely held religious beliefs and expression.

109. Defendants have no compelling government interest for burdening Plaintiffs' religious beliefs and expression.

110. Defendants' policy, and Defendants' actions in implementing that policy, constitutes a violation of the First Amendment right of Freedom of Religion.

111. The Defendants' policy, as applied against Plaintiffs, constitutes a violation of the First Amendment right to free exercise.

## COUNT III

### Violation of Right to Due Process Under the Fourteenth Amendment

### (42 U.S.C. § 1983)

112. Plaintiffs repeat, reallege, and incorporate by reference herein all preceding paragraphs as though fully set forth herein.

113. The unwritten policy in this case is impermissibly vague in that a person of common intellect must necessarily guess as to what conduct it forbids, its meaning, and differs as to its application and fails to give persons fair warning as to what conduct is forbidden.

114. Plaintiffs were cited and arrested without any notice of the purported unlawfulness of their conduct.

115. Based on the foregoing, Plaintiffs were denied their right to due process under the law grounded on the Fourteenth Amendment of the United States Constitution.

## COUNT IV

### Violation of Right to Equal Protection Under the Fourteenth Amendment

### (42 U.S.C. § 1983)

116. Plaintiffs repeat, reallege, and incorporate by reference herein all preceding paragraphs as though fully set forth herein.

117. The Equal Protection Clause commands that no state shall deny to any person within its jurisdiction the equal protection of the laws. Put simply, the state must treat all similarly situated persons alike.

118. Defendants have engaged in discrimination based on religious viewpoint, enforcing their unwritten interpretation of Chicago law uniquely against religious speakers.

119. Plaintiffs have been arrested and are likely to be subject to future enforcement on the basis of their viewpoint.

120. Compared to those who do not express a religious viewpoint, Plaintiffs have been and will continue to be selectively mistreated.

121. The selective treatment and arrest of Plaintiffs is motivated by an intention to discriminate on the basis of impermissible considerations and to punish or inhibit the exercise of First Amendment constitutional rights.

122. This unequal treatment violates the Equal Protection Clause.

## COUNT V

### Violation of the Illinois Religious Freedom Restoration Act

### (28 U.S.C. § 1367; 775 ILCS 35/15)

123. Plaintiffs repeat, reallege, and incorporate by reference herein all preceding paragraphs as though fully set forth herein.

124. Plaintiffs' religious convictions compel them to share their faith publicly.

125. Plaintiffs need voice amplification to be heard over the noise of Chicago streets. Without amplification, they would need to raise their voice to be understood by passersby, which would distort the tone of their message.

126. Plaintiffs' right to freely exercise their religion is protected by 775 ILCS 35/15, which states that "Government may not substantially burden a person's exercise of religion, even if the burden results from a rule of general applicability, unless it demonstrates that application of

the burden to the person (i) is in furtherance of a compelling governmental interest and (ii) is the least restrictive means of furthering that compelling governmental interest."

127. Ordering Plaintiffs to cease using amplification and arresting them for doing so substantially burdened their exercise of religion.

128. There was and is no compelling governmental interest in preventing Plaintiffs' use of voice amplification.

129. Ordering Plaintiffs to cease using amplification was and is not the least restrictive means of furthering any governmental interest.

130. Plaintiffs are entitled to compensation from the Defendants for the harms they have suffered and continue to suffer as a result of being intimidated, harassed, silenced, and arrested for exercising their faith.

## COUNT VI

### False Arrest in Violation of the Fourth Amendment

### (42 U.S.C. § 1983)

131. Plaintiffs repeat, reallege, and incorporate by reference herein all preceding paragraphs as though fully set forth herein.

132. This claim is limited to Plaintiffs Reetik Dhamala and Perez Ndi.

133. The police had no probable cause to arrest Plaintiffs. They had no evidence that Plaintiffs had committed any crime.

134. The police nevertheless forcibly arrested Plaintiffs and detained them at the police station for at least six hours.

135. By arresting Plaintiffs without probable cause, Defendants caused Plaintiffs physical, emotional, and economic harms for which Plaintiffs are entitled to compensation.

## COUNT VII

### Retaliatory Arrest in Violation of the First and Fourth Amendment

### (42 U.S.C. § 1983)

136. Plaintiffs repeat, reallege, and incorporate by reference herein all preceding paragraphs as though fully set forth herein.

137. This claim is limited to Plaintiffs Reetik Dhamala and Perez Ndi.

138. The First Amendment of the United States Constitution guarantees Plaintiffs' rights to publicly assemble for political purposes and to speak out on matters of public concern without fear of unjust retaliation.

139. As described more fully in the preceding paragraphs, Plaintiffs engaged in protected assembly and speech on matters of public concern through their religious activity.

140. Defendants arrested Plaintiffs for their lawful attempt to assert their rights under the Constitution and under the ordinance to use voice amplification for their speech and exercise of their religion.

