**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| BRETT RAIO; PEREZ NDI; and REETIK DHAMALA, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 25-cv-02709 |
| | ) | |
| CITY OF CHICAGO, an Illinois municipal corporation, and Chicago Police Officers MARIO L. JACKSON, NICO A. SUTOR, CARLOS R. CAMEY SANDOVAL, MICHAEL P. JOYCE, WILLIAM E. GATLIN, and MICHAEL PETRASKI, in their official and individual capacities, | ) | The Hon. Sara L. Ellis |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANTS'**
**RULE 12(B)(6) MOTION TO DISMISS**

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................. 1

BACKGROUND ............................................................................................................. 2

    I.     City Ordinances .................................................................................................. 2

    II.    Raio's Citation .................................................................................................... 2

        A.     Plaintiffs' Allegations ................................................................................. 2

        B.     Body Camera Footage................................................................................. 4

    III.   Ndi's and Dhamala's Arrests ............................................................................ 6

        A.     Plaintiffs' Allegations ................................................................................. 6

        B.     Body Camera Footage................................................................................. 7

LEGAL STANDARD ...................................................................................................... 8

ARGUMENT ................................................................................................................... 8

    I.     The Court Should Consider The Officers' Body Camera Footage............................... 9

    II.    Plaintiffs Fail To Allege A Basis For Municipal Liability (Counts I–IV, VI–VII)....... 11

    III.   Plaintiffs' Vagueness Claims Fail (Counts III and VIII). ........................................... 13

        A.     Plaintiffs' facial challenge to the Ordinance fails (Count VIII). ............................. 13

        B.     Plaintiffs' challenge to the City's "unwritten policy" fails (Count III). ................... 15

    IV.   Plaintiffs Fail To Allege A Violation Of Their Freedom of Speech (Count I)............. 16

    V.     Plaintiffs Fail To Allege A Free Exercise Claim (Count II). ....................................... 19

    VI.   Plaintiffs Fail To Allege An Equal Protection Claim (Count IV). .............................. 21

    VII.   Plaintiffs Fail To Allege A Fourth Amendment False Arrest Claim (Count VI). ........ 22

    VIII.   Plaintiffs Fail To Allege A Retaliatory Arrest Claim (Count VII). ............................. 24

    IX.   The Defendant Officers Are Entitled To Qualified Immunity (Counts I–IV, VI–VII) . 25

    X.     Plaintiffs Fail To State An IRFRA Claim (Count V). .................................................. 27

        A.     Count V fails because Plaintiffs allege no substantial burden. ................................. 28

B.      The Tort Immunity Act bars Plaintiffs' state-law claim for damages. ...................... 29

**CONCLUSION** ............................................................................................................ 29

**EXHIBITS**

Exhibit 1      Axon_Body_3_Video_2024-12-10_1116_X60AG7216 (Sutor).mp4

Exhibit 2      Axon_Body_3_Video_2024-12-10_1116_X60AC210M (Jackson).mp4

Exhibit 3      Axon_Body_3_Video_2025-02-24_1153_X60AC211R (Gaitlin).mp4

Exhibit 4      Axon_Body_3_Video_2025-02-24_1153_X60AC763N (Joyce).mp4

# TABLE OF AUTHORITIES

## Cases

*Affordable Recovery Hous. v. City of Blue Island*,
    860 F.3d 580 (7th Cir. 2017) ................................................................................ 28

*Am. Ass'n of Univ. Professors v. Rubio*,
    No. CV 25-10685-WGY, 2025 WL 1235084 (D. Mass. Apr. 29, 2025) ............................... 16

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ................................................................................ 8, 22

*Asquith v. City of Beaufort*,
    139 F.3d 408 (4th Cir. 1998) ................................................................................ 15

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ................................................................................ 8

*Braunfeld v. Brown*,
    366 U.S. 599 (1961) ................................................................................ 20

*Brownmark Films, LLC v. Comedy Partners*,
    682 F.3d 687 (7th Cir. 2002) ................................................................................ 10

*Calusinski v. Kruger*,
    24 F.3d 931 (7th Cir. 1994) ................................................................................ 12

*Charleston v. Bd. of Trs. of Univ. of Ill. at Chicago*,
    741 F.3d 769 (7th Cir. 2013) ................................................................................ 22

*Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*,
    508 U.S. 520 (1993) ................................................................................ 19

*City Council of L.A. v. Taxpayers for Vincent*,
    466 U.S. 789 (1984) ................................................................................ 17

*City of Chicago v. Morris*,
    264 N.E.2d 1 (Ill. 1970) ................................................................................ 24

*City of Chicago v. Wender*,
    262 N.E.2d 470 (Ill. 1970) ................................................................................ 24

*Civil Liberties for Urban Believers v. City of Chicago*,
    342 F.3d 752 (7th Cir. 2003) ................................................................................ 19, 28

*Ctr. for Individual Freedom v. Madigan*,
   697 F.3d 464 (7th Cir. 2012) ................................................................... 15

*Devenpeck v. Alford*,
   543 U.S. 146 (2004) ............................................................................. 23

*Diggs v. Snyder*,
   775 N.E.2d 40 (Ill. App. 2002) ............................................................... 28

*Doe v. Vill. of Arlington Heights*,
   782 F.3d 911 (7th Cir. 2015) ................................................................... 26

*Erznoznik v. City of Jacksonville*,
   422 U.S. 205 (1975) ............................................................................. 15

*Esco v. City of Chicago*,
   107 F.4th 673 (7th Cir. 2024) ........................................................... 10, 11

*Espinoza v. Montana Dep't of Revenue*,
   591 U.S. 464 (2020) ............................................................................. 19

*Estate of Escobedo v. Martin*,
   702 F.3d 388 (7th Cir. 2012) ................................................................... 26

*Gallagher v. O'Connor*,
   664 F. App'x 565 (7th Cir. 2016) ............................................................. 12

*Geinosky v. City of Chicago*,
   675 F.3d 743 (7th Cir. 2012) ..................................................................... 9

*Gonzalez v. City of Elgin*,
   578 F.3d 526 (7th Cir. 2009) ................................................................... 22

*Grayned v. City of Rockford*,
   408 U.S. 104 (1972) ....................................................................... 13, 14

*Groce v. Eli Lilly & Co*,
   193 F.3d 496 (7th Cir. 1999) ................................................................... 28

*Harlow v. Fitzgerald*,
   457 U.S. 800 (1982) ............................................................................. 25

*Hernandez v. Comm'n of Internal Rev.*,
   490 U.S. 680 (1989) ............................................................................. 20

*Holland v. City of Chicago*,
  643 F.3d 248 (7th Cir. 2011) ........................................................................... 23

*Holmes v. Vill. of Hoffman Estates*,
  511 F.3d 673 (7th Cir. 2007) ..................................................................... 23, 24

*Hous. Works, Inc. v. Kerik*,
  283 F.3d 471 (2d Cir. 2002) ....................................................................... 17, 18

*Howard Opera House Assoc. v. Urban Outfitters*,
  322 F.3d 125 (2d Cir. 2003) ............................................................................ 14

*Hyung Seok Koh v. Graf*, No. 11-CV-02605,
  2013 WL 5348326 (N.D. Ill. Sept. 24, 2013) .................................................. 10

*Illinois Bible Colls. Ass'n v. Anderson*,
  870 F.3d 631 (7th Cir. 2017), as amended (Oct. 5, 2017) ............................... 20

*Indep. Tr. Corp. v. Stewart Info. Servs. Corp.*,
  665 F.3d 930 (7th Cir. 2012) ............................................................................. 8

*Johnson v. McDonald*,
  No. 23 C 3200, 2025 WL 965703 (N.D. Ill. Mar. 31, 2025) .............................. 9

*Kaufman v. McCaughtry*,
  419 F.3d 678 (7th Cir. 2005) ........................................................................... 20

*Kennedy v. Bremerton Sch. Dist.*,
  597 U.S. 507 (2022) ......................................................................................... 19

*Kisela v. Hughes*,
  138 S. Ct. 1148 (2018) (per curiam) ................................................................ 26

*Kolender v. Lawson*,
  461 U.S. 352 (1983) ......................................................................................... 14

*Kovacs v. Cooper*,
  336 U.S. 77 (1949) ............................................................................... 14, 17, 20

*Lavite v. Dunstan*,
  932 F.3d 1020 (7th Cir. 2019) ......................................................................... 24

*Luczynski v. Joroan*,
  No. 23-cv-17184, 2024 WL 3106101 (N.D. Ill. June 24, 2024) ......................... 9

*Lund v. City of Rockford*,
   956 F.3d 938 (7th Cir. 2020) ................................................................ 24, 25

*Lyberger v. Snider*,
   42 F.4th 807 (7th Cir. 2022) ...................................................................... 25

*McCauley v. City of Chicago*,
   671 F.3d 611 (7th Cir. 2011) ...................................................................... 12

*Milchtein v. Milwaukee Cty.*,
   42 F.4th 814 (7th Cir. 2022) ...................................................................... 11

