UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BRETT RAIO; PEREZ NDI; and REETIK DHAMALA, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) No. 25-cv-02709 ) |
| CITY OF CHICAGO, an Illinois municipal corporation, and Chicago Police Officers MARIO L. JACKSON, NICO A. SUTOR, CARLOS R. CAMEY SANDOVAL, MICHAEL P. JOYCE, WILLIAM E. GATLIN, and MICHAEL PETRASKI, in their official and individual capacities, | ) Hon. Sara L. Ellis ) ) ) ) ) ) ) |
| Defendants. | ) |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR
RULE 12(B)(6) MOTION TO DISMISS**

INTRODUCTION

Street preachers Brett Raio, Perez Ndi, and Reetik Dhamala allege that the City's enforcement of its amplified sound ordinance, Municipal Code of Chicago, Ill. ("MCC") § 8-32-070 (the "Ordinance"), violated their rights under the First and Fourth Amendments and the Illinois Religious Freedom Restoration Act ("IRFRA"). As Defendants explained, Plaintiffs' claims fail for multiple reasons. They allege no basis for municipal liability. *See Monell v. Dept. of Social Servs. of City of New York*, 436 U.S. 658 (1978). They fail to plead plausible constitutional claims, as their own Amended Complaint and the officers' body-worn camera footage of the incidents do not plausibly suggest the Ordinance was improperly enforced against them. And they allege no substantial burden on their religious exercise, as IRFRA claims require.

Plaintiffs fail to rebut these arguments. They ask the Court to ignore the camera footage that shows their First and Fourth Amendment claims lack merit, but courts should not adopt a "version of the facts" that is "blatantly contradicted by the record." *Scott v. Harris*, 550 U.S. 372, 380–81 (2007); *see also Esco v. City of Chicago*, 107 F.4th 673, 680 (7th Cir. 2024) ("[I]t was appropriate for the district court to consider the body-worn camera video evidence when considering this motion to dismiss."). And even setting aside the footage, Plaintiffs fail to overcome Defendants' arguments regarding municipal liability, qualified immunity, and IRFRA. The Court should dismiss the Amended Complaint with prejudice.

ARGUMENT

I. **The Court Should Consider The Officers' Body Camera Footage.**

The Court may consider the body camera footage in deciding this motion, for two independent reasons. First, the Court may take judicial notice of the footage because its content is not reasonably disputed. *See* Fed. R. Evid. 201(b)(2); *Johnson v. McDonald*, No. 23 C 3200,

2025 WL 965703, at *2 (N.D. Ill. Mar. 31, 2025); Dkt. 40 ("Mem.") at 9. Critically, Plaintiffs do not contend that the footage is incomplete, misleading, or shows a partial view of what occurred. Although they argue that "[m]ultiple federal courts have declined to take judicial notice of body camera footage where its contents are disputed or subject to interpretation," Dkt. 43 ("Resp.") at 6, they point to no basis *here* to dispute the footage's content. As in *Johnson*, they "ha[ve] not challenged th[e] recordings; to the contrary, [their] response brief assumes their accuracy as a given." 2025 WL 965703, at *2. Instead, Plaintiffs argue that the facts the footage establishes do not support Defendants' *legal* positions. *E.g.*, Resp. at 7 (disagreeing with Defendants' "legal characterizations and interpretations"). But that is irrelevant to whether the footage is complete and accurate. Plaintiffs may argue that it does not defeat their claims. They fail to demonstrate that the Court should not view it.

