**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |  |
|---|---|---|
| BRETT RAIO, PEREZ NDI, and REETIK DHAMALA, | ) ) ) | |
| | ) | Case No. 1:25-cv-02709 |
| Plaintiffs, | ) ) | |
| | ) | Hon. Sara L. Ellis |
| v. | ) ) | |
| The CITY OF CHICAGO, an Illinois municipal corporation, and Chicago Police Officers MARIO L. JACKSON, NICO A. SUTOR, CARLOS R. CAMEY SANDOVAL, MICHAEL P. JOYCE, WILLIAM E. GATLIN, and MICHAEL PETRASKI in their official and individual capacities, | ) ) ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' ANSWER TO PLAINTIFFS' FIRST AMENDED COMPLAINT,
AFFIRMATIVE DEFENSES, AND JURY DEMAND**

**STATEMENT OF THE CASE**

1.     Defendants have adopted a de facto policy of arresting street preachers, regardless of evidence, simply for sharing the Gospel on the streets of Chicago. Such a policy constitutes an egregious violation of constitutional rights, unmoored from any of the actual published ordinances of Chicago.

**ANSWER:** Deny.

2.     Chicago ordinances, on their face, only require permits for excessively loud amplification that is louder than an average conversational level at a distance of a hundred feet. Chi., Ill., Code § 8-32-070.

**ANSWER:** Defendants deny that the substance of the Municipal Code of Chicago, Ill. ("MCC") § 8-32-070 is properly and accurately pleaded. Paragraph 2 contains legal conclusions to which no response is required. Defendants deny the remaining allegations in Paragraph 2.

1

3. Rather than properly enforcing this ordinance, however, Defendants cite and even arrest anyone who uses amplification without a permit, despite the fact the requirement for a permit for all amplification is expressly contradicted by law.

**ANSWER:** Deny.

4. Defendants have cited and arrested Plaintiffs for conduct, i.e., amplification without a permit, that is simply not prohibited by Chicago ordinances.

**ANSWER:** Deny.

5. This action is brought pursuant to 42 U.S.C. § 1983 to vindicate Plaintiffs' constitutional rights.

**ANSWER:** Defendants admit that Plaintiffs purport to bring § 1983 claims and deny that Plaintiffs are entitled to any relief.

6. Defendants' policies and practices have deprived and will continue to deprive Plaintiffs of paramount rights and guarantees under the United States Constitution, under the color of state law.

**ANSWER:** Deny.

## JURISDICTION & VENUE

7. This civil rights action raises federal questions under the United States Constitution, particularly the First, Fourth, and Fourteenth Amendments, as protected by the Civil Rights Act, 42 U.S.C. § 1983.

**ANSWER:** Defendants note that Plaintiffs' Fourteenth Amendment claims were dismissed and admit the remaining allegations.

8. This Court has original jurisdiction over these federal claims pursuant to 28 U.S.C. §§ 1331 and 1343.

**ANSWER:** Defendants deny that the court has original jurisdiction over Plaintiffs' federal claims under 28 U.S.C. § 1343. Defendants admit that the Court has original jurisdiction over Plaintiffs' federal claims under 28 U.S.C. § 1331.

9. This Court has authority to award the requested damages pursuant to 28 U.S.C. § 1343; the requested declaratory relief pursuant to 28 U.S.C. §§ 2201–02; the requested injunctive relief pursuant to 28 U.S.C. § 1343 and Fed. R. Civ. P. 65; and costs and attorneys' fees under 42 U.S.C. § 1988.

**ANSWER:** Defendants deny that 28 U.S.C. § 1343 or Federal Rule of Civil Procedure 65 provide authority to award the relief Plaintiffs request. Defendants further deny that Plaintiffs are entitled to any relief. Defendants admit the remaining allegations in Paragraph 9.

10. This action is also brought under Article I of the Illinois Constitution and the Illinois Religious Freedom Restoration Act ("RFRA"), 775 ILCS 35/1 et seq. Because these ancillary state law claims involve the same parties and arise from the same incident as their federal claims, this Court has supplemental jurisdiction under 28 U.S.C. § 1367.

**ANSWER:** Defendants deny that Plaintiffs bring any claims under Article I of the Illinois Constitution. Defendants admit the remaining allegations in Paragraph 10.

11. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because Defendants reside in this district and division and/or all the acts described in this Complaint occurred within this district.

**ANSWER:** Admit.

## THE PARTIES

12. Plaintiff Brett Raio is a full-time Gospel singer and entrepreneur based out of Maine who travels the country to evangelize in public areas.

3

**ANSWER:** Defendants lack sufficient knowledge or information to admit or deny the allegations in Paragraph 12.

13. Raio frequently uses amplification for his evangelization, and is well-versed on the case law regarding the use of amplification. He always carries with him a fact sheet of First Amendment law regarding the use of amplification.

**ANSWER:** Defendants lack sufficient knowledge or information to admit or deny the allegations in Paragraph 13.

14. Plaintiff Perez Ndi is a street preacher based out of Chicago, Illinois. Since immigrating to the United States from Cameroon, he has felt a religious calling to deliver religious prophecies to the public of Chicago and beyond, also traveling the country to evangelize.

**ANSWER:** Defendants lack sufficient knowledge or information to admit or deny the allegations in Paragraph 14.

15. Plaintiff Reetik Dhamala is a street preacher based out of Wheaton, Illinois. Since immigrating to the United States from Nepal, he has been an active member of a local Nepali church and assisted local street preachers.

**ANSWER:** Defendants lack sufficient knowledge or information to admit or deny the allegations in Paragraph 15.

16. Defendant City of Chicago is a municipal corporation duly incorporated under the laws of the State of Illinois and is the employer and principal of defendant police officers.

**ANSWER:** Defendants admit that the City of Chicago is a municipal corporation incorporated under the laws of the State of Illinois and is the employer of the defendant police officers. Defendants deny that the City of Chicago is the "principal" of the defendant police officers to the extent that term implies respondeat superior liability under 42 U.S.C. § 1983.

4

17. Defendant Mario L. Jackson is a member of the Chicago Police Department with a badge number of 18102 and participated in the arrest of Raio on December 10, 2024. He is named in his individual and official capacity.

**ANSWER:** Defendants deny that Raio was arrested and further state that Officer Jackson participated in the detention of Raio in connection with a noise ordinance violation, during which a citation was issued. Defendants admit the remaining allegations in Paragraph 17.

18. Defendant Nico A. Sutor is a member of the Chicago Police Department with a badge number of 3860 and participated in the arrest of Raio on December 10, 2024. He is named in his individual and official capacity.

**ANSWER:** Defendants deny that Raio was arrested and further state that Officer Sutor participated in the detention of Raio in connection with a noise ordinance violation, during which a citation was issued. Defendants admit the remaining allegations in Paragraph 18.

19. Defendant Carlos R. Camey Sandoval is a member of the Chicago Police Department with a badge number of 7055 and participated in the arrest of Raio on December 10, 2024. He is named in his individual and official capacity.

