**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| BRETT RAIO, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 1:25-cv-02709 |
| | ) | |
| v. | ) | Honorable Sara L. Ellis |
| | ) | |
| CITY OF CHICAGO, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' JOINT MOTION TO BIFURCATE PLAINTIFFS' *MONELL* CLAIMS AND STAY *MONELL* DISCOVERY PENDING SUMMARY JUDGMENT**

Defendants Officers Mario L. Jackson, Nico A. Sutor, Michael P. Joyce, and William E. Gatlin, Sergeant Carlos R. Camey Sandoval, Lieutenant Michael Petraski (the "Defendant Officers"), and the City of Chicago, by their attorneys, move under Fed. R. Civ. P. 26 and 42(b) to: (1) bifurcate Plaintiffs' claims against the City under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), from their claims against the Defendant Officers; (2) stay the remaining *Monell* discovery, including the City's Rule 30(b)(6) deposition and the deposition of non-party Sergeant Tomasz Zatora, until the Court rules on Defendants' motion for summary judgment; and (3) stay *Monell* discovery while this motion is pending.

**INTRODUCTION**

This case arises from two encounters, both recorded by body-worn cameras, in which Chicago Police Department ("CPD") officers cited or arrested Plaintiffs for their use of amplified sound. Plaintiffs' claims against the City are derivative of those encounters; no City practice could have caused Plaintiffs any constitutional injury unless the Defendant Officers violated Plaintiffs' rights. Yet to support their *Monell* claim against the City, Plaintiffs seek discovery reaching far beyond the two encounters, to years of citywide enforcement, complaints, and

administrative proceedings, and practices involving multiple City departments. Bifurcating the claims against the Defendant Officers so that they may be resolved before completing wide-ranging *Monell* discovery will limit the burdens on the parties and the Court and obviate discovery disputes that may never matter. And it will not prejudice Plaintiffs, who can resume *Monell* discovery if any claims survive.

## BACKGROUND

### A. Plaintiffs' Encounters with CPD and Remaining Claims

Plaintiffs are three street preachers who were cited or arrested on two occasions while using amplified sound at East Madison Street and North Michigan Avenue. On December 10, 2024, Plaintiff Raio was issued an Administrative Notice of Ordinance Violation, and on February 24, 2025, Plaintiffs Ndi and Dhamala were arrested for violating Municipal Code of Chicago ("MCC") § 8-32-070 ("the Ordinance"), which restricts the volume of amplified sound. Dkt. 58 at 3–5. Both encounters were recorded on body-worn cameras. *Id.* at 7.

Following the Court's ruling on Defendants' motion to dismiss, Plaintiffs proceed on their First Amendment retaliation claim (Count I); free exercise claim (Count II); Illinois Religious Freedom Restoration Act ("IRFRA") claim (Count V); and, as to Ndi and Dhamala only, their false arrest and retaliatory arrest claims (Counts VI and VII). *Id.* at 16–25. The Court dismissed Plaintiffs' selective-enforcement, equal protection, and vagueness claims in Counts III, IV, and VIII. *Id.* at 13, 15–16, 18–19, 25. Plaintiffs concede that the Ordinance is facially neutral and no express City policy is at issue. *Id*. at 8, 14. Their claims against the City rest instead on an alleged unwritten practice of enforcing the Ordinance against street preachers "regardless of evidence." *Id.* at 8 (quoting Dkt. 17 ¶¶ 1, 87).

**B. Discovery Progress**

Defendants have produced body-worn-camera recordings, 911 audio, Office of Emergency Management and Communications event records, reports, identities of complaining witnesses, and charging records for both encounters, together with CPD directives, general orders, and training materials relevant to the First and Fourth Amendments and to ordinance enforcement. Defendants have also searched and produced the Defendant Officers' communications. Defendants are working with Plaintiffs to schedule the six Defendant Officers' depositions, and, once Plaintiffs complete their document production, to schedule the three Plaintiffs' depositions (a total of nine depositions).