141. Defendants thereby retaliated against Plaintiffs for their exercise of their First Amendment rights.

142. By falsely detaining, arresting, and imprisoning Plaintiffs without reasonable suspicion or probable cause Defendants violated Plaintiffs' Fourth Amendment rights to be free from unreasonable search and seizure under the United States Constitution, and thus violated 42 U.S.C. § 1983.

143. As a result of their arrest, Plaintiffs have suffered physical, emotional, and economic harms entitling them to compensation from Defendants.

144. Plaintiffs continue to suffer emotional and economic harms for which they are also entitled to compensation from Defendants.

## COUNT VIII

### Ordinance § 8-32-070 is Unconstitutionally Vague and Overbroad in Violation of the First and Fourteenth Amendments

### (42 U.S.C. § 1983)

145. Plaintiffs repeat, reallege, and incorporate by reference herein all preceding paragraphs as though fully set forth herein.

146. This claim is brought against Defendant City of Chicago only.

147. The Fourteenth Amendment to the United States Constitution prohibits vagueness as violating the concept of due process when a law fails to give ordinary people fair notice of the conduct it punishes or is so standardless that it invites arbitrary enforcement.

148. The First Amendment, as incorporated through the Fourteenth Amendment, of the United States Constitution prohibits laws which, by their vagueness and uncertainty "chill" the exercise of First Amendment Rights.

149. Defendants are prohibited from promulgating and employing vague and overbroad standards that allow for viewpoint discrimination of Plaintiffs' religious activity.

150. The government may not regulate speech based on policies that permit arbitrary and discriminatory enforcement.

151. The government may not regulate speech based on a policy that causes persons of common intelligence to guess at its meaning and differ as to its application.

152. Chi., Ill., Code § 8-32-070, by prohibiting amplification "that is louder than average conversational level at a distance of 100 feet or more," is unconstitutionally vague as it forces members of the community to guess as to what conduct is prohibited. The ordinance renders many

acts of constitutionally protected religious activity uncertain, as it does not specify the decibel level at which sound is prohibited.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs Brett Raio, Perez Ndi, and Reetik Dhamala respectfully request that this Court enter judgment against Defendants and provide Plaintiffs the following relief:

A. A declaratory judgment that Chi., Ill., Code § 8-32-070 constitutes an unconstitutionally vague restriction on speech or, in the alternative, a declaratory judgment that each and every Plaintiff has the right, consistent with Chi., Ill., Code § 8-32-070 to use amplification on the sidewalks in and around Millenium Park in Chicago, Illinois, without a permit;

B. A permanent injunction enjoining Chicago Police Officers MARIO L. JACKSON, NICO A. SUTOR, CARLOS R. CAMEY SANDOVAL, MICHAEL P. JOYCE, WILLIAM E. GATLIN, MICHAEL J. PETRASKI and the City of Chicago through any of its other employees, agents, or representatives from arresting Plaintiffs for their reasonable and legal use of amplification at or near Millenium Park in Chicago, Illinois;

C. Compensatory damages for violation of Plaintiffs' First, Fourth, Fifth, and Fourteenth Amendment rights and for violation of Plaintiffs' rights under the Illinois RFRA, including damages arising from his harassment, intimidating, and forcible arrest by Chicago Police Officers MARIO L. JACKSON, NICO A. SUTOR, CARLOS R. CAMEY SANDOVAL, MICHAEL P. JOYCE, WILLIAM E. GATLIN, MICHAEL J. PETRASKI and other officers of the Chicago Police Department;

D.     The return of all Plaintiff's personal property seized on February 24, 2025;

E.     Nominal damages;

F.     Plaintiffs' reasonable attorneys' fees, costs, and other costs and disbursements in this action pursuant to 42 U.S.C. § 1988;

G.     All other further relief to which Plaintiffs may be entitled.

Respectfully submitted,

| | |
|---|---|
| Charles E. Hervas<br>(ARDC No. 06185117)<br>HERVAS, CONDON & BERSANI, P.C.<br>333 W. Pierce Road, Suite 195<br>Itasca, IL 60143-3156<br>Phone: 630-773-4774<br>chervas@hcbattorneys.com | By: /s/ Liam R. Harrell<br>Liam R. Harrell**<br>Stuart J. Roth<br>Nathan J. Moelker*<br>AMERICAN CENTER FOR LAW & JUSTICE<br>201 Maryland Avenue, NE<br>Washington, D.C. 20002<br>Tel: (202) 641-9160<br>Fax: (202) 546-9309<br>Email: lharrell@aclj.org;<br>nmoelker@aclj.org<br><br>Geoffrey R. Surtees*<br>AMERICAN CENTER FOR LAW & JUSTICE<br>PO Box 60<br>New Hope, KY 40052<br>Tel: (502) 549-7020<br>Fax: (502) 549-5252<br>gsurtees@aclj.org<br><br>*Counsel for Plaintiffs*<br><br>* *Admitted to this Court's General Bar*<br>** *Admitted* Pro Hac Vice |