*Monell v. Dep't of Soc. Servs.*,
   436 U.S. 658 (1978) ............................................................................ 11, 12

*Muczynski v. Lieblick*,
   769 F. Supp. 2d 1129 (N.D. Ill. 2011) ........................................................ 22

*Mullenix v. Luna*,
   577 U.S. 7 (2015) ................................................................................ 25, 26

*Mustafa v. City of Chicago*,
   442 F.3d 544 (7th Cir. 2006) ...................................................................... 22

*Nicodemus v. City of South Bend*,
   137 F.4th 654, 659 (7th Cir. 2025) .............................................................. 18

Nieves v. Bartlett,
   587 U.S. 391 (2019) ................................................................................... 24

*Nylen v. City of Grand Rapids*,
   475 F. Supp. 3d 744, 749 (W.D. Mich. 2019) .............................................. 15

*People v. Albert*,
   611 N.E.2d 567 (Ill. App. 1993) ................................................................. 24

*People v. McLennon*,
   957 N.E.2d 1241 (Ill. App. 2011) ............................................................... 24

*People v. Perez Ndi*,
   Case No. 25120268101 (Cir. Ct. Cook Cty.) ................................................. 8

*People v. Reetik Dhamala*,
   Case No. 25120268201 (Cir. Ct. Cook Cty.) ................................................. 8

*People v. Rolfe*,
    244 N.E.3d 236 (Ill. App. 2024) ................................................................ 24

*People v. Taylor*,
    902 N.E.2d 751 (Ill. App. 2009) ................................................................ 23

*Pers. Adm'r of Massachusetts v. Feeney*,
    442 U.S. 256 (1979) .................................................................................... 21

*Petropoulos v. City of Chicago*,
    448 F. Supp. 3d 835 (N.D. Ill. 2020) ........................................................ 12

*Scott v. Harris*,
    550 U.S. 372 (2007) ...................................................................................... 9

*Separation of Hinduism from Our Sch. v. Chi. Pub. Sch. Dist. #299*,
    No. 20 C 4540, 2021 WL 2036536 (N.D. Ill. May 21, 2021) ................... 29

*Stefanow v. McFadden*,
    103 F.3d 1466 (9th Cir. 1996) ................................................................... 28

*Stokes v. City of Madison*,
    930 F.2d 1163 (7th Cir. 1991) ............................................................. 16, 18

*Tierney v. Vahle*,
    304 F.3d 734 (7th Cir. 2002) ..................................................................... 10

*Tranchita v. Callahan*,
    511 F. Supp. 3d 850 (N.D. Ill. 2021) ........................................................ 20

*United States v. Armstrong*,
    517 U.S. 456 (1996) .................................................................................... 21

*Vance v. Peters*,
    97 F.3d 987 (7th Cir. 1996) ....................................................................... 26

*Ward v. Rock Against Racism*,
    491 U.S. 781 (1989) ......................................................................... 16, 17, 20

*Waters v. City of Chicago*,
    580 F.3d 575 (7th Cir. 2009) ..................................................................... 12

*Williams v. Pollard*,
    No. 14–CV–0148, 2015 WL 5521876 (E.D. Wis. Sept. 18, 2015) ........... 16

*Wisconsin v. Yoder*,
   406 U.S. 205 (1972) ...................................................................................... 28

*World Outreach Conf. Ctr. v. City of Chicago*,
   591 F.3d 531 (7th Cir. 2009) ........................................................................ 28

*Wright v. Assoc. Ins. Cos.*,
   29 F.3d 1244 (7th Cir. 1994) ........................................................................ 29

## Statutes and Ordinances

42 U.S.C. § 2000cc ............................................................................................. 28
65 ILCS 5/1-2-1.1 .............................................................................................. 23
720 ILCS 5/26-1(a)(1) ....................................................................................... 24
745 ILCS 10/1-210 ............................................................................................ 29
745 ILCS 10/2-109 ............................................................................................ 29
745 ILCS 10/2-202 ............................................................................................ 29
745 ILCS 10/8-101(c) ........................................................................................ 29
775 ILCS 35/15 .................................................................................................. 28
Fed. R. Civ. P. 12(b)(6) ................................................................................. 8, 10
Fed. R. Evid. 201(b)(2) ....................................................................................... 9
MCC § 8-32-070 .......................................................................................... passim
MCC § 8-4-010 ........................................................................................... 23, 24

## INTRODUCTION

Plaintiffs Brett Raio, Perez Ndi, and Reetik Dhamala are "street preachers" who used a sound amplification device to evangelize on the public way in the City of Chicago. *See* Am. Compl., Dkt. 17 ¶¶ 12–15, 25, 60. The Municipal Code of Chicago ("MCC") prohibits amplified sound "louder than average conversational level at a distance of 100 feet or more . . . from the source." MCC § 8-32-070(a) (the "Ordinance"). Plaintiffs were cited after they refused to turn down their amplifier. They assert facial and as-applied claims under 42 U.S.C. § 1983 and state law against the City and six Chicago Police Department ("CPD") officers, in their official and individual capacities, challenging the Ordinance and the officers' enforcement of it.

Plaintiffs' Amended Complaint includes eight counts, alleging violations of Plaintiffs' freedom of speech (Counts I and VIII) and free exercise of religion (Count II) under the First Amendment; Plaintiffs' right to due process (Counts III and VIII) and equal protection (Count IV) under the Fourteenth Amendment; the Fourth Amendment under the theory of false arrest (Count VI); the First and Fourth Amendments under the theory of retaliatory arrest (Count VII); and the Illinois Religious Freedom Restoration Act ("IRFRA") (Count V). These claims should be dismissed in their entirety. As the officers' body camera footage shows, Plaintiffs were properly cited for violating the Ordinance. Plaintiffs also allege no basis for municipal liability, fail to plead plausible claims, and cannot overcome the individual defendant officers' qualified immunity. They identify no substantial burden on their religious exercise, as IRFRA claims require, and the Illinois Tort Immunity Act bars their state-law damages claim.

# BACKGROUND

## I.  City Ordinances

The Ordinance states in relevant part:

(a) No person on the public way shall employ any device or instrument that creates or amplifies sound, including but not limited to any . . . amplifier . . . , that is louder than average conversational level at a distance of 100 feet or more, measured vertically or horizontally, from the source.

(b) [omitted]

(c) The limitations imposed in this section do not apply between the hours of 8:00 A.M. and 10:00 P.M. to a person participating in: (1) a public assembly, as that term is defined in Section 10-8-334; or (2) a parade, athletic event, or outdoor special event, as defined in Sections 10-8-330 , 10-8-332 , or 10-8-335 of this Code; provided that a permit has been issued for the parade, athletic event or outdoor special event, if required, and the person is in compliance with the permit. . . .

MCC § 8-32-070(a), (c). Thus, a person may amplify sound "louder than average conversational level at a distance of 100 feet or more . . . from the source," *id.* § -070(a), only as part of a "public assembly" or permitted event, *id.* § -070(c). "Average conversational level" means "a level at which normal, unamplified speech is clearly and distinctly audible above ambient noise level." *Id.* § -020. "Ambient noise level" means "the sound level at a given location that exists as a result of the combined contribution in that location of all sound sources, excluding the contribution of a source or sources under investigation for violation of this Code." *Id.*

## II.  Raio's Citation

### A.  Plaintiffs' Allegations

Plaintiffs allege that on December 10, 2024, they were preaching at the intersection of Madison and Michigan in Chicago while live streaming to their social media accounts. Am. Compl. ¶¶ 25–26. Plaintiffs used "a microphone connected to a battery-powered speaker" to amplify their voice and music. *Id.* ¶ 27. They allege that a complainant called the police about

the noise. *Id.* ¶ 30. At approximately 11:15 a.m., a CPD car approached Plaintiffs and "started watching" them. *Id.* ¶ 31. Defendant Officers Jackson and Sutor approached Plaintiffs, and Raio began recording the officers with his phone. *Id.* ¶ 32. Officer Jackson ordered Plaintiffs to lower their sound and asked whether they had a permit. *Id.* ¶ 33. Raio responded, "there's no permit for the First Amendment." *Id.* ¶ 34. Officer Jackson turned off the speaker, advising Plaintiffs that they needed a permit for such activity. *Id.* ¶ 35. Ndi told the officers not to take their speaker and attempted to grab it. *Id.* ¶ 36. Officer Jackson then restrained Ndi. *Id.* The officers again questioned whether Plaintiffs had a permit for their activity, and Plaintiffs responded that they did not. *Id.* ¶¶ 37–38. The officers advised Plaintiffs that they had received a complaint from a citizen who had measured Raio's sound with a decibel meter app and concluded that it was too loud. *Id.* ¶ 53. The officers did not use a decibel meter themselves. *Id.*

Plaintiffs allege that Officer Jackson handcuffed Raio, advising him that he was being detained because he failed to provide a permit. *Id.* ¶ 42. The officers allegedly told Raio that he could not amplify his music and would be taken to jail for doing so. *Id.* ¶¶ 43, 46, 48, 54. Plaintiffs allege that Raio was handcuffed for over twenty minutes "despite his in no way resisting or otherwise demonstrating any threat." *Id.* ¶ 49. Officer Sandoval arrived a few minutes later and told the other officers that they could arrest Raio if necessary. *Id.* ¶ 47. Plaintiffs allege that Officer Sandoval did not engage with Raio. *Id.* Raio was issued an Administrative Notice of Ordinance Violation ("ANOV") that scheduled him to appear at the Chicago Department of Administrative Hearings on February 21, 2025. He was charged with violating MCC § 8-4-055 (Sound Emitting Devices on Public Conveyances) and § 2-84-300(a) (Resisting Police Officer or Aiding Escape). *Id.* ¶ 56. These charges were dismissed. *Id.* ¶ 58.