The footage is also properly viewed because it has the potential to discredit Plaintiffs' allegations. *See Hyung Seok Koh v. Graf*, No. 11-CV-02605, 2013 WL 5348326, at *10 (N.D. Ill. Sept. 24, 2013) (court viewed interrogation video because it was "relevant and helpful when assessing whether it contradicts the [plaintiff's] factual allegations"); *Johnson*, 2025 WL 965703, at *2 (body-worn camera footage "blatantly" contradicted several allegations in the complaint). Plaintiffs insist that they were cited based on "misapplication of the Ordinance requirements," Resp. at 10, with no "investigation" into the volume of their amplification, *id.* at 18, and "based on the religious content of the speech," *id.* at 17. They also claim that Ndi and Dhamala's arrests demonstrate an "escalating severity of enforcement." *Id.* at 10. But the footage shows that the officers had evidence that Plaintiffs violated the Ordinance—both third-party complaints and what the officers could hear themselves. Mem. at 10–11. Nothing indicates that Plaintiffs were cited for engaging in religious speech: the officers assured Plaintiffs that they had the right to

2

speak but told them their volume was too loud. Mem. Ex. 2 at 4:38–4:44; Ex. 3 at 5:18–5:28. The footage also shows that Plaintiffs repeatedly refused to follow the officers' commands to turn down the amplifier, and in Ndi and Dhamala's case, to provide identification—that refusal, not any "escalation" of enforcement, necessitated their arrest. *See* Mem. at 4–8. Thus, the footage discredits many, if not all, of Plaintiffs' allegations.

Additionally, the Court may consider the footage under the doctrine of incorporation by reference because the Amended Complaint relies on video footage, and it is central to the claims asserted. *See id.* at 10–11. Plaintiffs acknowledge that they referenced video that they did not attach to the Amended Complaint, Resp. at 6, but they argue that it would "eviscerate" the incorporation requirement for the Court to view Defendants' video depicting the very same events, *id.* at 5. It would do no such thing. The Seventh Circuit "has been relatively liberal in its approach" to incorporation, *Hecker v. Deere & Co.*, 556 F.3d 575, 582 (7th Cir. 2009), deeming incorporation appropriate where a plaintiff relies on but fails to attach material and does not challenge the authenticity of the defendant's exhibit, *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013) ("[W]e have incorporated the exhibits . . . based on Williamson's own reliance on these documents and in the absence of any indication from her . . . that the documents are not genuine[.]"). Here, there is nothing unfair about viewing Defendants' footage when Plaintiffs referenced and relied on their own footage of the exact same incident but did not attach it. *See Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002) ("[W]ere it not for the exception, the plaintiff could evade dismissal under Rule 12(b)(6) simply by failing to attach to his complaint a document that proved that his claim had no merit."). The Court should therefore consider the officers' body camera footage in deciding this motion.[1]

---

[1] Alternatively, the Court may convert Defendants' motion to a motion for summary judgment. *See* Fed. R. Civ. P. 12(d). Summary judgment is appropriate when there is "no genuine dispute as to any material

**II.     Plaintiffs Fail To Allege A Basis For Municipal Liability (Counts I–IV, VI–VII).**

Defendants explained that Plaintiffs fail to allege a basis for municipal liability—an express policy, widespread custom or practice, or decision of a final policymaker—as *Monell* requires. 436 U.S. at 691; Mem. at 11–13. Plaintiffs concede that no express policy or decision by a final policymaker are at issue; they instead allege that the City's unwritten custom or practice is to enforce the Ordinance selectively against street preachers. Resp. at 7–10. But Plaintiffs fail to allege facts supporting the existence of a widespread custom or practice. To do so, Plaintiffs must have alleged much more than just the events related to their own citations. *See* Mem. at 12. Plaintiffs argue that their citations alone show "consistent enforcement at the same location, the identical misapplication of the Ordinance requirements (failing to conduct proper sound measurements), and the escalating severity of enforcement[.]" Resp. at 10. But neither the location nor the allegedly more severe enforcement (which the camera footage shows resulted from Plaintiffs' refusal to produce identification) demonstrates a widespread practice.