**ANSWER:** Defendants deny that Officer Sandoval participated in the arrest of Raio. Defendants admit the remaining allegations in Paragraph 19.

20. Defendant Michael P. Joyce is a member of the Chicago Police Department with a badge number of 6870 who participated in the arrest of Ndi and Dhamala on February 24, 2025. He is named in his individual and official capacity.

**ANSWER:** Admit.

21. Defendant William E. Gatlin is a member of the Chicago Police Department with a badge number of 9376 who participated in the arrest of Ndi and Dhamala on February 24, 2025. He is named in his individual and official capacity.

**ANSWER:** Admit.

22. Defendant Michael J. Petraski is a member of the Chicago Police Department with a badge number of 245 who participated in the arrest of Ndi and Dhamala on February 24, 2025. He is named in his individual and official capacity.

**ANSWER:** Defendants deny that Lieutenant Petraski participated in Ndi and Dhamala's arrest. Defendants admit the remaining allegations in Paragraph 22.

23. Defendants were at all times material to this Complaint acting under color of law.

**ANSWER:** Defendants admit that they were acting under color of law during the incidents alleged in the Complaint, but deny any misconduct or wrongdoing alleged herein.

## FACTUAL BACKGROUND

24. The facts of this case stem from two separate, but related, arrests at the same location: the intersection of East Madison Street and North Michigan Street next to Millenium Park in Chicago, Illinois.

**ANSWER:** Defendants admit that this case is based, in part, on the arrest of Ndi and Dhamala at the intersection of East Madison Street and North Michigan Avenue. Defendants deny the remaining allegations in Paragraph 24.

### I. The Arrest of Raio on December 10, 2024

25. On December 10, 2024, Brett Raio, Perez Ndi, and Reetik Dhamala were at the Madison/Michigan intersection, engaged in street preaching.

**ANSWER:** Defendants lack sufficient knowledge or information to admit or deny the allegation that Plaintiffs were engaged in street preaching. Defendants City, Jackson, Sutor, and Sandoval admit the remaining allegations in Paragraph 25. Defendants Joyce, Gatlin, and Petraski lack sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 25.

26. They livestreamed their preaching on social media.

**ANSWER:** Defendants lack sufficient knowledge or information to admit or deny the allegations in Paragraph 26.

27. Plaintiffs used a microphone connected to a battery-powered speaker, owned by Ndi, to play music and amplify their voice.

**ANSWER:** Defendants City, Jackson, Sutor, and Sandoval admit that Plaintiffs amplified their voices and music. Defendants City, Jackson, Sutor, and Sandoval lack sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 27. Defendants Joyce, Gatlin, and Petraski lack sufficient knowledge or information to admit or deny the allegations in Paragraph 27.

28. Shortly before 11:00 am, an individual approached and heckled Plaintiffs, who then moved the speaker away from the heckler in an attempt to help appease him.

**ANSWER:** Defendants lack sufficient knowledge or information to admit or deny the allegations in Paragraph 28.

29. The individual continued heckling, so Raio explained, "This is the best we can do because we still want everyone to hear the Gospel, you know."

**ANSWER:** Defendants lack sufficient knowledge or information to admit or deny the allegations in Paragraph 29.

30. Upon information and belief, this individual called the police about their conduct.

**ANSWER:** Defendants lack sufficient knowledge or information to admit or deny the allegations in Paragraph 30.

31. A Chicago Police Department car drove up and started watching the street preachers at approximately 11:15 am.

**ANSWER:** Defendants City, Jackson, and Sutor lack sufficient knowledge or information to admit or deny the allegation that Plaintiffs were street preachers. Defendants City, Jackson, and Sutor admit

the remaining allegations in Paragraph 31. Defendants Sandoval, Joyce, Gatlin, and Petraski lack sufficient knowledge or information to admit or deny the allegations in Paragraph 31.

32. Raio took his phone from his pocket to begin recording Defendants Jackson and Sutor, wearing badges of the Chicago Police Department, as they approached Plaintiffs.

**ANSWER:** Defendants City, Jackson, and Sutor lack sufficient knowledge or information to admit or deny the allegation that Raio began recording Officers Jackson and Sutor with his phone. Defendants City, Jackson, and Sutor admit the remaining allegations in Paragraph 32. Defendants Sandoval, Joyce, Gatlin, and Petraski lack sufficient knowledge or information to admit or deny the allegations in Paragraph 32.

33. Officer Jackson ordered Plaintiffs to lower the sound and demanded a permit.

**ANSWER:** Defendants City, Jackson, and Sutor admit. Defendants Sandoval, Joyce, Gatlin, and Petraski lack sufficient knowledge or information to admit or deny the allegations in Paragraph 33.

34. In response, Raio, said, "Officer there's no permit for the First Amendment."

**ANSWER:** Defendants City, Jackson, and Sutor admit the allegations in Paragraph 34. Defendants Sandoval, Joyce, Gatlin, and Petraski lack sufficient knowledge or information to admit or deny the allegations in Paragraph 34.

35. Officer Jackson then turned the speaker off, told the Plaintiffs that they needed a permit, and grabbed the speaker.

**ANSWER:** Defendants City, Jackson, and Sutor deny the allegation that Officer Jackson grabbed the speaker. Defendants City, Jackson, and Sutor admit the remaining allegations in Paragraph 35. Defendants Sandoval, Joyce, Gatlin, and Petraski lack sufficient knowledge or information to admit or deny the allegations in Paragraph 35.

36. Ndi said, "Hey don't touch our speaker!" and went to grab his speaker, but Officer Jackson kicked the speaker hard enough to move it back about four feet before grabbing Ndi by the collar and holding his wrist, threatening Ndi with handcuffs.

**ANSWER:** Defendants City, Jackson, and Sutor admit that Ndi said, "don't touch our speaker" and attempted to grab the speaker, and further state that Officer Jackson grabbed Ndi by the jacket. Defendants City, Jackson, and Sutor deny the remaining allegations in Paragraph 36. Defendants Sandoval, Joyce, Gatlin, and Petraski lack sufficient knowledge or information to admit or deny the allegations in Paragraph 36.

37. The officers continued to question Plaintiffs as to whether they had a permit.

**ANSWER:** Defendants City, Jackson, and Sutor admit the allegations in Paragraph 37. Defendants Sandoval, Joyce, Gatlin, and Petraski lack sufficient knowledge or information to admit or deny the allegations in Paragraph 37.

38. Plaintiffs made clear that they had no permit and were exercising their First Amendment right to free speech.

**ANSWER:** Defendants City, Jackson, and Sutor deny the allegations in Paragraph 38. Defendants Sandoval, Joyce, Gatlin, and Petraski lack sufficient knowledge or information to admit or deny the allegations in Paragraph 38.