*Monell* discovery is already substantial. The City has been producing, on a rolling basis, electronically stored information responsive to Plaintiffs' *Monell* requests. Plaintiffs' ESI search terms returned over 2.2 million pages, and the City is about 70 percent finished with the review of those documents to date. Plaintiffs' requests for production seek, among other things, documents identifying every enforcement action taken under the Ordinance in the last five years. Ex. A (Pls. Requests for Production) at Request No. 13. The City identified nearly 100 enforcement actions that are responsive to this request. Plaintiffs sought every complaint CPD has received concerning enforcement of the Ordinance against religious speakers. *Id*. Additionally, Plaintiffs sought documents relating to any event in or around Millenium Park or the Madison/Michigan Avenue intersection "at which amplified sound was used" and all documents relating to complaints received by CPD about any individual engaged in street preaching, amplification of religious speech, or religious speech in the Millenium Park/Michigan Avenue area during the last five years. Ex. A at Requests No. 33, 35. To respond to these

requests, the City has spent many hours searching through voluminous records to identify any that are responsive.

And significant *Monell* discovery remains pending. On September 4, 2026, Plaintiffs served a notice of the City's Rule 30(b)(6) deposition listing twenty-six Matters for Examination covering July 1, 2019 to the present. Ex. B (Notice of Rule 30(b)(6) Deposition). The Matters include all enforcement of the Ordinance citywide (Matter No. 13); every complaint, 911 call, and police response involving public-way amplification that did not result in enforcement (Matter No. 15); other amplification instances dating to 2019 (Matter No. 14); a 2024 incident involving a non-party sergeant (Matter No. 17); the prosecution and disposition of every § 8-32-070 ANOV (Matter No. 12); every complaint, lawsuit, and audit alleging improper enforcement of any amplified-sound or noise ordinance (Matter No. 18); and comparative enforcement across religious, political, musical, and commercial speakers (Matter Nos. 16 and 21). The Rule 30(b)(6) notice implicates multiple City departments in addition to CPD. *See id.*, Matter Nos. 1, 10, 12, 18. The City has served objections to most of the Matters, Ex. C, and while Plaintiffs have agreed to narrow some of the matters, many objections remain to be resolved. Ex D. Plaintiffs have also noticed the deposition of non-party Sergeant Tomasz Zatora concerning his enforcement of the Ordinance against a non-party in a separate 2024 incident. Ex. E (Plaintiffs' Notice of Deposition of Tomasz Zatora).

In sum, Plaintiffs have demanded substantial discovery into incidents unrelated to the incidents challenged in this case. Discovery on the *Monell* claim is of broad and contested scope, disproportionate to the claims at issue, and likely to become moot should Defendants prevail on their motion for summary judgment on the claims against the Defendant Officers.

## LEGAL STANDARDS

Federal Rule of Civil Procedure 42 permits the Court to bifurcate one or more claims "[f]or convenience, to avoid prejudice, or to expedite and economize." Fed. R. Civ. P. 42(b). Only one of these criteria need be met. *Berry v. Deloney*, 28 F.3d 604, 610 (7th Cir. 1994). The court has "considerable discretion" in deciding whether to bifurcate, *Krocka v. City of Chicago*, 203 F.3d 507, 516 (7th Cir. 2000), and may do so "if the separation would prevent prejudice to a party or promote judicial economy," *Chlopek v. Fed. Ins. Co.*, 499 F.3d 692, 700 (7th Cir. 2007). The inquiry calls for "a pragmatic mindset," *Cruz v. City of Chicago*, No. 08 C 2087, 2008 WL 5244616, at *1 (N.D. Ill. Dec. 16, 2008), and a "case-specific assessment of the advantages and disadvantages of bifurcation," *Ojeda-Beltran v. Lucio*, No. 07 C 6667, 2008 WL 2782815, at *1 (N.D. Ill. July 16, 2008).