Plaintiffs allege that throughout this encounter "the amplitude of the sound remained low[,]" which they confirmed with a decibel meter after the officers left. *Id.* ¶ 51. Plaintiffs allege that they measured the decibel level of their amplified preaching as "a consistent 74db," while "the ambient noise of noisy downtown Chicago was between 71–85db[.]" *Id.* ¶ 52.

### B. Body Camera Footage[1]

The Court may also consider the Defendant officers' body camera footage. *See* Part I, *infra*. The body camera footage of the incident shows that while Officers Jackson and Sandoval were arriving near the scene, they spoke with a complainant by phone; he stated that he worked in an overlooking building, Ex. 1 (Sutor) at 2:28–2:32, and that Plaintiffs' amplifier was "making a lot of noise," that was "disturbing everyone" and "disrupting" his law firm's activities, including causing "zoom issues in court where we can't even hear what the judge is saying," Ex. 2 (Jackson) at 2:13–3:00. The complainant advised that he had asked Plaintiffs to either turn the volume down or turn the speaker away. *Id.* As the officers parked adjacent to Plaintiffs' location, Plaintiffs' amplifier was audible through the officers' closed car window at well above a normal conversational level. *See* Ex. 2 at 3:00–3:45. The officers rolled down their window and asked Raio to turn the volume down, to no avail. *Id.* at 3:13–3:15. The officers stated that they would go talk to Raio because he might have a permit. *Id.* at 3:15–3:40.

As the officers approached, Officer Sutor asked and motioned to Plaintiffs to turn the volume down, and Officer Jackson twice asked if Plaintiffs had a permit for their activity. Ex. 2 at 3:55–4:04; Ex. 1 at 3:56–4:01. Raio continued to speak into his microphone over the officers' voices, stating that there is "no permit for the First Amendment." *Id.* Officer Jackson then

---

[1] Although the Court may consider the body camera footage, which makes clear that Plaintiffs' claims lack merit, *see* Part I, *infra*, Defendants set forth the additional facts the footage establishes separately, as dismissal may alternatively be based solely on the allegations in the Amended Complaint.

reached down and turned off the speaker, advising that it was "too loud." Ex. 2 at 4:05–4:07; Ex. 1 at 4:01–4:06. Immediately Ndi and Raio moved closer to the officers and placed their hands in the officers' faces, with Ndi repeatedly stating, "don't touch our speaker." Ex. 2 at 4:05–4:12; Ex. 1 at 4:05–4:12. Ndi leaned down and reached toward the speaker, again yelling, "don't touch our speaker," and Officer Jackson responded by moving the speaker away from Ndi a few inches. Ex. 2 at 4:12–4:15. Ndi grabbed Officer Jackson's wrist, and Officer Jackson responded by grabbing Ndi's wrist and coat and pushing him back. Ex. 1 at 4:13–4:16; Ex. 2 at 4:15–4:18.

At this point Officer Jackson pulled out his handcuffs and stated, "I told you guys to turn it down," and continued inquiring whether Plaintiffs had a permit for their activity. Ex. 2 at 4:18–4:25. Raio ignored these requests and continued talking loudly. *Id.* He stated that he did not need to talk to the officers and demanded to speak to their supervisor; he also demanded the officers' names and badge numbers. *Id.* at 4:19–4:50. Raio cited his First Amendment right to free speech, and Officer Jackson responded, "yes, but not amplified music." *Id.* at 4:38–4:44. After several additional requests for a permit, Officer Jackson stated, "I'm asking for a permit, I'm going to give you a ticket and I'm going to take you to jail if you don't have a permit." *Id.* at 4:44–4:56. Raio retorted, "you can't take me to jail for using the First Amendment to speak." *Id.* at 4:52–4:56. Officer Jackson responded that the citation would be for the amplification. *Id.*

After several additional requests for a permit, which Plaintiffs disregarded while continuing to yell over the officers, Officer Jackson handcuffed Raio and advised that he was being detained. *Id.* at 4:56–5:30. Officer Jackson asked for Raio's ID, and Raio refused to provide it, stating that he did not need to provide it because he did not commit a crime. Ndi then began moving around the officers, and Officer Jackson ordered him to stop. *Id.* at 5:40–5:41. Officer Jackson then called for a supervisor. *Id.* at 5:41–5:45. Officer Jackson explained the

5

interaction to a sergeant that arrived on scene, and the sergeant advised Raio that he would be given a ticket for using amplified sound without a permit. *Id.* at 7:38–8:03. Officer Jackson asked for Raio's ID to issue the ANOV; Raio repeatedly declined to provide it and continued to talk over the officers, stating that he had not committed a crime. Ex. 1 at 8:03–8:55. Raio provided his ID after being told he would have to be arrested without it. *Id.* at 8:58–9:20.

Officer Jackson returned to his vehicle to prepare the ANOV. *Id.* at 9:18. Meanwhile, the sergeant spoke to an individual outside of Officer Jackson's vehicle, who the sergeant later identified as the complainant. Ex. 2 at 10:50–15:52. The sergeant relayed that the complainant said that he had measured the Plaintiffs' amplified volume and that it could be heard at a distance of over 200 feet. *Id.* at 15:50–16:05, 16:40–16:55. The sergeant told Raio that the complainant had measured the volume with a decibel meter app on his phone. *Id.* at 28:10–28:45.

Officer Jackson issued Raio two citations. *Id.* at 24:30–24:55. The sergeant explained that if Raio signed the ANOV, a court date could be set without the officers' having to arrest him. *Id.* at 23:40–23:55. Throughout the interaction, Plaintiffs can be seen holding their phones up, with Raio indicating several times that they were recording. Ex. 2 at 3:44–24:00; Ex. 1 at 3:55–30:23.

## III. Ndi's and Dhamala's Arrests

### A. Plaintiffs' Allegations

Plaintiffs allege that on February 24, 2025, Ndi and Dhamala were preaching on Michigan Avenue. Am. Compl. ¶¶ 59–60. When Officers Joyce and Gatlin arrived, they instructed Ndi and Dhamala to turn their microphone's volume down because it was in violation of Chicago noise ordinances. *Id.* ¶¶ 59–62. Ndi and Dhamala allegedly stated that they "had gone to court and won already in Raio's case and had a constitutional right to continue," and asked whether the officers had taken a "sound reading" of the volume. *Id.* ¶¶ 63–64. The officers again

told them to lower the volume and denied that they were required to take a "sound reading." *Id.* The officers ultimately arrested Ndi and Dhamala and took them to jail, where they were held for approximately seven hours. *Id.* ¶¶ 65–66. They were charged with violating the Ordinance and received pretrial release conditions. *Id.* ¶¶ 68–69. Plaintiffs allege that Ndi's and Dhamala's property was not returned to them upon their release. *Id.* ¶ 67.

### B.   Body Camera Footage

The Court may also consider the body camera footage of this incident. *See* Part I, *infra*. It shows that Officer Gatlin announced while in his police vehicle that he was over 100 feet away from Plaintiffs, and their amplification was audible within the vehicle. Ex. 3 (Gatlin) at 2:04–2:06. The officers drove up to the Plaintiffs, and their amplifier was clearly audible above normal conversational level. *Id.* at 2:14–2:35. The officers exited the vehicle and approached Ndi and Dhamala, asking them to turn down their amplifier and advising them that they were violating the Ordinance. *Id.* at 2:25–3:05. The officers had to project their voices to be heard over Plaintiffs' music and microphone. *Id.* Ndi continued to speak into the microphone over the officers' voices, ignoring the officers' request to turn the volume down. *Id.* Officer Joyce asked for Ndi's identification, stating that he would be issuing Ndi a citation. *Id.* at 3:05–3:12. Ndi refused to provide identification. *Id.* at 3:13–3:17. Officer Gatlin then handcuffed Ndi, advising that he was being detained. *Id.* at 3:17–3:30. The officers explained that they intended only to issue a ticket but would have to arrest Ndi if he refused to provide identification. *Id.* at 4:00–4:20; Ex. 4 (Joyce) 3:50–4:20. Ndi again refused to provide his identification. Ex. 3 at 4:00–4:16.