Plaintiffs attempt to bolster their allegations by citing *Acevedo v. Zatora et al.*, No. 1:24-cv-12654 (N.D. Ill., filed Dec. 9, 2024). Resp. at 9–10. But *Acevedo* does not help them. To begin, citing one more purported example of enforcement against a religious speaker does not allege a widespread custom or practice under *Monell*. No bright-line rule defines a widespread custom or practice, but "it is clear that a single incident—or even three incidents—do not suffice." *Wilson v. Cook County*, 742 F.3d 775, 780 (7th Cir. 2014); *see also Hamilton v. Oswego Cmty. Unit Sch. Dist. 308*, No. 20 C 0292, 2021 WL 767619, at *10 (N.D. Ill. Feb. 26,

---

fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56(d) requires the nonmovant to show specific reasons why it needs to conduct discovery to oppose the motion. Fed. R. Civ. P. 56(d). Although the evidence is viewed in the light most favorable to the nonmovant, facts that are contradicted by video evidence are not given the presumption of truth. *Scott*, 550 U.S. at 378–81; *see also Williams v. Brooks*, 809 F.3d 936, 942 (7th Cir. 2016).

4

2021) ("A practice is not widespread if it took place two, three, or four other times."). And even were three incidents enough, *Acevedo* involves allegations in a separate case, not facts, so it does not support their claim. *See Hamilton*, 2021 WL 767619, at *11 ("The existence of another lawsuit is not enough to state a claim that a defendant maintains a widespread practice."); *Arquero v. Dart*, 587 F. Supp. 3d 721, 730 (N.D. Ill. 2022); *see also Brooks v. Scheib*, 813 F.2d 1191, 1193 (11th Cir. 1987) ("[T]he number of complaints bears no relation to their validity."); *Poulin v. Bush*, 650 F. Supp. 3d 1280, 1306 (M.D. Fla. 2023) ("[Plaintiff] has not established that the prior lawsuits involved meritorious and substantially similar allegations[.]").[2]

Plaintiffs' *Monell* argument also fails because they allege no facts supporting a policy of "selective enforcement" of the Ordinance against religious speakers. *See* Resp. at 10. Plaintiffs provide no concrete examples of how the Ordinance is enforced against non-religious speakers using amplification. In support of their equal protection claim, they argue vaguely that Defendants have "ignor[ed] similar or louder secular activities" and speakers including "street performances, political demonstrations, and commercial advertising," *id.* at 16–17, and that "similar noise violations by non-religious speakers are not subject to the same aggressive enforcement[,]" *id.* at 19; *see also id.* at 21–23. These conclusory statements do not satisfy *Monell*, for two reasons. For one, the Court evaluates only the sufficiency of the complaint. *See Mercedez Benz Fin. Servs. USA, LLC v. City of Chicago*, No. 24 CV 4840, 2025 WL 1158651, at *3 (N.D. Ill. Apr. 21, 2025) ("[Plaintiff's] introduction of several new theories of *Monell* liability is not a supplementation of factual allegations, but an amendment of legal argument. . . . Therefore, the Court will not consider these newly asserted legal claims in resolving the City's

---

[2] Indeed, the City defendants in *Acevedo* relied on body camera footage attached to the complaint to argue in their pending motion to dismiss that Acevedo was arrested because he violated the Ordinance, not based on his (pro-life) speech. No. 1:24-cv-12654 (N.D. Ill.), Dkt. 45 at 8–9. The enforcement of the Ordinance against him does not support the widespread custom or practice Plaintiffs argue exists.

motion to dismiss."). The Amended Complaint contains no allegations about secular speakers' use of amplification or any enforcement (or lack thereof) against them. At most, Plaintiffs allege that, "[c]ompared to those who do not express a religious viewpoint, Plaintiffs have been and will continue to be selectively mistreated." Dkt. 17 ("Am. Compl.") ¶ 120. This provides no information about secular speakers' amplification use and does not suffice to plead a selective enforcement policy. Second, vague allegations about unspecified events do not satisfy Plaintiffs' burden to allege *facts* rendering their claims plausible. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).[3] The Court should dismiss Counts I–IV and VI–VII against the City.