39. The officers placed Raio in handcuffs.

**ANSWER:** Defendants City, Jackson, and Sutor admit that Defendants Jackson and Sutor placed Raio in handcuffs. Defendants City, Jackson, and Sutor deny the remaining allegations in Paragraph 39. Defendants Sandoval, Joyce, Gatlin, and Petraski lack sufficient knowledge or information to admit or deny the allegations in Paragraph 39.

40. Plaintiffs repeatedly asked the officers to identify themselves but they did not do so.

**ANSWER:** Defendants City, Jackson, and Sutor admit that Raio and Ndi asked the officers to identify themselves and deny the remaining allegations in Paragraph 40. Defendants Sandoval, Joyce, Gatlin, and Petraski lack sufficient knowledge or information to admit or deny the allegations in Paragraph 40.

41. As Officer Jackson put handcuffs on Raio, he stated, "You're putting me in handcuffs right now? Am I being detained?"

**ANSWER:** Defendants City, Jackson, and Sutor admit the allegations in Paragraph 41. Defendants Sandoval, Joyce, Gatlin, and Petraski lack sufficient knowledge or information to admit or deny the allegations in Paragraph 41.

42. The officer replied. "Yes you are being detained, I asked you for a permit."

**ANSWER:** Defendants City, Jackson, and Sutor deny that Officer Jackson is accurately quoted in Paragraph 42. Defendants Sandoval, Joyce, Gatlin, and Petraski lack sufficient knowledge or information to admit or deny the allegations in Paragraph 42.

43. Raio asked what crime he was committing and was not given an answer.

**ANSWER:** Defendants City, Jackson, and Sutor admit that Raio asked what crime he committed and deny the remaining allegations in Paragraph 43. Defendants Sandoval, Joyce, Gatlin, and Petraski lack sufficient knowledge or information to admit or deny the allegations in Paragraph 43.

44. Raio asked to speak with a supervisor and was not given an answer.

**ANSWER:** Defendants City, Jackson, and Sutor admit that Raio asked to speak with a supervisor and deny the remaining allegations in Paragraph 44. Defendants Sandoval, Joyce, Gatlin, and Petraski lack sufficient knowledge or information to admit or deny the allegations in Paragraph 44.

45. Raio asked to share information about his First Amendment rights, explaining that the Supreme Court had protected these rights in Saia v. New York. He was not given a response.

**ANSWER:** Paragraph 45 contains legal conclusions to which no response is required. Defendants deny the remaining allegations in Paragraph 45.

46. The officer told Raio "You cannot have amplified music out here."

**ANSWER:** Defendants City, Jackson, and Sutor admit the allegations in Paragraph 46. Defendants Sandoval, Joyce, Gatlin, and Petraski lack sufficient knowledge or information to admit or deny the allegations in Paragraph 46.

47. When a supervising officer, Officer Sandoval, finally arrived a few minutes later, he completely ignored Raio as Raio attempted to speak with him and ordered the officers to "Yeah arrest him, do whatever you need to do."

**ANSWER:** Defendants City, Jackson, Sutor, and Sandoval admit that Officer Sandoval arrived. Defendants City, Jackson, Sutor, and Sandoval deny the remaining allegations in Paragraph 47. Defendants Joyce, Gatlin, and Petraski lack sufficient knowledge or information to admit or deny the allegations in Paragraph 47.

48. At one point, an officer said, "I'm going to take you to jail because you're playing amplified music."

**ANSWER:** Defendants City, Jackson, and Sutor admit the allegations in Paragraph 48 but deny any misconduct or wrongdoing alleged therein. Defendants Sandoval, Joyce, Gatlin, and Petraski lack sufficient knowledge or information to admit or deny the allegations in Paragraph 48.

49. Throughout this interchange, the officers kept Raio handcuffed for over twenty minutes, despite his in no way resisting or otherwise demonstrating any threat.

**ANSWER:** Defendants City, Jackson, Sutor, and Sandoval admit that Raio was handcuffed but deny the remaining allegations in Paragraph 49. Defendants Joyce, Gatlin, and Petraski lack sufficient knowledge or information to admit or deny the allegations in Paragraph 49.

50. The heckler who, Plaintiffs believe, called the police came up and yelled at Plaintiffs for their religious speech. He said: "Every time you're out here I'm going to call the police, I'm just letting you know. I'm going to keep calling and we'll play this game all fucking summer. Get a life."

**ANSWER:** Defendants lack sufficient knowledge or information to admit or deny the allegations in Paragraph 50.

51. Throughout this time, the amplitude of the sound remained low. Plaintiffs had a decibel meter with them and measured their volume after the officers left.

**ANSWER:** Defendants City, Jackson, Sutor, and Sandoval lack sufficient knowledge or information to admit or deny the allegations that Plaintiffs had a decibel meter and measured their volume after the officers left. Defendants City, Jackson, Sutor, and Sandoval deny the remaining allegations in Paragraph 51. Defendants Joyce, Gatlin, and Petraski lack sufficient knowledge or information to admit or deny the allegations in Paragraph 51.

52. Raio crossed Michigan Avenue and measured the decibel level with a decibel meter. The decibel of their preaching was a consistent 74db, while the ambient noise of noisy downtown Chicago was between 71-85db, demonstrating that their amplified noise was lower than the ambient noise.

**ANSWER:** Defendants lack sufficient knowledge or information to admit or deny the allegations in Paragraph 52.

53. The police officers never used a decibel meter, but did mention that a citizen who called in a complaint had measured Raio's sound with a decibel meter app and determined it was "too loud," despite no decibel level being in the ordinance.

**ANSWER:** Paragraph 53 contains legal conclusions to which no response is required. Defendants City, Jackson, Sutor, and Sandoval admit that the officers never used a decibel meter and that another officer mentioned a complaint from a citizen who measured Raio's sound with a sound meter app.

Defendants City, Jackson, Sutor, and Sandoval deny the remaining allegations in Paragraph 53. Defendants Joyce, Gatlin, and Petraski lack sufficient knowledge or information to admit or deny the allegations in Paragraph 53.

54. Instead, the officers consistently suggested that noise amplification is itself illegal.

**ANSWER:** Defendants City, Jackson, Sutor, and Sandoval deny the allegations in Paragraph 54. Defendants Joyce, Gatlin, and Petraski lack sufficient knowledge or information to admit or deny the allegations in Paragraph 54.

55. Raio was given a Notice of Administrative Ordinance Violation ("ANOV") and was ordered to appear at the Chicago Department of Administrative Hearings on February 21, 2025.

**ANSWER:** Defendants City, Jackson, Sutor, and Sandoval admit the allegations in Paragraph 55. Defendants Joyce, Gatlin, and Petraski lack sufficient knowledge or information to admit or deny the allegations in Paragraph 55.

56. Raio was charged with violating Chicago Municipal Code §§ 8-4-055 (Sound Emitting Devices on Public Conveyances), and 2-84-300(a) (Resisting Police Officer or Aiding Escape). Notably, the offense did not occur on a public conveyance, and the officer presumably intended to cite Raio for violating § 8-32-070 (Music and Amplified Sound).