When the Court bifurcates *Monell* claims, it may also stay discovery on them. Fed. R. Civ. P. 26(c), (d)(3); *Jones v. City of Chicago*, No. 98 C 5418, 1999 WL 160228, at *3 (N.D. Ill. Mar. 10, 1999). Discovery must in all events be "proportional to the needs of the case," considering "whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

## ARGUMENT

Defendants respectfully request that this Court now bifurcate Plaintiffs' *Monell* claims and stay the remaining *Monell* discovery pending the resolution of Defendants' motion for summary judgment on the claims against the individual Defendant Officers. Bifurcation and stay of Plaintiffs' *Monell* claims best serves the Rule 42 interests of convenience, economy, expedition, and avoidance of undue prejudice; it also represents a sound exercise of the Court's inherent power to control its docket. *See Webber v. Eye Corp.*, 721 F.2d 1067, 1068 (7th Cir. 1983); *Krocka*, 203 F.3d at 516. As we explain, Plaintiffs' claims may be resolved without

*Monell* discovery; *Monell* discovery is burdensome; the Court will likely have to intervene to resolve *Monell* discovery disputes; bifurcation will not prejudice Plaintiffs, and failure to bifurcate the individual and *Monell* claims would prejudice Defendants.

## I. Bifurcation Would Promote Litigation Efficiency.

Bifurcation will streamline this litigation and avoid burdensome and potentially unnecessary discovery.

### A. The *Monell* Claims Depend on the Claims Against the Defendant Officers.

A plaintiff cannot prevail on a *Monell* claim without establishing an underlying constitutional violation. *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986); *Matthews v. City of East St. Louis*, 675 F.3d 703, 709 (7th Cir. 2012). Thus, absent proof of an underlying constitutional violation by the Defendant Officers, the City is not liable.

The Seventh Circuit recognized a narrow exception to this rule, where municipal liability would not be inconsistent with a verdict in the officers' favor, such as where the injury flows from a policy and not any officer's conduct. *Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 305 (7th Cir. 2010). But that exception is inapplicable here. Plaintiffs concede that the Ordinance is facially neutral and that no express policy is at issue. Dkt. 58 at 8, 14. Their theory is that officers enforced a valid ordinance against them "regardless of evidence." *Id.* at 8. Thus, the only constitutional injuries Plaintiffs could have suffered are those they allege the Defendant Officers inflicted. When the underlying claims are premised on the actions of the individual defendant—as with claims of false and retaliatory arrest—*Monell* liability requires liability on the underlying claim. *See Veal v. Kachiroubas*, No. 12 C 8342, 2014 WL 321708, at *3–4 (N.D. Ill. Jan. 29, 2014) ("[E]ven if the absence of policy may be the source of the violation of civil rights, there is no injury to [plaintiff] without officer misconduct."); *see also, e.g.*, *Castillo v. City of Chicago*, No. 11 C 7359, 2012 WL 1658350, at *4 (N.D. Ill. May 11, 2012); *Clarett v. Suroviak*, No. 09 C

6918, 2011 WL 37838, at *2 (N.D. Ill. Jan. 3, 2011); *Fuery v. City of Chicago*, No. 07 C 5428, 2015 WL 715281, at *1–2 (N.D. Ill. Feb. 17, 2015); *Carr v. City of North Chicago*, 908 F. Supp. 2d 926, 930 (N.D. Ill. 2012). Therefore, this case falls squarely within the general rule.

Defendants anticipate seeking summary judgment on Plaintiffs' claims against the Defendant Officers because the application of the City's neutral laws did not substantially burden Plaintiffs' religious practice, the officers had a lawful basis for their actions and were not motivated by Plaintiffs' religion, and there was probable cause for Ndi and Dhamala's arrests. If the Court agrees, that would fully dispose of the case, because no City practice could have caused Plaintiffs any constitutional harm.