Following Ndi's arrest, Officer Gatlin handed Dhamala the microphone and asked him to turn the volume down. *Id.* at 3:30–3:32. Dhamala did not do so, so Officer Joyce asked again, explaining that the officers "want to make sure the violation stops." *Id.* at 4:42–4:51. Dhamala

refused and said, "we'll see you guys in court." Ex. 4 at 4:45–5:06. Officer Gatlin explained that Dhamala had the right to speak, but that his volume could not be above conversational level at over 100 feet away. Ex. 3 at 5:18–5:28. He said, "I could hear you over a block and a half away. That is well over 100 feet away." *Id.* at 5:27–5:35. The officers again asked Dhamala to turn the volume down, and Dhamala refused. *Id.* at 5:58–7:00. As the officers called for another vehicle, Dhamala spoke into the microphone again. *Id.* at 7:00–7:25. Officer Joyce again ordered Dhamala to turn the volume down, explaining the Ordinance. *Id.* at 7:26–8:31. Dhamala argued with him and did not comply. *Id.* Officer Gatlin then handcuffed Dhamala. *Id.* at 8:32–8:50.

Ndi and Dhamala were arrested and cited for violating the Ordinance. Their bench trial is set for September 11, 2025. *See People v. Perez Ndi*, Case No. 25120268101 (Cir. Ct. Cook Cty.); *People v. Reetik Dhamala*, Case No. 25120268201 (Cir. Ct. Cook Cty.).

## LEGAL STANDARD

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) tests whether the complaint states a claim upon which relief may be granted. To survive dismissal, a complaint "must contain sufficient factual matter" to state a claim to relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plausibility standard requires "more than a sheer possibility" of an entitlement to relief. *Id.* The court accepts all well-pleaded facts as true, but not conclusory allegations and legal conclusions. *Id.* If the court determines that amendment would be futile, it may dismiss the complaint with prejudice. *Indep. Tr. Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 943 (7th Cir. 2012).

## ARGUMENT

The Amended Complaint fails to state a claim for relief. The Court may consider the defendant officers' body camera footage, which contradicts and is dispositive of Plaintiffs'

claims. But whether or not the Court considers the footage, Plaintiffs fail to allege a basis for municipal liability, allege facts supporting a plausible claim, or overcome the defendant officers' qualified immunity. Plaintiffs also identify no substantial burden on their religious exercise, as IRFRA claims require, and tort immunity bars their state-law damages claim.

## I.     The Court Should Consider The Officers' Body Camera Footage.

As an initial matter, the Court should consider the defendant officers' body camera footage when reviewing this motion. On a motion to dismiss, courts consider documents "critical to the complaint and referred to in it, and information that is subject to proper judicial notice." *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012). And courts do not credit allegations contradicted by video evidence. *See Scott v. Harris*, 550 U.S. 372, 380 (2007). Here, not only is the footage judicially noticeable, the Amended Complaint explicitly references video of the incidents, and the video depicts events critical to the allegations in the complaint.

First, even at the pleading stage, courts take judicial notice of facts that are "not subject to reasonable dispute" and "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). As one court in this district has explained, when "the accuracy of police camera footage has not been challenged and the footage 'utterly discredits' a plaintiff's account, 'courts are not required to afford customary deference to the non-movant's averments[,]'" and may instead "take judicial notice of the video when assessing whether the plaintiff has pleaded the factual predicates of a viable claim." *Johnson v. McDonald*, No. 23 C 3200, 2025 WL 965703, *2 (N.D. Ill. Mar. 31, 2025) (quoting *Luczynski v. Joroan*, No. 23-cv-17184, 2024 WL 3106101, *2 (N.D. Ill. June 24, 2024)). Here, there is no basis to dispute the veracity of the footage, which clearly shows both incidents in their entirety.

Alternatively, the Court may consider the body camera footage under the doctrine of incorporation by reference, which seeks to prevent a plaintiff from "'evad[ing] dismissal under Rule 12(b)(6) simply by failing to attach to his complaint [evidence] that prove[s] his claim has no merit.'" *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2002) (quoting *Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002)). Courts consider "documents attached to a motion to dismiss" that "are referred to in the plaintiff's complaint and are central to his claim." *Id.* at 690; *see also Hyung Seok Koh v. Graf*, No. 11-CV-02605, 2013 WL 5348326, **8–10 (N.D. Ill. Sept. 24, 2013) (considering video footage on a motion to dismiss).

Plaintiffs' Amended Complaint explicitly refers to video footage. They allege that they live-streamed their preaching on social media, Raio recorded the incident with his phone, and the prosecutor dismissed his citation after viewing the footage. Am. Compl. ¶¶ 26, 32, 58. The body camera footage shows the same events Plaintiffs recorded. *Id.* ¶ 58. The Court can also infer that the Amended Complaint relies on video footage: it includes lengthy quotations and detailed descriptions of the parties' actions, *e.g.*, *id.* ¶¶ 29, 34, 36, 41, 42, 46, 47, 48, 50, 53, 64, and exact times of day and lengths of time, *e.g.*, *id.* ¶¶ 28, 31, 49. Plaintiffs' specific allegations likely relied on video footage. *See Esco v. City of Chicago*, 107 F.4th 673 (7th Cir. 2024) (court reviewed body camera footage on motion to dismiss because plaintiff's allegations relied on it).

The footage is also central to and dispositive of Plaintiffs' claims. *See Brownmark Films*, 682 F.3d at 690. Indeed, it contradicts Plaintiffs' material allegations. For example, Plaintiffs allege that the officers lacked evidence of an ordinance violation. *E.g.*, Am. Compl. ¶¶ 90, 133, 135, 142. But the footage shows that the amplifier's volume was above normal conversational level when the officers approached and interacted with Plaintiffs. *E.g.*, Ex. 3 at 2:35; Ex. 2 at 3:45. It also demonstrates that in Raio's case, the officers relied on a complainant's report in

addition to their own observations, *see* Ex. 2 at 1:20–3:00, 15:50–16:05, 16:40–16:55, and in

Ndi's and Dhamala's case, the officers specifically investigated the sound level prior to arriving

on scene, *see* Ex. 3 at 2:04–2:35, 5:27–5:35.

In *Esco*, the Seventh Circuit explained that video evidence not attached to but plainly

contradicting the complaint could be considered on a motion to dismiss because "[a] complaint

that contradicts uncontroverted video is not plausible. The plaintiff can still contest the meaning

or significance of the exhibit, but where the plaintiff's case depends on contradicting a fact that

seems plain from the exhibit, the plaintiff will need to explain her position." 107 F.4th at 679

(internal quotations, citations omitted). Here, given that the body camera footage is not

reasonably subject to dispute, video recordings are referenced in and inform the allegations in the

Amended Complaint, and the footage is central to and dispositive of Plaintiffs' claims, the Court

should consider it in deciding whether Plaintiffs have stated a plausible claim.

## II.    Plaintiffs Fail To Allege A Basis For Municipal Liability (Counts I–IV, VI–VII).

Plaintiffs' section 1983 claims against the City in Counts I–IV, VI and VII all fail

because Plaintiffs allege no basis for municipal liability.[2] A municipality is not vicariously liable

for an employee's constitutional violation. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691

(1978). It is liable only for its own conduct, as manifested through (1) an express policy, (2) a

widespread, though unwritten, custom or practice, or (3) a decision made by a final policymaker.

*Milchtein v. Milwaukee Cty.*, 42 F.4th 814, 826 (7th Cir. 2022). These six counts identify no

express City policy that injured Plaintiffs. Nor do Plaintiffs allege that the officers were final

policymakers, and they are not—only an express grant of authority by ordinance makes an

---

[2] Count VIII, which challenges the Ordinance itself, fails for reasons explained below in Part III.

official a final policymaker. *See Waters v. City of Chicago*, 580 F.3d 575, 582 (7th Cir. 2009). Plaintiffs also fail to allege facts establishing a widespread, unwritten custom or practice.

The Amended Complaint attempts to invoke the last theory of *Monell* liability; it refers to an "unwritten policy" that purportedly governs enforcement of the Ordinance against street preachers. Plaintiffs inconsistently describe this alleged policy, suggesting that the Ordinance is enforced against street preachers "regardless of evidence," Am. Compl. ¶ 1; *see also id.* ¶¶ 87–90; and that it is enforced *only* against street preachers, *see id.* ¶¶ 91, 96, 118–21. But Plaintiffs fail to support the alleged policy's existence with specific instances of enforcement against other religious speakers, or instances showing that the Ordinance is not enforced against those without a religious message. "Courts in this District regularly dismiss *Monell* claims where the plaintiff has failed to allege instances other than that from which he suffered." *Petropoulos v. City of Chicago*, 448 F. Supp. 3d 835, 841–42 (N.D. Ill. 2020)); *see also Calusinski v. Kruger*, 24 F.3d 931, 936 (7th Cir. 1994). And a plaintiff cannot evade dismissal by "merely describ[ing] the factual circumstances of his arrest and tack[ing] on boilerplate allegations that trace the legal requirements of a *Monell* claim." *Gallagher v. O'Connor*, 664 F. App'x 565, 569 (7th Cir. 2016). So Plaintiffs' conclusory statements about an "unwritten policy" do nothing to satisfy *Monell*.