### III. Plaintiffs' Vagueness Claims Fail (Counts III and VIII).

Defendants explained that Plaintiffs' vagueness challenge in Count III to an alleged "unwritten policy" fails both because Plaintiffs fail to allege such a policy exists, and because a vagueness challenge focuses on a law's *text*; it provides no path for a plaintiff to argue that misapplication renders a law vague. *See* Mem. at 15–16. Plaintiffs fail to respond to this argument and thus concede it. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010). The Court should dismiss Count III.

As to Plaintiffs' facial challenge in Count VIII, it fails because the Ordinance's plain text provides fair notice and sufficient guidance for enforcement and does not chill Plaintiffs' speech. Mem. at 13–15. Plaintiffs contend that the prohibition on amplification "louder than average conversational level at a distance of 100 feet or more" is vague because it does not specify a decibel level. Am. Compl. ¶ 152. But a law is impermissibly vague only when it does not afford

---

[3] Plaintiffs argue that they are entitled to discovery because they "cannot be expected to have exact knowledge of the City's enforcement practices against other parties prior to litigation" and need not include "such information . . . in the complaint." Resp. at 9; *see also id.* at 23. But burdensome discovery is required only if factual allegations rise "above the speculative level." *Twombly*, 550 U.S. at 555; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009) (Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

6

the public a reasonable opportunity to understand what conduct is prohibited, lacks minimal enforcement guidelines, or, in the First Amendment context, chills more speech than necessary due to its lack of specificity. *Grayned v. City of Rockford*, 408 U.S. 104, 108–09 (1972). And a facial challenge will succeed only if a law is impermissibly vague in all applications. *See Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 494–95 (1982). The Ordinance prescribes a readily understandable volume level and a specific distance by which such volume is measured. Mem. at 13–14 (citing MCC §§ 8-32-070, 8-32-020). It is certainly not vague in all applications—it is easy to imagine circumstances when amplified sound would be louder than average conversational level at a distance of 100 feet. And courts have routinely upheld other ordinances that provide even less guidance. *See id.* at 14–15.

   Plaintiffs ignore these cases and point to a few inapposite state court cases. Resp. at 13–14. Those cases held as vague language prohibiting "unreasonably loud, disturbing and unnecessary noise"; noise of "such character, intensity and duration as to be detrimental to the life or health of persons of reasonable sensitivity"; or "any . . . unnecessary or unusual sound or noise which . . . annoys . . . others[.]" *Id.* (citing *Tanner v. City of Virginia Beach*, 674 S.E.2d 848, 853 (Va. 2009); *Nichols v. City of Gulfport*, 589 So. 2d 1280, 1283 (Miss. 1991); *Thelen v. Georgia*, 526 S.E.2d 60, 62 (Ga. 2000)). Not only are these cases non-precedential, the language they address does not mirror the concrete terms used in the Ordinance. Rather than subjective terms like "unreasonable," "detrimental," or "unusual," the Ordinance includes a reasonably ascertainable volume level and a specific physical distance from which it is measured. Nor do Plaintiffs' cases support their argument that a decibel level must be identified. They cite *Dupres v. City of Newport*, 978 F. Supp. 429, 433 (D. R.I. 1997). Resp. at 14. Although the court there upheld a portion of a sound ordinance that relied on a decibel measurement, it did not suggest

7

that a decibel measurement is necessary. *Dupres*, 978 F. Supp. at 433. The mathematical precision to which Plaintiffs attempt to hold the City is not required by any precedent.[4]

Defendants also showed that the Ordinance did not have a "real and substantial" chilling effect on Plaintiffs' speech, as is required to receive heightened scrutiny for a facial vagueness challenge in the First Amendment context. *See* Mem. at 15 (quoting *Ctr. for Individual Freedom v. Madigan*, 697 F.3d 464, 470–71 (7th Cir. 2012)). The Ordinance allows Plaintiffs many options for speech, including preaching to the public without amplification or reducing their amplifier's volume. *Id.* Plaintiffs fail to meaningfully respond to this argument: they make only a perfunctory argument that "the medium is the message." *See* Resp. at 15.[5] They therefore concede the point. *See Bonte*, 624 F.3d at 466. The Court should dismiss Count VIII.