**ANSWER:** Defendants City, Jackson, and Sutor admit the allegations in Paragraph 56 but deny any misconduct or wrongdoing alleged therein. Defendants Joyce, Gatlin, and Petraski lack sufficient knowledge or information to admit or deny the allegations in Paragraph 56.

57. The officers left the scene after serving Raio with the ANOV.

**ANSWER:** Defendants City, Jackson, Sutor, and Sandoval admit that they left the scene after Raio was served with the ANOV. Defendants City, Jackson, Sutor, and Sandoval deny the remaining allegations in Paragraph 57. Defendants Joyce, Gatlin, and Petraski lack sufficient knowledge or information to admit or deny the allegations in Paragraph 57.

13

58.     On February 21, 2025, counsel for Raio showed the video taken of the incident to the prosecuting attorney, who promptly dismissed both charges after viewing the video.

**ANSWER:** Defendants lack sufficient knowledge or information to admit or deny the allegations in Paragraph 58.

## II.     The Arrests of Ndi and Dhamala on February 24, 2025

59.     The next business day after the charges against Raio were dismissed, February 24, 2025, Ndi and Dhamala were arrested.

**ANSWER:** Defendants City, Joyce, Gatlin, and Petraski admit that Ndi and Dhamala were arrested on February 24, 2025. Defendants City, Joyce, Gatlin, and Petraski lack sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 59. Defendants Jackson, Sutor, and Sandoval lack sufficient knowledge or information to admit or deny the allegations in Paragraph 59.

60.     Ndi and Dhamala were preaching at the same intersection.

**ANSWER:** Defendants lack sufficient knowledge or information to admit or deny the allegations in Paragraph 60.

61.     Police officers, including Defendants Joyce and Gatlin, arrived in a police car, got out, and immediately yelled at Ndi and Dhamala to turn down the volume.

**ANSWER:** Defendants City, Joyce, and Gatlin deny that Officers Joyce and Gatlin yelled and that any additional officers initially arrived at the scene. Defendants City, Joyce, and Gatlin admit the remaining allegations in Paragraph 61. Defendants Petraski, Jackson, Sutor, and Sandoval lack sufficient knowledge or information to admit or deny the allegations in Paragraph 61.

62.     The officers accused Ndi and Dhamala of violating Chicago noise ordinances.

**ANSWER:** Defendants City, Joyce, Gatlin, and Petraski admit the allegations in Paragraph 62. Defendants Jackson, Sutor, and Sandoval lack sufficient knowledge or information to admit or deny the allegations in Paragraph 62.

63. Ndi and Dhamala informed the officers that they had gone to court and won already in Raio's case and had a constitutional right to continue. The officers continued to order them to stop.

**ANSWER:** Defendants City, Joyce, and Gatlin admit that Dhamala stated they had already won in court and that the officers continued to order them to stop. Defendants City, Joyce, and Gatlin deny the remaining allegations in Paragraph 63. Defendants Petraski, Jackson, Sutor, and Sandoval lack sufficient knowledge or information to admit or deny the allegations in Paragraph 63.

64. Dhamala asked the officers if they had conducted a sound reading of the volume of his speech. The officer replied, "It's not a requirement."

**ANSWER:** Defendants City, Joyce, and Gatlin deny that Officer Joyce is accurately quoted. Defendants City, Joyce, and Gatlin admit the remaining allegations in Paragraph 64. Defendants Petraski, Jackson, Sutor, and Sandoval lack sufficient knowledge or information to admit or deny the allegations in Paragraph 64.

65. Ndi and Dhamala were handcuffed and then arrested by the police officers and taken to jail.

**ANSWER:** Defendants City, Joyce, Gatlin, and Petraski admit that Ndi and Dhamala were handcuffed and then arrested by the police officers. Defendants City, Joyce, and Petraski deny the remaining allegations in Paragraph 65 and deny any misconduct or wrongdoing alleged therein. Defendants Jackson, Sutor, and Sandoval lack sufficient knowledge or information to admit or deny the allegations in Paragraph 65.

66. Ndi and Dhamala were both held in jail for approximately seven hours.

**ANSWER:** Defendants City, Joyce, Gatlin, and Petraski admit that Ndi and Dhamala were held in custody. Defendants City, Joyce, Gatlin, and Petraski deny the remaining allegations in Paragraph 66 and deny any misconduct or wrongdoing alleged therein. Defendants Jackson, Sutor, and Sandoval lack sufficient knowledge or information to admit or deny the allegations in Paragraph 66.

67.     Upon release, their personal possessions, i.e., their speaker, microphone, and camera stand, were not returned.

**ANSWER:** Defendants City, Joyce, and Gatlin admit that upon release, their personal possessions, i.e., their speaker, microphone, and camera, were not immediately returned. Defendants City, Joyce, Gatlin, Petraski, Jackson, Sutor, and Sandoval lack sufficient knowledge or information to admit or deny whether their possessions were returned sometime later.

68.     Ndi and Dhamala were each charged with violating Chicago Ordinance § 8-32-070 (Music and Amplified Sound).

**ANSWER:** Defendants City, Joyce, Gatlin, and Petraski admit the allegations in Paragraph 68. Defendants Jackson, Sutor, and Sandoval lack sufficient knowledge or information to admit or deny the allegations in Paragraph 68.

69.     Unlike the citation of Raio, an ANOV, Ndi and Dhamala were charged criminally and received pretrial release conditions.

**ANSWER:** Defendants City, Joyce, Gatlin, and Petraski admit that Ndi and Dhamala received pretrial release conditions. Defendants City, Joyce, Gatlin, and Petraski deny the remaining allegations in Paragraph 69. Defendants Jackson, Sutor, and Sandoval lack sufficient knowledge or information to admit or deny the allegations in Paragraph 69.

70.     At all times relevant to this Complaint, each and all the acts alleged herein were attributed to Defendants who acted under color of a statute, regulation, custom, or usage of the State of Illinois.

16

**ANSWER:** Defendants admit that they were acting under color of law during the incidents alleged in the Complaint. Defendants deny the remaining allegations in Paragraph 70 and deny any misconduct or wrongdoing alleged therein.

71.     The officers' conduct was tolerated by the practices, customs, and policies of the City of Chicago, which did nothing to correct or stop this conduct but has allowed the conduct to continue.

**ANSWER:** Defendants admit that the officers complied with the City's policies and deny the remaining allegations in Paragraph 71.

72.     The policies and practices that led to the violation of Plaintiffs' constitutional rights remain in full force and effect.

**ANSWER:** Deny.

73.     Defendants have thereby shown deliberate indifference to the ongoing violation of Plaintiffs' First Amendment rights.

**ANSWER:** Deny.

74.     Plaintiffs are suffering irreparable harm from the policies, customs, and practices of Defendants which cannot be fully compensated by an award of money damages.