**B. *Monell* Discovery is Disproportionate to the Claims in this Case.**

Bifurcation will allow the parties to avoid burdensome discovery that is disproportionate to the claims in this case. The claims against the Defendant Officers stem from two discrete incidents and involve two sets of witnesses. Discovery will include written discovery related to those incidents (which Defendants, for their part, have completed) and depositions of the three Plaintiffs and six Defendant Officers. But the *Monell* discovery dwarfs that.

Plaintiffs have served the City with requests for all policy documents related to enforcement of the Ordinance, all instructional documents related to the Ordinance and individuals' First Amendment rights, documents identifying every enforcement action taken under the Ordinance in the last five years, and all complaints received by CPD concerning the enforcement of the Ordinance against those engaged in religious speech. *See* Ex. A, at 8–9. The ESI search alone returned over 2.2 million pages. And Plaintiffs' Rule 30(b)(6) notice spans more than seven years and would require the City to prepare multiple designees, not only from the CPD units responsible for policy, training, enforcement records, and complaint investigations, *see* Ex. B, Matter Nos. 2, 4–7, 13, 18, but also from other City departments,

including the Office of Emergency Management and Communications, the Department of Law, the Department of Administrative Hearings, and the Civilian Office of Police Accountability, *see id.*, Matter Nos. 1, 10, 12, 18. Many of the Matters, such as the investigation performed in each enforcement action or the reasons for each ANOV dismissal, could be prepared for only by reviewing individual files one at a time. *See id.*, Matter Nos. 12, 13. Plaintiffs also seek to depose a non-party sergeant about a separate encounter with a non-party. Ex. E.

Courts recognize that "claims of municipal liability require an extensive amount of work on the part of plaintiff's attorneys and experts, and an extraordinary amount of money must be spent in order to prepare and prove them.'" *Williams v. City of Chicago*, 315 F. Supp. 3d 1060, 1080 (N.D. Ill. 2018) (citation omitted). *Monell* discovery will thus be burdensome and lengthy. No expert discovery has yet taken place, either. And critically, *none* of this bears on whether the Defendant Officers acted lawfully on December 10, 2024 or February 24, 2025.

**C. Bifurcation Will Conserve the Court's Resources.**

Trial judges have "substantial case-management authority to control the course of litigation in their courts," and "active judicial oversight can help prevent straightforward cases . . . from spiraling out of control." *Montanez v. Simon*, 755 F.3d 547, 552 (7th Cir. 2014). The parties are already at odds over the scope of *Monell* discovery: the City has objected to most of the Matters in Plaintiffs' Rule 30(b)(6) notice. Ex. C. The City may ultimately need to seek a protective order from the Court. Litigating those disputes now, before it is known whether the *Monell* claims will survive, would consume the parties' and the Court's resources on questions that may never need to be answered.

Bifurcation of the *Monell* claims will thus eliminate the need for (1) judicial intervention into discovery disputes arising from these claims; and (2) briefing and ruling on the *Monell* issues for purposes of the summary judgment motion Defendants will file. The Seventh Circuit

has endorsed bifurcation to avoid "the waste of the valuable time and resources of the court." *Treece v. Hochstetler*, 213 F.3d 360, 365 (7th Cir. 2000). In *Swanigan v. City of Chicago*, it described the district court's decision to stay the *Monell* claim until claims against the individual officers were resolved as "sensible, especially in light of the volume of civil-rights litigation that district courts must manage." 775 F.3d 953, 962 (7th Cir. 2015).[1] Indeed, the "willingness of many judges to grant [motions to bifurcate *Monell* claims] stems in large part from [this] recognition." *Terry v. Cook Cnty. Dep't of Corr.*, No. 09 C 3093, 2010 WL 2720754, at *2 (N.D. Ill. July 8, 2010). This Court has itself bifurcated and stayed *Monell* discovery on that basis. *See Claxton v. City of Chicago*, No. 14 C 10076, 2015 WL 5304630 (N.D. Ill. Sept. 9, 2015) (Ellis, J.); *Fuery*, 2015 WL 715281 (Ellis, J.) (denying reconsideration of *Monell* bifurcation).[2]