But even had Plaintiffs alleged a widespread practice that could amount to a policy, both the Amended Complaint and the body camera footage undermine their claims of an unwritten policy of enforcement without evidence, or a policy to target street preachers. When "factual allegations are entirely consistent with lawful conduct," a plaintiff cannot state a *Monell* claim. *McCauley v. City of Chicago*, 671 F.3d 611, 619 (7th Cir. 2011). Here, the officers had ample evidence of Ordinance violations. In Raio's case, the Amended Complaint alleges that they were responding to a noise complaint. Am. Compl. ¶ 53; *see also id.* ¶¶ 28–30, 50 (describing a

"heckler" that called the police about Plaintiffs' amplification). And the video footage shows the officers gathering information from the complainant about the amplifier's volume. Ex. 2 at 2:13–3:00, 10:50–16:05, 16:40–16:55, 28:10–28:45; Ex. 1 at 2:28–2:32. Similarly, the footage of Ndi's and Dhamala's arrests demonstrates that the officers checked the amplifier's volume from over 100 feet away prior to approaching Ndi and Dhamala. *See* Ex. 3 at 2:04–2:06; 5:27–5:35. Plaintiffs' own allegations also contradict their claim that the City's policy is to enforce the Ordinance only against religious speakers. Am. Compl. ¶ 3 ("Defendants cite and even arrest *anyone* who uses amplification without a permit") (emphasis added).

At most, Plaintiffs disagree with the Ordinance's application on two occasions. That does not satisfy *Monell*. The claims against the City in Counts I–IV, VI and VII should be dismissed.

### III.     Plaintiffs' Vagueness Claims Fail (Counts III and VIII).

In Counts III and VIII,[3] Plaintiffs allege that both the Ordinance itself and an alleged "unwritten policy" of enforcing the Ordinance against street preachers are impermissibly vague under the First and Fourteenth Amendments. *See* Am. Compl. ¶¶ 113–15, 152. Both counts fail.

#### A.     Plaintiffs' facial challenge to the Ordinance fails (Count VIII).

In Count VIII, Plaintiffs challenge the Ordinance on its face under the First Amendment and the Fourteenth Amendment's Due Process Clause, alleging that the Ordinance's prohibition of amplification "that is louder than average conversational level at a distance of 100 feet or more" is impermissibly vague because it does not specify a decibel level. Am. Compl. ¶ 152.

"It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined," *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972),

---

[3] Plaintiffs also include vagueness allegations in Count I. *See* Am. Compl. ¶¶ 99 (alleging that the "unwritten policy" is vague), 103–04 (alleging that enforcement of the Ordinance chilled speech).

such that ordinary people cannot understand what it prohibits or it lacks minimal enforcement guidelines, *Kolender v. Lawson*, 461 U.S. 352, 357–58 (1983). And in the First Amendment context, regulations may be unconstitutionally vague if their lack of specificity chills more speech than necessary. *Grayned*, 408 U.S. at 109. Still, "we can never expect mathematical certainty from our language." *Id.* at 110.

The Ordinance is not unconstitutionally vague because it provides fair notice and sufficient guidance for enforcement. The language "louder than average conversational level at a distance of 100 feet or more . . . from the source," MCC § 8-32-070, gives clear guidance to citizens and officers by using a readily understandable volume level and a specific distance by which such volume may be measured. Indeed, "average conversational level" is further defined to mean "a level at which normal, unamplified speech is clearly and distinctly audible above ambient noise level," *id.* § 8-32-020, with "ambient noise level" meaning "the sound level at a given location that exists as a result of the combined contribution in that location of all sound sources, excluding the contribution of a source or sources under investigation for violation of this Code," *id.* These common-sense guideposts make the Ordinance's application clear.

Critically, the Ordinance provides more guidance than similar ordinances courts have routinely upheld. *See, e.g.*, *Grayned*, 408 U.S. at 107–08 (rejecting vagueness challenge to an ordinance that prohibited noise based on whether it disturbed any nearby school); *Kovacs v. Cooper*, 336 U.S. 77, 80 (1949) (rejecting vagueness challenge to an ordinance that regulated speakers emitting "loud and raucous noise"); *Howard Opera House Assoc. v. Urban Outfitters*, 322 F.3d 125, 128 (2d Cir. 2003) (rejecting vagueness challenge to an ordinance prohibiting "loud or unreasonable noise," defined as noise that "disturbs, injures or endangers the peace or health of another or when it endangers the health, safety or welfare of the community"); *Asquith*

14

*v. City of Beaufort*, 139 F.3d 408 (4th Cir. 1998) (rejecting vagueness challenge on a preliminary injunction motion to ordinance regulating persons who "willfully disturb any neighborhood or business in the City by making or continuing loud and unseemly noises"); *Nylen v. City of Grand Rapids*, 475 F. Supp. 3d 744, 749, 752 (W.D. Mich. 2019) (rejecting vagueness challenge to ordinance prohibiting "any noise of any kind" audible within the public way, including any "distinct" or "loud" noises made by "sound amplifying or other similar electronic device").

Nor is the Ordinance so uncertain that it "chills" First Amendment activity. Where a law "abuts upon sensitive areas of basic First Amendment freedoms," it will be subject to more exacting scrutiny than outside of the First Amendment context. *Ctr. for Individual Freedom v. Madigan*, 697 F.3d 464, 470–71 (7th Cir. 2012) (internal quotations, citations omitted). But even under that standard, "the potential chilling effect on protected expression must be both 'real and substantial' to invalidate a statute as void for vagueness in a facial challenge." *Id.* (quoting *Erznoznik v. City of Jacksonville*, 422 U.S. 205, 216 (1975)). Here, not only is the Ordinance not vague, it allows Plaintiffs to preach to the public without amplification or by reducing their amplifier's volume. There is no chilling effect on their speech, let alone a "real and substantial" one. *Ctr. for Individual Freedom*, 697 F.3d at 470–71. Plaintiffs fail to state a facial vagueness claim.

### B.    Plaintiffs' challenge to the City's "unwritten policy" fails (Count III).

Count III challenges as vague the City's alleged "unwritten policy" of enforcing the Ordinance. Am. Compl. ¶¶ 113–15. But as described in Part II, Plaintiffs fail to allege facts suggesting such a policy even exists. Moreover, vagueness challenges focus on a law's *text*. "Due Process-based vagueness challenges have not been extended beyond the statutory sphere or, at most, to written rules and regulations." *Am. Ass'n of Univ. Professors v. Rubio*, No. CV 25-

10685-WGY, 2025 WL 1235084, *20 (D. Mass. Apr. 29, 2025). And no authority suggests that a misapplication of a non-vague ordinance renders it vague. *See, e.g.*, *Williams v. Pollard*, No. 14–CV–0148, 2015 WL 5521876, *3 (E.D. Wis. Sept. 18, 2015) (holding on a motion to dismiss that, because that a regulation was not unconstitutionally vague, "plaintiff's claim that the regulation's vagueness resulted in an unwritten policy banning Nation of Islam materials and that he thus did not have fair notice that possession of such materials would give rise to a deprivation of his liberty fails as a matter of law"). Plaintiffs' vagueness challenge to the City's purported unwritten policy thus fails. Counts III and VIII should be dismissed.

## IV.     Plaintiffs Fail To Allege A Violation Of Their Freedom of Speech (Count I).

Plaintiffs attempt to allege a First Amendment claim with a smattering of conclusory allegations. Am. Compl. ¶¶ 77–104. They allege that Defendants "retaliated" against them within a traditional public forum based on the content and viewpoint of their religious and political speech. *Id.* ¶¶ 80–81, 83, 87–88, 91, 96–97.[4] They allege that Defendants cited and arrested them, despite their "lawful" exercise of their First Amendment rights, *id.* ¶ 100, based on Defendants' unwritten policy and practice of enforcing the noise ordinance both without evidence, *see id.* ¶¶ 87–90, and solely against religious speakers, *see id.* ¶¶ 87–88, 91, 96. None of this states a plausible First Amendment claim.

The First Amendment framework applicable to sound restrictions is that which addresses restrictions on the time, place, and manner of speech. *See Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989). "Time, place and manner restrictions must further a substantial governmental interest, be content-neutral and leave ample alternative channels of communication." *Stokes v. City of Madison*, 930 F.2d 1163, 1170 (7th Cir. 1991). Here, limiting

---

[4] Plaintiffs provide no details as to how the content of their speech was "political."

the volume of Plaintiffs' amplification on the public way furthered a substantial interest, was not based on their message's content, and left them ample other ways to communicate that message.