**IV.     Plaintiffs Fail To Allege A Violation Of Their Freedom of Speech (Count I).**

As Defendants explained, Plaintiffs' First Amendment challenge to the Ordinance in Count I should be addressed under the time, place, and manner framework. Mem. at 16. Plaintiffs concede the Ordinance's facial validity under this standard and contend only that Defendants' enforcement of the Ordinance against them was improper. Resp. at 15–16. But their as-applied claim fails because limiting their amplification volume furthered a substantial interest, was not based on their message's content, and left them ample alternative ways to communicate that message. Mem. at 16–18.

---

[4] Nor would it yield a better ordinance. The conversational standard sets clear boundaries for conduct based on a socially meaningful, easy-to-apply benchmark. Decibel-based enforcement would require technical training and special calibrated equipment.

[5] Plaintiffs cite *Saia v. New York*, 334 U.S. 558 (1948), to argue that prohibiting amplification chills their speech. Resp. at 15. That is not a vagueness argument. *Saia* is inapposite regardless. In *Saia*, the Supreme Court held that an ordinance was an unconstitutional prior restraint because it required a person to obtain a permit from the police chief prior to using a loudspeaker. 334 U.S. at 559–60. The Court was concerned that the chief's discretion was completely unfettered. *Id.* at 560; *see also Gaughan v. City of Cleveland*, 212 F. App'x 405, 412 (6th Cir. 2007) (explaining *Saia*'s irrelevance to the plaintiff's vagueness claim).

8

Plaintiffs' Response does not address Defendants' arguments that the City has a substantial interest in regulating noise amplification and allows sufficient alternative ways to communicate their message. *See id.* Nor do they address the City's argument that the Ordinance is not content- or viewpoint-based simply because officers must use some judgement to enforce it. *See id.* at 17–18. They therefore concede those points. *See Bonte*, 624 F.3d at 466. Plaintiffs argue instead that Defendants' enforcement of the Ordinance against them was based on the religious content and viewpoint of their message. *See* Resp. at 16–18. As Defendants discuss above in Part II, and in their Motion, *see* Mem. at 12–13, 17, however, Plaintiffs' conclusory allegations of such discriminatory enforcement are insufficient to support their claim.

Moreover, the Amended Complaint and body-worn camera footage undermine Plaintiffs' claim of discriminatory enforcement because they show that the officers had ample evidence of Ordinance violations and never referenced the content of Plaintiffs' speech. *See id.* at 12–13. Plaintiffs contend that "the core" of their complaint is that "the police themselves did not conduct the required measurement at a specific distance of 100 feet." Resp. at 17. They argue that such a lack of evidence and the officers' "permit-focused enforcement" creates the implication that the officers were targeting them for their religious speech. *Id.* But these facts do not suggest that the officers discriminated against Plaintiffs based on their speech. They do not even suggest the officers did anything wrong. The Ordinance does not require decibel-based measurement, and it includes a permit requirement: a person may use amplified sound "louder than average conversational level at a distance of 100 feet or more . . . from the source," MCC § 8-32-070(a), only as part of a "public assembly" or with a "parade" permit, *id.* § -070(c).

Plaintiffs argue that discriminatory enforcement is also implied by the allegation that the "heckler," on whose complaint the officers allegedly based their enforcement, "specifically

9

targeted Plaintiffs' religious message, not their volume[.]" Resp. at 17–18; *see also id.* at 21 ("The heckler's explicit threat . . . followed by immediate police response without investigation, reveals a system designed to suppress religious viewpoints based on community hostility rather than legitimate regulatory concerns."). But the "heckler" stated only, "Every time you're out here I'm going to call the police, I'm just letting you know. I'm going to keep calling and we'll play this game all fucking summer. Get a life." *Id.* He may have been angry, but he expressed no hostility toward the *content* of Plaintiffs' speech. And the camera footage shows that the complainant told the officers that Plaintiffs' loud amplifier was disrupting his legal work. Mem. at 4. Plaintiffs fail to allege a violation of their freedom of speech. Count I should be dismissed.