**ANSWER:** Deny.

75.     Plaintiffs have no adequate or speedy remedy at law to correct or redress the ongoing deprivation of Plaintiffs' rights by Defendants.

**ANSWER:** Deny.

76.     Unless the policies and conduct of Defendants are enjoined, Plaintiffs will continue to suffer irreparable injury.

**ANSWER:** Deny.

**COUNT I**
**Violation of Right of Freedom of Speech Under the First Amendment**
**(42 U.S.C. § 1983)**

77.     Plaintiffs repeat, reallege, and incorporate by reference herein all preceding paragraphs as though fully set forth herein.

**ANSWER:** Defendants incorporate by reference their responses to Paragraphs 1 through 76 for their answer to the allegations in Paragraph 77.

78.     Pursuant to 42 U.S.C. § 1983, Plaintiffs bring this claim against Defendants for acting under color of state law to deprive them of their First Amendment right to free speech as guaranteed by the U.S. Constitution.

**ANSWER:** Defendants admit that Plaintiffs purport to bring a First Amendment claim, note that Plaintiffs' as-applied challenge was dismissed by the Court, and deny that Plaintiffs are entitled to any relief.

79.     Religious and political speech are protected under the Free Speech Clause of the First Amendment to the United States Constitution and are at the very core of the rights it protects.

**ANSWER:** Paragraph 79 consists of legal conclusions to which no response is required. Defendants deny any remaining allegations in Paragraph 79.

80.     Plaintiffs were engaging in religious and political speech and intend to continue to engage in such speech on the streets of Chicago.

**ANSWER:** Defendants lack sufficient knowledge or information to admit or deny the allegations in Paragraph 80.

81.     Defendants retaliated against Plaintiffs for engaging in constitutionally protected activity and for the content and viewpoint of the expressions.

**ANSWER:** Deny.

82.     Defendants' retaliation is part of a pattern or practice of unconstitutional conduct that is certain to continue absent any relief.

**ANSWER:** Deny.

83.     Plaintiffs' speech was on a public sidewalk, a traditional public forum.

**ANSWER:** Defendants admit that Plaintiffs were on public sidewalks. Paragraph 83 contains legal conclusions to which no response is required. Defendants deny any remaining allegations in Paragraph 83.

84.     The use of amplification has been recognized by the Supreme Court to be protected by the First Amendment.

**ANSWER:** Paragraph 84 consists of legal conclusions to which no response is required. Defendants deny any remaining allegations in Paragraph 84.

85.     Restricting speech on a sidewalk restricts speech in a traditional public forum and accordingly must be justified by the government, without reference to the content of its speech.

**ANSWER:** Paragraph 85 consists of legal conclusions to which no response is required. Defendants deny any remaining allegations in Paragraph 85.

86.     For an ordinance to constitute a valid time, place, manner ordinance it must be narrowly tailored to serve a significant governmental interest, and it must leave open ample alternative channels for communication of the information.

**ANSWER:** Paragraph 86 consists of legal conclusions to which no response is required. Defendants deny any remaining allegations in Paragraph 86.

87.     It is the unwritten policy and practice of Chicago police to cite all street preachers, regardless of whether they meet the requirements of Chi., Ill., Code § 8- 32-070 and regardless of the evidence. Such a targeted policy of enforcement based on religious practice constitutes a violation of the First Amendment.

**ANSWER:** Deny.

88.     While the precise scope of this unwritten Chicago policy is unclear because it has not been articulated, what is clear is that street preaching is de facto forbidden.

**ANSWER:** Deny.

89.     It is also clear that Chicago's policy has increased in severity, as demonstrated by the much more extreme actions on February 24, 2025, as compared to December 10, 2024, in regard to the duration of arrest, seizure of property, and change from an administrative citation to a criminal one.

**ANSWER:** Deny.

90.     Plaintiffs have been arrested and cited without any investigation conducted at a distance of 100 feet, as the law requires, in order to determine whether their conduct was unlawful.

**ANSWER:** Deny.

91.     Upon information and belief, Defendants are engaging in a targeted practice of enforcing their interpretation of the noise ordinance against only religious speakers.

**ANSWER:** Deny.

92.     Viewpoint discrimination strikes at the very heart of the First Amendment.

**ANSWER:** Paragraph 92 consists of legal conclusions to which no response is required. Defendants deny any remaining allegations in Paragraph 92.

93.     Viewpoint discrimination is an egregious form of content discrimination.

**ANSWER:** Paragraph 93 consists of legal conclusions to which no response is required. Defendants deny any remaining allegations in Paragraph 93.

94.     The government cannot constitutionally regulate speech when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction.

**ANSWER:** Paragraph 94 consists of legal conclusions to which no response is required. Defendants deny any remaining allegations in Paragraph 94.

95. Discrimination against speech because of its viewpoint is presumed to be unconstitutional.

**ANSWER:** Paragraph 95 consists of legal conclusions to which no response is required. Defendants deny any remaining allegations in Paragraph 95.

96. Defendants have discriminated on the basis of viewpoint, targeting religious viewpoints for suppression that is unjustified by the written text of the ordinance.

**ANSWER:** Deny.

97. Discriminating based on viewpoint in the creation of a de facto ban on the use of amplification constitutes a violation of the First Amendment.

**ANSWER:** Paragraph 97 consists of legal conclusions to which no response is required. Defendants deny any remaining allegations in Paragraph 97.

98. This unwritten policy impermissibly infringes on the First Amendment's protection of Plaintiffs' rights of speech and assembly without serving any compelling state interest(s).

**ANSWER:** Deny.

99. This unwritten policy is impermissibly vague in that a person of common intellect, such as Plaintiffs, must necessarily guess as to what conduct it forbids, its meaning, and its application, failing to give persons fair warning as to what conduct is forbidden.

**ANSWER:** Deny.

100. This unwritten policy allows Chicago Police Officers to arrest those lawfully exercising their First Amendment rights, such as Plaintiffs, by criminalizing otherwise legal, protected First Amendment conduct.

**ANSWER:** Deny.

101.    This unwritten policy fails to provide adequate safeguards to ensure that Chicago Police Officers do not abuse their discretion.

**ANSWER:** Deny.

102.    Defendants have arrested and cited Plaintiffs in the implementation of their unwritten policy, regardless of the dictates of written policy.

**ANSWER:** Deny.

103.    Plaintiffs continue to suffer irreparable harm because their speech has been chilled out of concern they will be arrested again if they were to use amplification to speak in public anywhere in Chicago, even though they are rightfully entitled to do so under the Constitution.

**ANSWER:** Deny.

104.    The acts of Defendants would chill a reasonable person from continuing to engage in the constitutionally protected activity of Plaintiffs.

**ANSWER:** Deny.

## COUNT II
### Violation of Right to Free Exercise of Religion Under the First Amendment
### (42 U.S.C. § 1983)

105.    Plaintiffs repeat, reallege, and incorporate by reference herein all preceding paragraphs as though fully set forth herein.