## II. Bifurcation Will Not Prejudice Plaintiffs.

Bifurcation and sequencing discovery will not prejudice Plaintiffs, for several reasons. First, it does not affect Plaintiffs' ability to recover compensatory damages. The Defendant Officers acted within the scope of their employment, Dkt. 61 at 35, and the City is obligated to indemnify them for compensatory damages awarded against them. 745 ILCS 10/9-102.[3]

---

[1] In *Swanigan*, the *Monell* claims were part of a separate lawsuit, so bifurcation was unnecessary. 775 F.3d at 956.

[2] *See also Hendrick v. City of Chicago*, No. 24 C 867, 2025 WL 3227265 (N.D. Ill. Nov. 19, 2025) (Kendall, J.); *Haligas v. City of Chicago*, 671 F. Supp. 3d 894 (N.D. Ill. 2023) (Bucklo, J.); *Lyons v. City of Chicago*, No. 20-cv-03412, 2023 WL 2390364 (N.D. Ill. Mar. 7, 2023) (Kness, J.); *Arrington v. City of Chicago*, No. 17 C 5345, 2018 WL 3861552 (N.D. Ill. Aug. 14, 2018) (Durkin, J.); *Horton v. City of Chicago*, No. 13-cv-6865, 2016 WL 316878 (N.D. Ill. Jan. 26, 2016) (Dow, J.); *Awalt v. Marketti*, No. 11 C 6142, 2014 WL 6908470 (N.D. Ill. Dec. 8, 2014) (Durkin, J.); *Veal*, 2014 WL 321708 (Lefkow, J.); *Taylor v. Kachiroubas*, No. 12 C 8321, 2013 WL 6050492 (N.D. Ill. Nov. 15, 2013) (Gottschall, J.).

[3] *See* Agreement Between the City of Chicago Department of Police and the Fraternal Order of Police Chicago Lodge No. 7, Effective July 1, 2017 Through June 30, 2027, at 43, https://www.chicago.gov/content/dam/city/depts/dol/Collective%20Bargaining%20Agreements/BU-91-Chicago-John-Dineen-Lodge-No.-7-CBA-2017-2027-Final.pdf (last visited October 15, 2026).

Plaintiffs cannot recover additional compensatory damages on *Monell* claims for the same injuries. *Almaraz v. Haleas*, 602 F. Supp. 2d 920, 926 (N.D. Ill. 2008); *see also Spanish Action Comm. of Chi. v. City of Chicago*, 766 F.2d 315, 321 (7th Cir. 1985). Where "a municipal defendant is willing (or required) to indemnify individual defendants for compensatory damages as well as an award of attorney's fees and costs," there "is no need for the parties to spend time and money litigating a *Monell* claim." *Swanigan*, 775 F.3d at 962.

Bifurcation and stay of the *Monell* claims also does not bar Plaintiffs from asserting them should their underlying claims survive summary judgment. *Andersen v. City of Chicago*, No. 16 C 1963, 2016 WL 7240765, at *6 (N.D. Ill. Dec. 14, 2016); *Castillo*, 2012 WL 1658350, at *6.

Further, courts have noted that *Monell* litigation may prejudice a *plaintiff*'s claims against individual defendants by diverting attention from the individual claims. *See Clarett*, 2011 WL 37838, at *2 ("[B]ifurcation is generally likely to bring an earlier disposition of the suit because bifurcation allows a bypass of discovery relating to the *Monell* claims, which can add significant, and possibly unnecessary, time, effort, cost, and complications to the discovery process."); *see also Almaraz*, 602 F. Supp. 2d at 925–26 (explaining that *Monell* discovery could result in costly discovery unnecessary to the claims against the individual defendants).