The City's interest in avoiding noise disturbances to the public is substantial. An amplifier that can be heard from 100 feet away can affect neighboring building residents' quiet enjoyment of their homes or the essential operations of private businesses or public entities. Indeed, Raio's citation resulted from a complaint reporting the amplification volume as a disturbance. Am. Compl. ¶ 53; Ex. 2 at 1:20–3:00, 15:50–16:05, 16:40–16:55. And this interest has routinely been held to justify noise restrictions. *E.g.*, *Kovacs*, 336 U.S. at 88 ("The preferred position of freedom of speech in a society that cherishes liberty for all does not require legislators to be insensible to claims by citizens to comfort and convenience."); *Ward*, 491 U.S. at 796 (quoting *City Council of L.A. v. Taxpayers for Vincent*, 466 U.S. 789, 806 (1984)) ("[G]overnment 'ha[s] a substantial interest in protecting its citizens from unwelcome noise.'"); *Hous. Works, Inc. v. Kerik*, 283 F.3d 471, 479 (2d Cir. 2002) ("The control of noise level is a legitimate public concern.").

The Ordinance is also content-neutral: it makes no mention of the substance of the expression being amplified. *See* MCC § 8-32-070. Despite that explicit neutrality, Plaintiffs allege that the City has an "unwritten" policy of enforcing the Ordinance only against street preachers, creating a "de facto ban on the[ir] use of amplification." Am. Compl. ¶¶ 80–81, 83, 87–88, 91, 96–97. But Plaintiffs' conclusory allegations are insufficient to support such a claim. As discussed above, they point to no other instances of the Ordinance's enforcement, whether against religious or other types of expression. *See* Part II, *supra*.

Plaintiffs also suggest that the Ordinance cannot be considered content- or viewpoint-neutral because the City's "unwritten policy fails to provide adequate safeguards to ensure that

Chicago Police Officers do not abuse their discretion." Am. Compl. ¶ 101. This allegation is entirely conclusory, and as explained above, the Ordinance provides sufficient standards for enforcement. *See* Part III, *supra*. Plaintiffs' argument also finds no legal support. *See, e.g.*, *Kerik*, 283 F.3d at 479 (concluding that policy regarding amplified sound did not confer unbridled discretion upon city officials). Indeed, the Seventh Circuit has rejected the argument that a law that regulates conduct can be deemed content-based just because officers have discretion to enforce it. *See Nicodemus v. City of South Bend*, 137 F.4th 654, 659, 665–68 (7th Cir. 2025) (rejecting plaintiff's First Amendment challenge to a "buffer law" prohibiting an individual from approaching an officer "lawfully engaged in the execution of the law enforcement officer's duties after the law enforcement officer has ordered the person to stop approaching"). Here, the Ordinance regulates volume, not the content of any speech, and it is even more detailed than the buffer law in *Nicodemus*, giving ample guidance for enforcement. Thus, the Ordinance is content- and viewpoint-neutral. And that is how it was enforced. The body camera footage demonstrates that Plaintiffs were informed that they were being cited only for the amplifier's volume, not because of their speech. Ex. 2 at 4:38–4:56; Ex. 3 at 5:18–5:28.

Finally, the Amended Complaint makes clear that sufficient alternative channels of communication were available to Plaintiffs. *See Stokes*, 930 F.2d at 1170. Plaintiffs do not allege that CPD stopped them from expressing their message; they allege only that officers asked them to comply with the Ordinance's volume restriction. *See* Am. Compl. ¶¶ 3, 4, 46, 48, 54, 61. And Plaintiffs could do that while expressing their message by reducing their amplifier's volume, foregoing amplification, using signage, or distributing literature. *See Stokes*, 930 F.2d at 1172 (holding that an ordinance's restriction on sound amplification during certain time periods left ample alternative channels of communication).

Defendants' restrictions on Plaintiffs' use of the amplifier are valid time, place, and manner restrictions that did not violate the First Amendment. Count I should be dismissed.

## V. Plaintiffs Fail To Allege A Free Exercise Claim (Count II).

The First Amendment provides that "no law may prohibit the free exercise of religion." *Civil Liberties for Urban Believers v. City of Chicago*, 342 F.3d 752, 762–63 (7th Cir. 2003). The Free Exercise Clause "protects religious observers against unequal treatment and against laws that impose special disabilities on the basis of religious status." *Espinoza v. Montana Dep't of Revenue*, 591 U.S. 464, 475 (2020). Plaintiffs allege that "Defendants' policy and Defendants' actions in implementing that policy" burdened their religious exercise. Am. Compl. ¶¶ 108–11. Plaintiffs do not mention the Ordinance; they apparently rely again on a purported "unwritten policy" of targeting street preachers. *See id.* ¶¶ 87–88, 90–91, 108, 110. Regardless, neither the Ordinance nor its enforcement violated Plaintiffs' right to the free exercise of their religion. Their claim fails for two basic reasons.

First, the Ordinance simply does not discriminate against religion, in either its text or application. A law may violate the Free Exercise Clause "if it 'discriminate[s] on its face,' or if a religious exercise is otherwise its 'object.'" *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 526 (2022) (quoting *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 533 (1993)). Here, the Ordinance is neutral and generally applicable, making no distinction based on speaker or expression. *See* MCC § 8-32-070. Plaintiffs suggest that Defendants wield the Ordinance to target religious beliefs and expression. Am. Compl. ¶¶ 108, 110–11. But again, the Amended Complaint contains no allegations showing the existence of such a practice.

"[A] neutral law of general applicability is constitutional if it is supported by a rational basis." *Illinois Bible Colls. Ass'n v. Anderson*, 870 F.3d 631, 639 (7th Cir. 2017), as amended

(Oct. 5, 2017); *see also Tranchita v. Callahan*, 511 F. Supp. 3d 850, 873 (N.D. Ill. 2021) (Ellis, J.) (concluding that because a "[p]ermit requirement appears to be supported by a rational basis, [plaintiff] is not likely to succeed on her Free Exercise claim"). The Ordinance plainly has a rational basis. As discussed above, controlling loud noise in public is a legitimate public interest. *See Kovacs*, 336 U.S. at 88; *Ward*, 491 U.S. at 796. Plaintiffs' claim fails accordingly.

Plaintiffs' claim also fails for a second reason. To assert a free exercise claim, the plaintiff "must first establish that his right to practice religion was burdened in a significant way." *Kaufman v. McCaughtry*, 419 F.3d 678, 683 (7th Cir. 2005). And the "substantial burden" must be on a "central religious belief or practice." *Hernandez v. Comm'n of Internal Rev.*, 490 U.S. 680, 699 (1989). Plaintiffs fail to clear this hurdle. Their religious exercise was not burdened at all. Plaintiffs do not allege that CPD stopped them from expressing their message or that their religion mandates that they use amplification as a "central belief or practice." *See id*. Instead, they contend only that, "[w]ithout amplification, they would need to raise their voice to be understood by passersby, which would distort the tone of their message." Am. Compl. ¶ 125. But even if amplification might help to spread their message, that does not make it *necessary* to practice their religion. Plaintiffs do not even allege as much, so their claim fails. *See, e.g.*, *Kaufman*, 419 F.3d at 683 (holding that the plaintiff failed to show he would be unable to practice his religion effectively due to the prohibition at issue); *Braunfeld v. Brown*, 366 U.S. 599, 605–06 (1961) (holding that law prohibiting the sale of certain commodities on Sundays regulated only secular activity and, as applied, simply made the plaintiff's religious practices more expensive, which was "wholly different than when the legislation attempts to make a religious practice itself unlawful").

Plaintiffs fail to state a free exercise claim. The Court should dismiss Count II.

## VI.    Plaintiffs Fail To Allege An Equal Protection Claim (Count IV).

Plaintiffs allege that Defendants violated the Equal Protection Clause by enforcing the Ordinance "selectively" and "uniquely against religious speakers." Am. Compl. ¶¶ 118–22. They claim this alleged selective enforcement is "motivated by an intention to punish or inhibit the exercise of First Amendment constitutional rights." *Id.* ¶ 121. Plaintiffs also allege that the Ordinance as enforced discriminates against them based on "impermissible considerations." *Id.* Plaintiffs fail to allege facts supporting a plausible equal protection claim.

The Ordinance itself contains no classification, let alone a suspect classification. It does not differentiate among types of speakers and is silent as to religion. *See* MCC § 8-32-070. The only distinction it makes is based on the volume of amplified sound. And its prohibition on amplified sound beyond a certain volume level is rationally related to the City's legitimate interest in avoiding noise disturbances to the public. *See* Part III, *supra.*

Plaintiffs' allegations also fall far short of showing that Defendants applied the Ordinance to them differently based on their religion. Where "a neutral law has a disproportionately adverse effect upon" a suspect class, "it is unconstitutional under the Equal Protection Clause only if that impact can be traced to a discriminatory purpose." *Pers. Adm'r of Massachusetts v. Feeney*, 442 U.S. 256, 272 (1979). And in the context of a claim of selective enforcement, the Supreme Court has explained that to be entitled to discovery, a party must make "a credible showing of different treatment of similarly situated persons." *United States v. Armstrong*, 517 U.S. 456, 470 (1996).