## V.  Plaintiffs Fail To Allege A Free Exercise Claim (Count II).

Plaintiffs concede that the Ordinance is facially neutral with respect to religion and argue only that it infringes on their religious rights because of Defendants' alleged "unwritten policy" of enforcing it unequally against street preachers. Resp. at 20–21. As explained above, Plaintiffs fail to demonstrate that such a practice exists. *See* Part II, above; Mem. at 11–13, 19. Plaintiffs' claim fails accordingly.

Plaintiffs' claim also fails because they do not allege that the Ordinance burdens a central religious belief or practice in a significant way, as required to state a free exercise claim. *See* Mem. at 20. Plaintiffs argue that the Court should not consider the significance of their amplified street preaching to their religious practice because to do so would "impermissibly entangl[e] [it] in theological determinations." Resp. at 21. The Court need not make any such determination, but on a motion to dismiss, it should evaluate what Plaintiffs have *alleged*. And as Defendants explained, the singular allegation that their "tone" would be "distort[ed]" without amplification is insufficient. *See* Mem. at 20 (quoting Am. Compl. ¶ 125). Plaintiffs attempt now to

10

characterize street preaching with their desired "tone" as integral to their religion, stating that street preaching is a "fundamental form of religious exercise with deep historical roots in Christianity" and the tone "directly relates to the theological content and effectiveness of their religious communication." Resp. at 21. Even if Plaintiffs had alleged this in the Amended Complaint (and they did not), it still does not indicate that amplification is "central" to their religious practice or that they would not be able to practice their religion effectively without it. *See Kaufman v. McCaughtry*, 419 F.3d 678, 683 (7th Cir. 2005). Plaintiffs fail to demonstrate that their religious practice was substantially burdened. The Court should dismiss Count II.

**VI.     Plaintiffs Fail To Allege An Equal Protection Claim (Count IV).**

Defendants explained that Plaintiffs' equal protection claim fails because they did not state facts sufficient to make a "credible showing" that Defendants treated them differently than similarly situated persons. Mem. at 21–22 (quoting *United States v. Armstrong*, 517 U.S. 456, 470 (1996)). Plaintiffs respond that Defendants demand an "impossible standard" and argue that the combination of the officers' enforcement following the "heckler's" complaint, the "temporal proximity" and "escalated response" between the two enforcement events, and "the apparent tolerance for secular amplified activities" suffices to show different treatment. Resp. at 22–23.

As explained in Parts II and IV above, and in Defendants' Motion, Mem. at 11–13, 21–22, Plaintiffs' conclusory allegations of discriminatory treatment are insufficient. The Amended Complaint and the body camera footage show that the officers' enforcement was due to the volume of Plaintiffs' amplifier and their failure to comply with orders, not their religious speech. *See id.* at 7–8, 22; Ex. 2 at 4:38–4:44; Ex. 3 at 5:18–5:28. The Amended Complaint contains no facts suggesting a greater "tolerance" for amplified secular activities, let alone any examples of them. *See Charleston v. Bd. of Trs. of Univ. of Ill. at Chicago*, 741 F.3d 769, 775 (7th Cir. 2013)

(explaining that plaintiff failed to offer "further factual enhancement" about alleged similarly situated persons). And the allegations related to the timing of Ndi's and Dhamala's arrests relative to the dismissal of Raio's citation do not imply discriminatory treatment. Perhaps Ndi and Dhamala simply refrained from using the amplifier between the time of Raio's citation and its dismissal. Plaintiffs' allegations fall far short of a "credible showing" of different treatment toward secular speakers. *Armstrong*, 517 U.S. at 470. The Court should dismiss Count IV.