**ANSWER:** Defendants incorporate by reference their responses to Paragraphs 1 through 104 for their answer to the allegations in Paragraph 105.

106.    Pursuant to 42 U.S.C. § 1983, Plaintiffs bring this claim against Defendants for acting under color of state law to deprive them of their First Amendment right to free exercise of religion as guaranteed by the U.S. Constitution.

22

**ANSWER:** Defendants admit that Plaintiffs purport to bring a Free Exercise claim and deny that Plaintiffs are entitled to any relief.

107.    The First Amendment prohibits the government from impermissibly burdening the free exercise of religion.

**ANSWER:** Paragraph 107 consists of legal conclusions to which no response is required. Defendants deny any remaining allegations in Paragraph 107.

108.    Defendants' policy substantially burdens Plaintiffs' sincerely held religious beliefs and expression.

**ANSWER:** Deny.

109.    Defendants have no compelling government interest for burdening Plaintiffs' religious beliefs and expression.

**ANSWER:** Deny.

110.    Defendants' policy, and Defendants' actions in implementing that policy, constitutes a violation of the First Amendment right of Freedom of Religion.

**ANSWER:** Deny.

111.    The Defendants' policy, as applied against Plaintiffs, constitutes a violation of the First Amendment right to free exercise.

**ANSWER:** Deny.

**COUNT III**
**Violation of Right to Due Process Under the Fourteenth Amendment**
**(42 U.S.C. § 1983)**

112.    Plaintiffs repeat, reallege, and incorporate by reference herein all preceding paragraphs as though fully set forth herein.

**ANSWER:** Defendants incorporate by reference their responses to Paragraphs 1 through 111 for their answer to the allegations in Paragraph 112.

113. The unwritten policy in this case is impermissibly vague in that a person of common intellect must necessarily guess as to what conduct it forbids, its meaning, and differs as to its application and fails to give persons fair warning as to what conduct is forbidden.

**ANSWER:** The allegations contained in Paragraph 113 relate solely to Count III, which was dismissed by the Court, and therefore no response is required. Should a response be required, Defendants deny the allegations in Paragraph 113.

114. Plaintiffs were cited and arrested without any notice of the purported unlawfulness of their conduct.

**ANSWER:** The allegations contained in Paragraph 114 relate solely to Count III, which was dismissed by the Court, and therefore no response is required. Should a response be required, Defendants deny the allegations in Paragraph 114.

115. Based on the foregoing, Plaintiffs were denied their right to due process under the law grounded on the Fourteenth Amendment of the United States Constitution.

**ANSWER:** The allegations contained in Paragraph 115 relate solely to Count III, which was dismissed by the Court, and therefore no response is required. Should a response be required, Defendants deny the allegations in Paragraph 115.

**COUNT IV**
**Violation of Right to Equal Protection Under the Fourteenth Amendment**
**(42 U.S.C. § 1983)**

116. Plaintiffs repeat, reallege, and incorporate by reference herein all preceding paragraphs as though fully set forth herein.

**ANSWER:** Defendants incorporate by reference their responses to Paragraphs 1 through 115 for their answer to the allegations in Paragraph 116.

117. The Equal Protection Clause commands that no state shall deny to any person within its jurisdiction the equal protection of the laws. Put simply, the state must treat all similarly situated persons alike.

**ANSWER:** The allegations contained in Paragraph 117 relate solely to Count IV, which was dismissed by the Court, and therefore no response is required. Should a response be required, Defendants deny the allegations in Paragraph 117.

118. Defendants have engaged in discrimination based on religious viewpoint, enforcing their unwritten interpretation of Chicago law uniquely against religious speakers.

**ANSWER:** The allegations contained in Paragraph 118 relate solely to Count IV, which was dismissed by the Court, and therefore no response is required. Should a response be required, Defendants deny the allegations in Paragraph 118.

119. Plaintiffs have been arrested and are likely to be subject to future enforcement on the basis of their viewpoint.

**ANSWER:** The allegations contained in Paragraph 119 relate solely to Count IV, which was dismissed by the Court, and therefore no response is required. Should a response be required, Defendants deny the allegations in Paragraph 119.

120. Compared to those who do not express a religious viewpoint, Plaintiffs have been and will continue to be selectively mistreated.

**ANSWER:** The allegations contained in Paragraph 120 relate solely to Count IV, which was dismissed by the Court, and therefore no response is required. Should a response be required, Defendants deny the allegations in Paragraph 120.

121.    The selective treatment and arrest of Plaintiffs is motivated by an intention to discriminate on the basis of impermissible considerations and to punish or inhibit the exercise of First Amendment constitutional rights.

**ANSWER:** The allegations contained in Paragraph 121 relate solely to Count IV, which was dismissed by the Court, and therefore no response is required. Should a response be required, Defendants deny the allegations in Paragraph 121.

122.    This unequal treatment violates the Equal Protection Clause.

**ANSWER:** The allegations contained in Paragraph 122 relate solely to Count IV, which was dismissed by the Court, and therefore no response is required. Should a response be required, Defendants deny the allegations in Paragraph 122.


**COUNT V**
**Violation of the Illinois Religious Freedom Restoration Act**
**(28 U.S.C. § 1367; 775 ILCS 35/15)**

123.    Plaintiffs repeat, reallege, and incorporate by reference herein all preceding paragraphs as though fully set forth herein.

**ANSWER:** Defendants incorporate by reference their responses to Paragraphs 1 through 122 for their answer to the allegations in Paragraph 123.

124.    Plaintiffs' religious convictions compel them to share their faith publicly.

**ANSWER:** Defendants lack sufficient knowledge or information to admit or deny the allegations in Paragraph 124.

125.    Plaintiffs need voice amplification to be heard over the noise of Chicago streets. Without amplification, they would need to raise their voice to be understood by passersby, which would distort the tone of their message.

**ANSWER:** Deny.

126.     Plaintiffs' right to freely exercise their religion is protected by 775 ILCS 35/15, which states that "Government may not substantially burden a person's exercise of religion, even if the burden results from a rule of general applicability, unless it demonstrates that application of the burden to the person (i) is in furtherance of a compelling governmental interest and (ii) is the least restrictive means of furthering that compelling governmental interest."

**ANSWER:** Defendants admit that the substance of 775 ILCS 35/15 is accurately pleaded. Paragraph 126 contains legal conclusions to which no response is required. Defendants deny any remaining allegations in Paragraph 126.

127.     Ordering Plaintiffs to cease using amplification and arresting them for doing so substantially burdened their exercise of religion.

**ANSWER:** Deny.

128.     There was and is no compelling governmental interest in preventing Plaintiffs' use of voice amplification.

**ANSWER:** Deny.

129.     Ordering Plaintiffs to cease using amplification was and is not the least restrictive means of furthering any governmental interest.

**ANSWER:** Deny.

130.     Plaintiffs are entitled to compensation from the Defendants for the harms they have suffered and continue to suffer as a result of being intimidated, harassed, silenced, and arrested for exercising their faith.