Plaintiffs' IRFRA claim, which is limited to prospective relief, Dkt. 58 at 24, does not change the analysis. IRFRA creates a right of action only where a "government," through its "laws, ordinances, policies, procedures, practices, [or] governmental actions," 775 ILCS 35/10(b), "substantially burden[s] a person's exercise of religion," *id.* 35/15. A substantial burden is "the presentation of a coercive choice of either abandoning one's religious convictions or complying with the governmental regulation," *Diggs v. Snyder*, 775 N.E.2d 40, 44 (Ill. App. 2002); the plaintiff must show that the government action "prevents him from engaging in

conduct or having a religious experience that his faith mandates," *id.*, such that religious exercise is rendered "effectively impracticable," *Civil Liberties for Urban Believers v. City of Chicago*, 342 F.3d 752, 761 (7th Cir. 2003). Here, the substantial burden element turns entirely on what happened to Plaintiffs on December 10, 2024 and February 24, 2025: whether being directed to reduce their amplification on those two occasions presented them with a coercive choice between their religious convictions and compliance. Because a substantial burden is a necessary element of the IRFRA claim, a ruling in Defendants' favor on that element alone would resolve the claim in its entirety, without reference to City practices or historical enforcement against others. Therefore, Plaintiffs do not need citywide discovery to defend the government action element of their IRFRA claim until the Court resolves whether they have suffered a substantial burden.

**III. Bifurcation For Trial Is Necessary to Avoid Unfair Prejudice To Defendants.**

Although this case may never reach trial, bifurcating the claims against the Defendant Officers from the *Monell* claims for trial purposes would also avoid unfair prejudice. Section 1983 liability rests on a defendant's "own misdeeds but not . . . anyone else's." *Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009). The facts and claims against the individual officers are relatively straightforward in this case: Plaintiffs preached using public amplification; citizens complained to the police; the police responded and attempted to enforce the City's ordinance on amplified sound. All the officers' material interactions with Plaintiffs were captured on body-worn camera. Here, the relative simplicity of the facts and claims against the individual officers would allow for a short and concise trial on the merits, if necessary.

To prove a widespread practice, in contrast, Plaintiffs would offer evidence of enforcement actions by non-party officers against non-party speakers. That evidence creates a "real 'danger that evidence admissible on the issues relating to conduct by the City . . . will

contaminate the mind of the finder of fact in its consideration of the liability of the other defendant[s].'" *Ojeda-Beltran*, 2008 WL 2782815, at *3 (alterations in original); *see also Bradford v. City of Chicago*, No. 16 CV 1663, 2019 WL 5208852 (N.D. Ill. Oct. 16, 2019) (acknowledging the "real danger" of prejudice to the individual defendants when the "vast majority" of trial would concern "city officials, citizens, and conduct" spanning 6 years that is "wholly unrelated" to the individual defendants' conduct on the day at issue); *Lopez v. City of Chicago*, No. 01 C 1823, 2002 WL 335346, at *2 (N.D. Ill. Mar. 1, 2002) ("Without bifurcation, the jury would likely hear evidence against the City of various acts of alleged police misconduct committed by numerous non-party officers to establish a policy or practice. Such evidence can be prejudicial to the individual defendants.").

A joint trial would prejudice the City as well. A municipality is liable only for its own policies, not on a theory of respondeat superior. *Milestone v. City of Monroe*, 665 F.3d 774, 780 (7th Cir. 2011). But a jury asked to weigh evidence about the Defendant Officers' conduct alongside policy evidence may conflate the two and hold the City liable for the officers' conduct, which is the result *Monell* forbids. Separate proceedings eliminate both risks.

## IV. Defendants Request To Stay *Monell* Discovery Pending Resolution Of This Motion.

Finally, Defendants request that the Court stay *Monell* discovery pending the resolution of this motion to bifurcate. Staying *Monell* discovery while the motion is pending would prevent unnecessary burden without prejudicing any party.