Plaintiffs have not alleged facts showing that the Ordinance is enforced unequally, let alone with a discriminatory purpose, against religious speakers. *See* Part II, *supra*. Plaintiffs attempt to allege unequal treatment by referring obliquely to "those who do not express a religious viewpoint," Am. Compl. ¶ 120, but as the Seventh Circuit has emphasized, to make out

21

an equal protection claim, "saying the magic words is not enough: [Plaintiffs] must offer 'further factual enhancement,'" *Charleston v. Bd. of Trs. of Univ. of Ill. at Chicago*, 741 F.3d 769, 775 (7th Cir. 2013), quoting *Iqbal*, 556 U.S. at 678 (affirming dismissal of equal protection claim where plaintiff alleged only that unnamed "similarly situated" individuals were treated differently); *see also Muczynski v. Lieblick*, 769 F. Supp. 2d 1129, 1136 (N.D. Ill. 2011) ("It is the presence of *unequal* treatment that implicates equal-protection rights."). And as to Plaintiffs' contention that Defendants were "motivated by an intention to discriminate," Am. Compl. ¶ 121, Plaintiffs' own allegations and the body camera footage demonstrate that defendants cited and arrested Plaintiffs because of the volume of their amplifier, not their religious expression. *See* Ex. 2 at 4:38–4:56; Ex. 3 at 5:18–5:28.

Plaintiffs' equal protection claim fails. The Court should dismiss Count IV.

## VII.  Plaintiffs Fail To Allege A Fourth Amendment False Arrest Claim (Count VI).

Dhamala and Ndi allege that their arrest violated the Fourth Amendment because the police "had no evidence that [they] had committed any crime." Am. Compl. ¶¶ 132–33. Officers Jackson, Sutor, and Sandoval should be dismissed from this claim (and Count VII) because they were not involved in the arrest of Dhamala and Ndi. As to the other defendants, this claim fails because the defendant officers had ample probable cause for Dhamala's and Ndi's arrests.

Probable cause is "an absolute defense to any claim under [s]ection 1983 against police officers for wrongful arrest." *Mustafa v. City of Chicago*, 442 F.3d 544, 547 (7th Cir. 2006). It exists if "at the time of the arrest, the facts and circumstances within the officer's knowledge" would lead "a prudent person, or one of reasonable caution," to think an offense has been or is about to be committed. *Gonzalez v. City of Elgin*, 578 F.3d 526, 537 (7th Cir. 2009) (cleaned up). Because probable cause is determined from the view of "a reasonable person in the position of

the officer," *Holland v. City of Chicago*, 643 F.3d 248, 254 (7th Cir. 2011), the officer's state of

mind is irrelevant (except for the facts he knows), *Devenpeck v. Alford*, 543 U.S. 146, 153

(2004), and "probable cause to believe that a person has committed any crime will preclude a

false arrest claim, even if the person was arrested on additional or different charges," *Holmes v.

Vill. of Hoffman Estates*, 511 F.3d 673, 682 (7th Cir. 2007).

       Here, Plaintiffs were arrested for violating the Ordinance. An ordinance violation

provides probable cause to arrest. *See People v. Taylor*, 902 N.E.2d 751, 759 (Ill. App. 2009)

(arrest based on MCC violations constitutional); 65 ILCS 5/1-2-1.1 (ordinance violations may be

classified as criminal offenses). As explained above, the evidence shows that the defendant

officers had evidence that Plaintiffs' amplifier was audible above average conversational level

from 100 feet away—they even took pains to verify the sound level from a distance. *See* Ex. 3 at

2:04–2:06; 2:14–2:35. Consequently, they had probable cause to cite and detain Plaintiffs.

       Furthermore, probable cause to believe Plaintiffs committed *any* ordinance violation

would preclude their Fourth Amendment claim. The City has an ordinance prohibiting

"disorderly" conduct, MCC § 8-4-010, which includes "fail[ing] to obey an order by a peace

officer . . . issued under circumstances where it is reasonable to believe that the order is

necessary to allow public safety officials to address a situation that threatens the public health,

safety, or welfare," *id.* § -010(e). Dhamala and Ndi violated the disorderly conduct ordinance by

disobeying several officer orders to stop using the amplifier or to provide information. Am.

Compl. ¶¶ 59–64; Ex. 3 at 2:25–8:50. A reasonable person in the position of the officers could

have concluded that asking them to lower their amplification volume was necessary to remedy

the public disturbance caused by the Plaintiffs' sound amplification. Thus, when they refused to

do so, there was probable cause to arrest Plaintiffs for violating MCC § 8-4-010(e), which is sufficient to defeat Plaintiffs' false arrest claim. *See Holmes*, 511 F.3d at 682.[5]

## VIII.  Plaintiffs Fail To Allege A Retaliatory Arrest Claim (Count VII).

Dhamala and Ndi contend that they were arrested in retaliation for their religious speech in violation of the First and Fourth Amendments. Am. Compl. ¶¶ 137–42. To state a claim for First Amendment retaliatory arrest, Plaintiffs must allege that (1) they engaged in activity protected by the First Amendment; (2) they suffered adverse actions that would likely deter future First Amendment activity; and (3) the First Amendment activity was "at least a motivating factor" for the decision to retaliate. *Lavite v. Dunstan*, 932 F.3d 1020, 1031 (7th Cir. 2019). In *Nieves v. Bartlett*, the Supreme Court held that "probable cause should generally defeat a retaliatory arrest claim." 587 U.S. 391, 407 (2019). Here, Plaintiffs' retaliation claim fails because there was probable cause for their arrests. *See* Part VII, *supra*.

The *Nieves* Court acknowledged a "narrow qualification" where a plaintiff was "arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been." *Id.*; *see also Lund v. City of Rockford*, 956 F.3d 938, 948 (7th Cir. 2020). That does not apply here, as Plaintiffs have not alleged that other individuals engaged in the same unlawful activity, but not the same speech, routinely avoid arrest. The Amended Complaint fails

---

[5] Probable cause, or arguable probable cause, also existed to arrest Plaintiffs for state-law disorderly conduct violations. "[A] person commits disorderly conduct when he or she knowingly . . . does any act in such unreasonable manner as to alarm or disturb another and to provoke a breach of the peace." 720 ILCS 5/26-1(a)(1). Disorderly conduct requires that a "defendant knowingly engaged in conduct that (1) was unreasonable, (2) alarmed or disturbed another, and (3) provoked a breach of the peace." *People v. McLennon*, 957 N.E.2d 1241, 1249 (Ill. App. 2011). "The offense of disorderly conduct embraces a great variety of conduct destroying or menacing public order and tranquility." *City of Chicago v. Wender*, 262 N.E.2d 470, 472 (Ill. 1970); *see, e.g.*, *City of Chicago v. Morris*, 264 N.E.2d 1, 4 (Ill. 1970) (defendant argued loudly with an officer, ignoring arrest warnings, while crowd gathered); *People v. Albert*, 611 N.E.2d 567, 569 (Ill. App. 1993) (defendant was yelling and screaming outside at 2:00 a.m., waking neighbor); *People v. Rolfe*, 244 N.E.3d 236 (Ill. App. 2024) (defendant used siren and bullhorn).

to mention any other individuals at all. Plaintiffs were plainly arrested not because of their speech, but because they violated the MCC. Given those facts, it is not plausible that Ndi and Dhamala were arrested in retaliation for their speech. Defendants tolerated their message. What they did not tolerate was their Ordinance violations. Count VII should be dismissed.

Additionally, Plaintiffs' conduct in using an amplifier in violation of the MCC was not protected speech. "Although First Amendment activity is generally protected, it loses its protection when it violates the law." *Lund*, 956 F.3d at 947. Plaintiffs contend that they were arrested for their "lawful attempt to assert their rights under the Constitution and under the ordinance to use voice amplification for their speech and exercise of their religion." Am. Compl. ¶ 140. But as explained, the MCC barred their use of such loud amplification. Accordingly, Plaintiffs' conduct in using the amplifier was not protected expression, and they cannot plead a retaliatory arrest claim. *See Lyberger v. Snider*, 42 F.4th 807, 814 (7th Cir. 2022) (because withholding ID from police officer was not protected speech; plaintiff could not prevail on a retaliation claim).

## IX.  The Defendant Officers Are Entitled To Qualified Immunity (Counts I–IV, VI–VII).

Plaintiffs' section 1983 claims against the individual officers may be dismissed for the independent reason that they are entitled to qualified immunity. Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (cleaned up). As officers must make split-second decisions in stressful circumstances, qualified immunity protects them from liability

for reasonable mistakes. "Put simply, qualified immunity protects all but the plainly incompetent or those who knowingly violate the law." *Id.* (internal quotations, citations omitted). When "the defense of qualified immunity is raised, it becomes the plaintiff's burden to defeat it." *Estate of Escobedo v. Martin*, 702 F.3d 388, 404 (7th Cir. 2012). The plaintiff must point to "factually similar" precedent demonstrating that the right was clearly established at the time of the alleged violation or show that "the alleged constitutional violation was obvious." *Doe v. Vill. of Arlington Heights*, 782 F.3d 911, 915 (7th Cir. 2015). And courts should not "define clearly established law at a high level of generality." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (per curiam) (cleaned up).