## VII. Plaintiffs Fail To Allege A Fourth Amendment False Arrest Claim (Count VI).

Defendants explained that Plaintiffs' false arrest claim against Officers Jackson, Sutor, and Sandoval fails because they were not involved in Dhamala's and Ndi's arrests. Mem. at 22. As Plaintiffs do not respond to this, they concede it. *See Bonte*, 624 F.3d at 466. Plaintiffs' claims against the other officers also fail, because Plaintiffs do not dispute that they did not obey officers' orders, which alone provides probable cause for their arrest. *See* Mem. at 23–24.

The officers also had ample probable cause for Dhamala and Ndi's arrests for Ordinance violations. *Id.* at 22–24. Plaintiffs argue that the officers did not measure the amplifier's volume at a distance of 100 feet, relying only on "unverified citizen complaints and their own subjective impressions[.]" Resp. at 24. But Plaintiffs allege only that the officers explained that a "sound reading" of their volume was not required. Am. Compl. ¶ 64. This does not mean the officers failed to investigate. The body-worn camera footage shows that they investigated the amplifier's volume from beyond 100 feet. *See* Mem. at 16.[6] Officers may also base probable cause on citizen complaints, even without their own investigation. *See Williamson*, 714 F.3d at 441. As Plaintiffs'

---

[6] Plaintiffs attempt to discredit the officers' determination by alleging that they measured the amplifier at "'74db' while ambient downtown noise measured 'between 71–85db[.]'" Resp. at 21. But Plaintiffs allege this occurred on the day of Raio's citation, not Dhamala's and Ndi's. *See* Am. Compl. ¶ 52.

12

allegations do not establish that they were arrested without probable cause, their false arrest claim in Count VI fails.

### VIII. Plaintiffs Fail To Allege A Retaliatory Arrest Claim (Count VII).

Plaintiffs' retaliatory arrest claim fails based on the officers' probable cause for their arrests. *See* Mem. at 24. Plaintiffs respond that "the existence of probable cause . . . remains disputed" due to the Ordinance's "ambiguous language" and because the volume level demonstrated by the body camera footage shows they "may not have violated the Ordinance." Resp. at 20. These arguments do not defeat probable cause, which considers only whether, "at the time of the arrest, the facts and circumstances within the officer's knowledge" would lead "a prudent person, or one of reasonable caution" to think an offense has been or is about to be committed. *Gonzalez v. City of Elgin*, 578 F.3d 526, 537 (7th Cir. 2009) (cleaned up). The camera footage demonstrates that the officers investigated the amplification volume and reasonably concluded that it violated the Ordinance, *see* Mem. at 7, and Plaintiffs do not dispute that probable cause existed to arrest them for disobeying officer orders, *see id.* at 23–24.

Plaintiffs' retaliatory arrest claim also fails because they identify no differential treatment of others engaged in the same unlawful activity, but not the same speech. Plaintiffs argue that an "evidentiary mosaic" shows Defendants' alleged retaliatory motive for citing Ndi and Dhamala—the proximity of their arrest to the dismissal of Raio's citation, the increased severity of enforcement, the nearby location, and the alleged lack of investigation into the amplification volume level. Resp. at 19. But as discussed in Parts II and VI above, none of this suggests a discriminatory or retaliatory motive. The Court should dismiss Count VII.

13

**IX.     The Defendant Officers Are Entitled To Qualified Immunity (Counts I–IV, VI–VII).**

The Court may alternatively dismiss Plaintiffs' claims based on the individual officers' qualified immunity, which is demonstrated by the lack of allegations against several of the officers, and the other officers' reasonable actions in light of Plaintiffs' Ordinance violations and refusal to comply with officer orders. Mem. at 25–27. It is Plaintiffs' burden to defeat the defense, *Estate of Escobedo v. Martin*, 702 F.3d 388, 404 (7th Cir. 2012), by citing "factually similar" precedent demonstrating that a right was clearly established at the time of the alleged violation or that "the alleged constitutional violation was obvious[,]" *Doe v. Village of Arlington Heights*, 782 F.3d 911, 915 (7th Cir. 2015). Courts should not "define clearly established law at a high level of generality." *Kisela v. Hughes*, 584 U.S. 100, 104 (2018) (per curiam) (cleaned up).