**ANSWER:** Deny.

## COUNT VI
### False Arrest in Violation of the Fourth Amendment
### (42 U.S.C. § 1983)

131. Plaintiffs repeat, reallege, and incorporate by reference herein all preceding paragraphs as though fully set forth herein.

**ANSWER:** Defendants incorporate by reference their responses to Paragraphs 1 through 130 for their answer to the allegations in Paragraph 131.

132. This claim is limited to Plaintiffs Reetik Dhamala and Perez Ndi.

**ANSWER:** This paragraph contains no factual allegations to which a response is required. Defendants deny that Dhamala and Ndi are entitled to any relief.

133. The police had no probable cause to arrest Plaintiffs. They had no evidence that Plaintiffs had committed any crime.

**ANSWER:** Defendants City, Joyce, Gatlin, and Petraski deny the allegations contained in Paragraph 133. Defendants Jackson, Sutor, and Sandoval lack sufficient knowledge or information to admit or deny the allegations in Paragraph 133.

134. The police nevertheless forcibly arrested Plaintiffs and detained them at the police station for at least six hours.

**ANSWER:** Defendants City, Joyce, Gatlin, and Petraski admit that Dhamala and Ndi were arrested and were held at the police station. Defendants City, Joyce, Gatlin, and Petraski deny the remaining allegations in Paragraph 134. Defendants Jackson, Sutor, and Sandoval lack sufficient knowledge or information to admit or deny the allegations contained in Paragraph 134.

135. By arresting Plaintiffs without probable cause, Defendants caused Plaintiffs physical, emotional, and economic harms for which Plaintiffs are entitled to compensation.

**ANSWER:** Deny.

28

**COUNT VII**
**Retaliatory Arrest in Violation of the First and Fourth Amendment**
**(42 U.S.C. § 1983)**

136. Plaintiffs repeat, reallege, and incorporate by reference herein all preceding paragraphs as though fully set forth herein.

**ANSWER:** Defendants incorporate by reference their responses to Paragraphs 1 through 135 for their answer to the allegations in Paragraph 136.

137. This claim is limited to Plaintiffs Reetik Dhamala and Perez Ndi.

**ANSWER:** This paragraph contains no factual allegations to which a response is required. Defendants deny that Dhamala and Ndi are entitled to any relief.

138. The First Amendment of the United States Constitution guarantees Plaintiffs' rights to publicly assemble for political purposes and to speak out on matters of public concern without fear of unjust retaliation.

**ANSWER:** Paragraph 138 consists of legal conclusions to which no response is required. Defendants deny any remaining allegations in Paragraph 138.

139. As described more fully in the preceding paragraphs, Plaintiffs engaged in protected assembly and speech on matters of public concern through their religious activity.

**ANSWER:** Paragraph 139 consists of legal conclusions to which no response is required. Defendants deny any remaining allegations in Paragraph 139.

140. Defendants arrested Plaintiffs for their lawful attempt to assert their rights under the Constitution and under the ordinance to use voice amplification for their speech and exercise of their religion.

**ANSWER:** Defendants City, Joyce, Gatlin, and Petraski admit that Officers Joyce and Gatlin arrested Ndi and Dhamala and deny the remaining allegations in Paragraph 140. Defendants Jackson, Sutor,

and Sandoval lack sufficient knowledge or information to admit or deny the allegations in Paragraph 140.

141. Defendants thereby retaliated against Plaintiffs for their exercise of their First Amendment rights.

**ANSWER:** Deny.

142. By falsely detaining, arresting, and imprisoning Plaintiffs without reasonable suspicion or probable cause Defendants violated Plaintiffs' Fourth Amendment rights to be free from unreasonable search and seizure under the United States Constitution, and thus violated 42 U.S.C. § 1983.

**ANSWER:** Deny.

143. As a result of their arrest, Plaintiffs have suffered physical, emotional, and economic harms entitling them to compensation from Defendants.

**ANSWER:** Deny.

144. Plaintiffs continue to suffer emotional and economic harms for which they are also entitled to compensation from Defendants.

**ANSWER:** Deny.

**COUNT VIII**
**Ordinance § 8-32-070 is Unconstitutionally Vague and Overbroad in**
**Violation of the First and Fourteenth Amendments**
**(42 U.S.C. § 1983)**

145. Plaintiffs repeat, reallege, and incorporate by reference herein all preceding paragraphs as though fully set forth herein.

**ANSWER:** Defendants incorporate by reference their responses to Paragraphs 1 through 144 for their answer to the allegations in Paragraph 145.

30

146. This claim is brought against Defendant City of Chicago only.

**ANSWER:** This paragraph contains no factual allegations to which a response is required. Defendants note that the Court dismissed Count VIII and deny that Plaintiffs are entitled to any relief.

147. The Fourteenth Amendment to the United States Constitution prohibits vagueness as violating the concept of due process when a law fails to give ordinary people fair notice of the conduct it punishes or is so standardless that it invites arbitrary enforcement.

**ANSWER:** The allegations contained in Paragraph 147 relate solely to Count VIII, which was dismissed by the Court, and therefore no response is required. Should a response be required, Defendants deny the allegations in Paragraph 147.

148. The First Amendment, as incorporated through the Fourteenth Amendment, of the United States Constitution prohibits laws which, by their vagueness and uncertainty "chill" the exercise of First Amendment Rights.

**ANSWER:** The allegations contained in Paragraph 148 relate solely to Count VIII, which was dismissed by the Court, and therefore no response is required. Should a response be required, Defendants deny the allegations in Paragraph 148.

149. Defendants are prohibited from promulgating and employing vague and overbroad standards that allow for viewpoint discrimination of Plaintiffs' religious activity.

**ANSWER:** The allegations contained in Paragraph 149 relate solely to Count VIII, which was dismissed by the Court, and therefore no response is required. Should a response be required, Defendants deny the allegations in Paragraph 149.

150. The government may not regulate speech based on policies that permit arbitrary and discriminatory enforcement.

**ANSWER:** The allegations contained in Paragraph 150 relate solely to Count VIII, which was dismissed by the Court, and therefore no response is required. Should a response be required, Defendants deny the allegations in Paragraph 150.

151.    The government may not regulate speech based on a policy that causes persons of common intelligence to guess at its meaning and differ as to its application.

**ANSWER:** The allegations contained in Paragraph 151 relate solely to Count VIII, which was dismissed by the Court, and therefore no response is required. Should a response be required, Defendants deny the allegations in Paragraph 151.

152.    Chi., Ill., Code § 8-32-070, by prohibiting amplification "that is louder than average conversational level at a distance of 100 feet or more," is unconstitutionally vague as it forces members of the community to guess as to what conduct is prohibited. The ordinance renders many acts of constitutionally protected religious activity uncertain, as it does not specify the decibel level at which sound is prohibited.