## V. Proposed Schedule

Defendants propose that discovery proceed as follows:

(a) *Phase One* would include all remaining fact discovery concerning the December 10, 2024 and February 24, 2025 encounters, including the depositions of Plaintiffs and the Defendant Officers, and discovery concerning Plaintiffs' alleged damages.[4]

(b) Defendants would move for summary judgment on Plaintiffs' claims within 45 days after the close of Phase One.

(c) *Phase Two* would include all remaining discovery on Plaintiffs' *Monell* claims and the government-action element of their IRFRA claim, including the City's Rule 30(b)(6) deposition, discovery concerning enforcement involving persons other than Plaintiffs, electronically stored information directed at those subjects, and expert discovery. Phase Two would be stayed until the Court rules on Defendants' motion for summary judgment. Within fourteen days after that ruling, the parties would submit a proposed schedule for any remaining discovery. The City reserves its objections to Plaintiffs' Rule 30(b)(6) notice. Ex. C.

(d) Defendants would be permitted to file a motion for summary judgment directed to Plaintiffs' *Monell* claims and to the governmental-action element of their IRFRA claim following the close of Phase Two discovery, should those claims remain live.

## LOCAL RULE 37.2 STATEMENT

Pursuant to Local Rule 37.2 and the meet-and-confer requirement in this Court's standing order, counsel for Defendants conferred with counsel for Plaintiffs on this motion and the requested relief during a conference call through Teams on October 8, 2026 at 3:00 PM (CDT) and by emails on October 9, 2026 and October 21–23, 2026. Counsel for Defendants also provided counsel for Plaintiffs with a draft copy of this motion on October 22, 2026. Ellen

[4] This may require a short extension of the existing December 1, 2026 fact discovery cut off. This is needed to accommodate the furlough of Defendant Officer Jackson, and the fact that outstanding written discovery is required from Plaintiffs before their depositions can proceed.

McLaughlin and Eric Seeleman participated on behalf of Defendants at those conferrals. Lindsey Bachman participated on behalf of Plaintiffs at those conferrals. Despite good faith attempts to resolve their differences, the parties were unable to reach an accord regarding the issues of bifurcation and sequencing of *Monell* discovery. Plaintiffs stated their position as follows: "Plaintiffs' position is that bifurcation would not serve the interests of judicial efficiency, as the *Monell* claims do not rise or fall with the officers' liability, Defendants have not established an undue burden from discovery, and bifurcation would prejudice Plaintiffs. Plaintiffs will file a response to Defendants' motion on Monday, October 26."

**CONCLUSION**

Defendants respectfully request that the Court: (1) bifurcate Plaintiffs' *Monell* claims against the City; (2) stay all remaining *Monell* discovery, including Rule 30(b)(6) depositions and the deposition of Sergeant Tomasz Zatora, pending the Court's ruling on Defendants' motion for summary judgment on Plaintiffs' claims; (3) stay *Monell* discovery while this motion is pending; (4) enter the schedule proposed above; and (5) grant such further relief as the Court deems just.

Date: October 23, 2026

Respectfully submitted,

RENEE CAMILLE HATCHER,
Acting Corporation Counsel for
the City of Chicago

By: _/s/ Ellen W. McLaughlin_
Chief Assistant Corporation Counsel

ELLEN W. MCLAUGHLIN
ellen.mclaughlin@cityofchicago.org
HANNAH L. PITCHER
hannah.pitcher@cityofchicago.org
City of Chicago Department of Law
2 North LaSalle Street, Suite 520
Chicago, Illinois 60602
(312) 742-5147 / -6238
*Attorneys for Defendant City of Chicago*

ERIC SEELEMAN
eric.seeleman@cityofchicago.org
NURA ZAKI

nura.zaki@cityofchicago.org
City of Chicago Department of Law
2 North LaSalle Street, Suite 420
Chicago, Illinois 60602
(312) 742-3902
*Attorneys for Defendant Officers*