As discussed above, the individual officers' conduct did not violate Plaintiffs' rights. In fact, the Amended Complaint fails to even describe the actions of some of the officers. Officer Sutor is mentioned only as having "participated" in Raio's arrest. Am. Compl. ¶ 18. Officer Camey Sandoval is alleged to have arrived after Raio was already handcuffed. *Id.* ¶ 47. And Lieutenant Petraski is mentioned only as having "participated in the arrest of Ndi and Dhamala." *Id.* ¶ 22. Liability for a section 1983 claim "does not attach unless the individual defendant caused or participated in a constitutional deprivation." *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996). Thus, as to those officers, the Amended Complaint plainly does not include facts to support a plausible claim of any violation of clearly established law.

As to the other officers (Officers Jackson, Joyce, and Gatlin), any reasonable officer would interpret the law to permit their actions and Plaintiffs' citations or arrests. The officers' body camera footage shows that Plaintiffs' amplifier was audible inside nearby buildings and beyond a city block. *See* Ex. 2 at 2:13–3:00, 10:50–16:05, 16:40–16:55, 28:10–28:45; Ex. 1 at

2:28–2:32; Ex. 3 at 2:04–2:06, 5:27–5:35. It is not clearly established that preventing someone on the public way from making such loud noise violates the First Amendment.

Furthermore, the Amended Complaint and video demonstrate that the officers' conduct was beyond reasonable. Plaintiffs allege that, following the complaint of a nearby citizen, Officer Jackson ordered Raio to lower his volume, turned off Plaintiffs' speaker, asked about a permit, and handcuffed Raio only after his refusal to turn the amplification volume down or provide a permit. *See* Am Compl. ¶¶ 33, 35, 37, 39, 53. The video footage additionally shows that Raio failed to comply with the officers' repeated orders, resulting in his citation. Plaintiffs were contemptuous of and unresponsive to Officers Jackson's and Sutor's requests, refusing to listen to them or answer their questions and repeatedly speaking over them. Ex. 2 at 4:00–5:25.

In Ndi's and Dhamala's case, the Amended Complaint alleges that Officers Joyce and Gatlin ordered them to lower their volume and advised them that they were violating the Ordinance. *See id.* ¶¶ 61, 62, 64, 65, 68. And the video footage shows that Ndi and Dhamala refused to comply with the officers' orders or provide identification, necessitating their arrests. *See* Ex. 3 at 3:20, 4:00–4:20, 5:35, 8:25; Ex. 4 at 2:40–3:00, 5:00–6:00, 6:50–8:45.

In both instances, it was not unreasonable for the officers to inform Plaintiffs that their use of the amplifier violated the MCC, make several requests that the volume be reduced or a permit produced, and cite or arrest Plaintiffs only after their continued refusal to comply. Qualified immunity therefore shields the officers from Plaintiffs' claims. Plaintiffs' claims against the defendant officers should be dismissed for this independent reason.

## X.    Plaintiffs Fail To State An IRFRA Claim (Count V).

Plaintiffs fail to state a claim that Defendants violated IRFRA in their enforcement of the Ordinance. And the Tort Immunity Act bars their "compensation" claim. *See* Am. Compl. ¶ 130.

## A. Count V fails because Plaintiffs allege no substantial burden.

IRFRA creates a right of action when a government action "substantially burden[s] a person's exercise of religion," "even if the burden results from a rule of general applicability." 775 ILCS 35/15. "[A] substantial burden on one's free exercise of religion is the presentation of a coercive choice of either abandoning one's religious convictions or complying with the governmental regulation." *Diggs v. Snyder*, 775 N.E.2d 40, 44 (Ill. App. 2002) (citing *Wisconsin v. Yoder*, 406 U.S. 205, 217–18 (1972)). "[A] plaintiff must demonstrate that the governmental action 'prevents him from engaging in conduct or having a religious experience that his faith mandates.'" *Id.* (quoting *Stefanow v. McFadden*, 103 F.3d 1466, 1471 (9th Cir. 1996)).

The standard for a IRFRA claim is the same standard used to evaluate the substantial burden provision in the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc. *See Affordable Recovery Hous. v. City of Blue Island*, 860 F.3d 580, 583 (7th Cir. 2017). The Seventh Circuit has cautioned that "the adjective 'substantial' must be taken seriously," *World Outreach Conf. Ctr. v. City of Chicago*, 591 F.3d 531, 539 (7th Cir. 2009), and means that an obstacle renders religious exercise "effectively impracticable," *Civil Liberties for Urban Believers*, 342 F.3d at 761.

As discussed above, Plaintiffs do not allege that their religion mandates they use sound amplification or that the individual defendants' enforcement of the Ordinance required them to choose between exercising their religion or abandoning it. Thus, because it does not burden Plaintiffs' religious exercise, let alone substantially burden it so as to make it effectively impracticable, Plaintiffs IRFRA claim fails.

Courts have discretion to retain jurisdiction over pendent state-law claims after federal claims are dismissed. *Groce v. Eli Lilly & Co*, 193 F.3d 496, 501–02 (7th Cir. 1999). Retaining

28

jurisdiction to dismiss state-law claims with prejudice is appropriate when it is "absolutely clear" how they should be decided. *Wright v. Assoc. Ins. Cos.*, 29 F.3d 1244, 1251 (7th Cir. 1994). Here, as Plaintiffs allege no substantial burden, Count V should be dismissed with prejudice.

**B.     The Tort Immunity Act bars Plaintiffs' state-law claim for damages.**

The Tort Immunity Act covers "any action, whether based upon the common law or statutes or Constitution of this State." 745 ILCS 10/8-101(c); *see Separation of Hinduism from Our Sch. v. Chi. Pub. Sch. Dist. #299*, No. 20 C 4540, 2021 WL 2036536, *14 (N.D. Ill. May 21, 2021) (applying Act's limitations period to IRFRA claim). The Act renders public employees immune from liability for damages for any "act or omission in the execution or enforcement of any law unless such act or omission constitutes willful and wanton conduct." 745 ILCS 10/2-202. The City is not liable if its employees are not liable. *Id.* 10/2-109.

Here, should Plaintiffs' IRFRA claim survive dismissal, they are nonetheless barred from recovering damages for the claim. The Defendant officers were enforcing the law when citing and arresting Plaintiffs. And their actions were not willful and wanton. Conduct is willful and wanton if it "shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others." *Id.* 10/1-210. The officers' actions—arresting Plaintiffs only after explaining the Ordinance's requirements and when Plaintiffs refused to comply—were reasonable and far from willful and wanton. Plaintiffs' damages claim based on the officers' actions to enforce the law is barred accordingly.

**CONCLUSION**

This Court should dismiss Plaintiffs' claims under Rule 12(b)(6) with prejudice.

Date:     June 27, 2025                          Respectfully submitted,

ELLEN MCLAUGHLIN                                 MARY B. RICHARDSON-LOWRY,
ellen.mclaughlin@cityofchicago.org               Corporation Counsel for the City of
DYLAN GILL                                       Chicago
dylan.gill@cityofchicago.org
ERIC SEELEMAN                                    By:      */s/ Dylan M. Gill*
eric.seeleman@cityofchicago.org                  Assistant Corporation Counsel
City of Chicago Department of Law
2 North LaSalle, Suite 520
Chicago, IL 60602
312-742-5147 / 744-4216 / 742-3902

*Attorneys for Defendant City of Chicago*

# EXHIBIT 1

**Body-Worn Camera of CPD Officer Nico A. Sutor**

**File Name: Axon_Body_3_Video_2024-12-10_1116_X60AG7216 (Sutor).mp4**

**(Uploaded Electronically Via Digital Media Exhibit Submission)**

# EXHIBIT 2

**Body-Worn Camera of CPD Officer Mario L. Jackson**

**File Name: Axon_Body_3_Video_2024-12-10_1116_X60AC210M (Jackson).mp4**

**(Uploaded Electronically Via Digital Media Exhibit Submission)**

# EXHIBIT 3

**Body-Worn Camera of CPD Officer William E. Gatlin**

**File Name: Axon_Body_3_Video_2025-02-24_1153_X60AC211R (Gaitlin).mp4**

**(Uploaded Electronically Via Digital Media Exhibit Submission)**

# EXHIBIT 4

**Body-Worn Camera of CPD Officer Michael P. Joyce**

**File Name: Axon_Body_3_Video_2025-02-24_1153_X60AC763N (Joyce).mp4**

**(Uploaded Electronically Via Digital Media Exhibit Submission)**