Plaintiffs respond that it was "clearly established that content-based and viewpoint-based speech restrictions receive strict scrutiny." Resp. at 25 (citing *Reed v. Town of Gilbert*, 576 U.S. 155 (2015)). Even setting aside that Plaintiffs' conclusory allegations do not suggest any "discrimination against Plaintiffs' religious viewpoint," *see id.*, *Reed*'s general point does not make it obvious that it was unconstitutional to require Plaintiffs to lower their amplifier volume. *Reed* addressed a sign ordinance, not a sound ordinance. Plaintiffs also argue that their right to amplification was clearly established based on *Saia v. New York*, 334 U.S. 558 (1948), which they argue held that "complete bans" on amplification violate the First Amendment. *Id.* That misconstrues *Saia*. *See* Part III n.5 above. And besides, neither the Ordinance nor Defendants' enforcement of it constitute a "complete ban" on amplification. *See* MCC § 8-32-070. *Saia* does not support that every reasonable officer should have understood that the Ordinance could not be enforced against Plaintiffs. Because the Defendant officers are entitled to qualified immunity, the Court should dismiss Counts I through IV, VI, and VII against them.

14

## X. Plaintiffs Fail To State An IRFRA Claim (Count V).

Plaintiffs allege no substantial burden on their religious exercise, as required to state an IRFRA claim. *See* Mem. at 28–29 (citing 775 ILCS 35/15). They allege only that, "[w]ithout amplification, they would need to raise their voice to be understood by passersby, which would distort the tone of their message." Am. Compl. ¶ 125. But that would not render their religious exercise "effectively impracticable." *See Civil Liberties for Urban Believers v. City of Chicago*, 342 F.3d 752, 761 (7th Cir. 2003).

Plaintiffs respond by calling amplified preaching "integral" to their religious practice. Resp. at 26. That is not alleged in the Amended Complaint, and it is a transparent attempt to circumvent the substantial burden analysis by defining their protected "religious exercise" narrowly to match the exact conduct the Ordinance prohibits. Under that approach, individuals could wield IRFRA to exempt themselves from any generally applicable regulation. Plaintiffs do not allege that their religion mandates they use sound amplification, *see Diggs v. Snyder*, 775 N.E.2d 40, 45 (Ill. App. 2002), or that Defendants' enforcement of the Ordinance required them to abandon their religion, *see id.* (citing *Wisconsin v. Yoder*, 406 U.S. 205, 217–18 (1972)).

Plaintiffs also argue that Defendants' enforcement fails the least restrictive means test because it is a "blanket prohibition on religious amplification." Resp. at 26. But again, no alleged facts suggest the Ordinance is applied only to religious speech. Count V should be dismissed.

Alternatively, Defendants explained that the Tort Immunity Act bars Plaintiffs' claim for damages under IRFRA. Mem. at 29. Plaintiffs respond only by stating that they seek injunctive and declaratory relief, Resp. at 26, and thus concede this argument, *see Bonte*, 624 F.3d at 466.

## CONCLUSION

This Court should dismiss Plaintiffs' claims under Rule 12(b)(6) with prejudice.

15

| | |
|---|---|
| Date: August 8, 2025 | Respectfully submitted, |
| ELLEN MCLAUGHLIN<br>ellen.mclaughlin@cityofchicago.org<br>DYLAN M. GILL<br>dylan.gill@cityofchicago.org<br>ERIC SEELEMAN<br>eric.seeleman@cityofchicago.org<br>City of Chicago Department of Law<br>2 North LaSalle, Suite 520<br>Chicago, IL 60602<br>312-742-5147 / 744-4216 / 742-3902 | MARY B. RICHARDSON-LOWRY,<br>Corporation Counsel for the City of Chicago<br><br>By: */s/ Dylan M. Gill*<br>Assistant Corporation Counsel |

*Attorneys for Defendant City of Chicago*

16