**ANSWER:** The allegations contained in Paragraph 152 relate solely to Count VIII, which was dismissed by the Court, and therefore no response is required. Should a response be required, Defendants deny the allegations in Paragraph 152.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Brett Raio, Perez Ndi, and Reetik Dhamala respectfully request that this Court enter judgment against Defendants and provide Plaintiffs the following relief:

> A. A declaratory judgment that Chi., Ill., Code § 8-32-070 constitutes an unconstitutionally vague restriction on speech or, in the alternative, a declaratory judgment that each and every Plaintiff has the right, consistent with Chi., Ill., Code

§ 8-32-070 to use amplification on the sidewalks in and around Millenium Park in Chicago, Illinois, without a permit;

B. A permanent injunction enjoining Chicago Police Officers MARIO L. JACKSON, NICO A. SUTOR, CARLOS R. CAMEY SANDOVAL, MICHAEL P. JOYCE, WILLIAM E. GATLIN, MICHAEL J. PETRASKI and the City of Chicago through any of its other employees, agents, or representatives from arresting Plaintiffs for their reasonable and legal use of amplification at or near Millenium Park in Chicago, Illinois;

C. Compensatory damages for violation of Plaintiffs' First, Fourth, Fifth, and Fourteenth Amendment rights and for violation of Plaintiffs' rights under the Illinois RFRA, including damages arising from his harassment, intimidating, and forcible arrest by Chicago Police Officers MARIO L. JACKSON, NICO A. SUTOR, CARLOS R. CAMEY SANDOVAL, MICHAEL P. JOYCE, WILLIAM E. GATLIN, MICHAEL J. PETRASKI and other officers of the Chicago Police Department;

D. The return of all Plaintiff's personal property seized on February 24, 2025;

E. Nominal damages;

F. Plaintiffs' reasonable attorneys' fees, costs, and other costs and disbursements in this action pursuant to 42 U.S.C. § 1988;

G. All other further relief to which Plaintiffs may be entitled.

**ANSWER:** Defendants deny that Plaintiffs are entitled to any relief whatsoever and therefore deny they are entitled to the relief requested in this paragraph.

## DEFENDANTS' AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

(Qualified Immunity)

1. Defendant Officers Jackson, Sutor, Sandoval, Joyce, Gatlin, and Petraski are government officials, namely police officers, who perform discretionary functions.

2. At all times material to the events alleged in Plaintiff's Complaint, a reasonable police officer objectively viewing the facts and circumstances that confronted said Defendant Officers could have believed their actions to be lawful, in light of clearly established law and the information that the Defendant Officers possessed.

3. It was not clearly established that the Defendant Officers' conduct violated Plaintiffs' rights.

4. Officers Jackson, Sutor, Sandoval, Joyce, Gatlin, and Petraski are therefore entitled to qualified immunity. *See Spiegel v. Cortese*, 196 F.3d 717, 723 (7th Cir. 2000).

### SECOND AFFIRMATIVE DEFENSE

(Personal Involvement)

5. Liability under 42 U.S.C. § 1983 requires that each defendant individually caused or participated in an alleged constitutional deprivation because individual liability for damages under 42 U.S.C. § 1983 is predicated upon personal liability. *See Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983).

6. Some of the Defendant Officers did not participate in some or all of the violations alleged in Plaintiffs' Complaint.

7. Therefore, Defendant Officers cannot be held liable to Plaintiffs under 42 U.S.C. § 1983.

**THIRD AFFIRMATIVE DEFENSE**

(Local Governmental and Governmental Employees Tort Immunity Act Section 2-202)

8. Defendant Officers were public employees acting within the scope of their employment.

9. Under the Illinois Local Governmental and Governmental Employees Tort Immunity Act ("TIA"), public employees acting within the scope of their employment are not liable for any acts or omissions in the execution or enforcement of the law, unless such act or omission constitutes willful and wanton conduct. 745 ILCS 10/2-202.

10. Under the TIA, Officers Jackson, Sutor, Sandoval, Joyce, Gatlin, and Petraski are immune from liability for damages on Plaintiffs' Illinois RFRA claim. 745 ILCS 10/2-202.

11. Because the Defendant Officers are not liable for damages, Defendant City of Chicago is not liable. 745 ILCS 10/2-109.

12. As the Court recognized in its February 24, 2026, Opinion, the TIA bars Plaintiffs' claim for damages under the Illinois RFRA.

**FOURTH AFFIRMATIVE DEFENSE**

(Attorneys' fees unavailable for state law claims)

13. Plaintiffs are not entitled to attorneys' fees for their state law claims. *See Pennsylvania Truck Lines, Inc. v. Solar Equity Corp.*, 882 F.2d 221, 227 (7th Cir. 1989); *Kerns v. Engelke*, 390 N.E.2d 859, 865 (Ill. 1979); *Miller v. Pollution Control Board*, 642 N.E.2d 475, 485 (Ill. App. Ct. 1994).

**FIFTH AFFIRMATIVE DEFENSE**

(Local Governmental and Governmental Employees Tort Immunity Act Section 2-102)

14. At the time of the occurrences alleged in the Complaint, Section 2-102 of the TIA was in effect and provided that "a local public entity is not liable to pay punitive or exemplary

damages in any action brought directly or indirectly against it by the injured party." 745 ILCS 10/2-102.

15. "Local public entity" under the TIA includes a municipal corporation. 745 ILCS 10/1-206. The City of Chicago, being a municipal corporation, is therefore immune from paying punitive or exemplary damages.

## SIXTH AFFIRMATIVE DEFENSE

### (Failure to Mitigate)

16. On February 24, 2025, Officers Gatlin and Joyce informed Ndi and Dhamala that they needed identification to issue an Administrative Notice of Violation ("ANOV").

17. After initially refusing to provide identification, Officers Gatlin and Joyce informed Ndi and Dhamala that if they did not receive identification for purposes of issuing an ANOV, then they would have to resort to arrest.

18. Nonetheless, Ndi and Dhamala still did not provide identification.

19. Because the officers could not issue an ANOV without identification, Ndi and Dhamala were arrested.

20. Ndi and Dhamala failed to mitigate their damages by providing identification so that they could be issued an ANOV and released on scene instead of arrested.

## JURY DEMAND

Defendants hereby demand a jury trial on issues so triable.

Date: April 3, 2026                                    Respectfully submitted,

ELLEN W. MCLAUGHLIN                        MARY B. RICHARDSON-LOWRY,
ellen.mclaughlin@cityofchicago.org             Corporation Counsel for
HANNAH L. PITCHER                                the City of Chicago
hannah.pitcher@cityofchicago.org

36

ERIC SEELEMAN                                         By: */s/ Hannah L. Pitcher*
eric.seeleman@cityofchicago.org                          Assistant Corporation Counsel
City of Chicago Department of Law
2 North LaSalle Street, Suite 520
Chicago, Illinois 60602
(312) 742-5147 / 742-6238 / 742-3902
*Attorneys for Defendants*