# Exhibit B

***Raio v. City of Chicago*, No. 25-cv-02709**

**Plaintiffs' Notice of 30(b)(6) Deposition**

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| BRETT RAIO,<br>PEREZ NDI, and<br>REETIK DHAMALA,<br><br>*Plaintiffs,*<br>*v.*<br><br>The CITY OF CHICAGO, an Illinois municipal corporation, and Chicago Police Officers MARIO L. JACKSON, NICO A. SUTOR, CARLOS R. CAMEY SANDOVAL, MICHAEL P. JOYCE, WILLIAM E. GATLIN, and MICHAEL PETRASKI in their official and individual capacities.<br><br>*Defendants.* | Case No. 1:25-cv-02709<br><br>**The Hon. Sara L. Ellis** |

**NOTICE OF TAKING RULE 30(b)(6) DEPOSITION OF DEFENDANT CITY OF CHICAGO**

**TO**: Counsel for Defendant

Attn: Ellen McLaughlin
Hannah Pitcher
Eric Seeleman
City of Chicago Department of Law
2 North LaSalle, Suite 420
Chicago, IL 60602
ellen.mclaughlin@cityofchicago.org
hannah.pitcher@cityofchicago.org
eric.seeleman@cityofchicago.org
312-742-5147 / 744-4216 / 742-3902

**PLEASE TAKE NOTICE** that, pursuant to Federal Rule of Civil Procedure 30(b)(6), Plaintiffs Brett Raio, Perez Ndi, and Reetik Dhamala, by and through their attorneys of record, will take the deposition upon oral examination of Defendant City of Chicago (the "City") on **_____________, 2026, at 9:30 a.m. Central Time**, at the offices of the City of Chicago Department

of Law, 2 North LaSalle Street, Suite 420, Chicago, Illinois 60602, or at another Chicago location agreed by counsel. The deposition will concern all information known or reasonably available to the Defendant City of Chicago regarding the matters for examination set forth in Exhibit A, attached hereto.

The City must designate and prepare one or more officers, directors, managing agents, or other persons who consent to testify on its behalf concerning the matters described with reasonable particularity in Exhibit A. The persons designated must testify about all nonprivileged information known or reasonably available to the City. The City may designate different witnesses for different matters, but each matter must be covered fully.

In accordance with Rule 30(b)(6), the parties shall confer in good faith about the matters for examination before or promptly after service of this Notice. To facilitate that conference and avoid disputes at the deposition, Plaintiffs request that the City identify each proposed designee and the matter or matters assigned to that designee at least ten calendar days before the deposition, and that the City provide any objections and proposed narrowing language sufficiently in advance of the deposition to permit a meaningful conference.

This deposition will be recorded stenographically and may utilize instant visual display of the testimony of the deponent, pursuant to Federal Rule of Civil Procedure 30(b)(3)(A). Any audiovisual recording of the deposition may be used at trial or for any other purpose pursuant to Federal Rule of Civil Procedure 30(b)(3) and 32. It will continue from day to day, subject to Rule 30(d)(1), any stipulation of the parties, and any order of the Court, until completed. The deposition is taken for discovery, for use at trial, and for any other purpose permitted by the Federal Rules of Civil Procedure.

DATED this ___ day of September 2026.

**THE AMERICAN CENTER FOR LAW AND JUSTICE**

**Dated: September ___, 2026**

Respectfully Submitted,
By: ________________

Liam R. Harrell**
Lindsey Bachman**
Nathan J. Moelker*
AMERICAN CENTER FOR LAW & JUSTICE
201 Maryland Avenue, NE
Washington, D.C. 20002
Tel: (202) 641-9160
Fax: (202) 546-9309
Email: lharrell@aclj.org;
nmoelker@aclj.org

Geoffrey R. Surtees*
AMERICAN CENTER FOR LAW & JUSTICE
PO Box 60
New Hope, KY 40052
Tel: (502) 549-7020
Fax: (502) 549-5252
gsurtees@aclj.org

*Admitted to this Court's General Bar
**Admitted *Pro Hac Vice*

*Counsel for Plaintiffs*

# EXHIBIT A

## MATTERS FOR EXAMINATION

The City's designated representative or representatives must be prepared to testify concerning all nonprivileged information known or reasonably available to the City regarding each matter below. The following definitions and instructions apply.

## DEFINITIONS

1. **"City"** means Defendant City of Chicago and, to the extent relevant to a Matter for Examination, its departments, agencies, offices, divisions, units, employees, agents, and representatives, including the Chicago Police Department ("CPD"), the Office of Emergency Management and Communications ("OEMC"), and the Department of Administrative Hearings ("DOAH").

2. **"Amplification Ordinance"** means Sections 8-32-020 and 8-32-070 of the Municipal Code of Chicago ("MCC"), including their subsections, any predecessor or successor provisions, and the City's written or operational interpretations of those provisions.

3. **"Public-Way Amplification Matter"** means any report, complaint, 911 call, service request, dispatch, investigation, encounter, warning, direction, stop, detention, ANOV, arrest, charge, prosecution, hearing, or disposition involving the use or suspected use of portable voice or music amplification on a sidewalk, street, park, plaza, or other public way or traditional public forum.

4. **"Plaintiffs' Incidents"** means the City's responses on December 10, 2024, and February 24, 2025, at or near East Madison Street and North Michigan Avenue adjacent to Millennium Park, including OEMC Event Nos. 2434505532 and 2505506988 and all resulting detentions, ANOVs, arrests, charges, property handling, proceedings, dispositions, and reviews.

5. **"Acevedo Matter"** means the March 30, 2024 encounter, arrest, charging, detention, property handling, prosecution, adjudication, complaints, reviews, and related events involving Ethan Acevedo and CPD Sergeant Tomasz Zatora at or near 1200 N. LaSalle Street, together with the City's knowledge derived from that matter.

6. **"ANOV"** means an Administrative Notice of Ordinance Violation, including the associated citation, data entry, amendment, cancellation, prosecution, administrative hearing, disposition, and records.

7. **"Communication"** means any nonprivileged oral, written, electronic, or recorded transmission of information, including meetings, conversations, telephone or radio communications, emails, text or instant messages, memoranda, reports, directives, social-media messages, and communications through City systems.

## INSTRUCTIONS

1. Unless a Matter for Examination states otherwise, the relevant period is July 1, 2019 through the date of the Rule 30(b)(6) deposition (the "Relevant Period").

2. For policies, directives, guidance, training, and procedures, the scope includes predecessor or superseded materials issued before July 1, 2019 if they remained in effect during the Relevant Period or are necessary to explain the origin, revision, continuation, implementation, or interpretation of a policy or practice in effect during the Relevant Period.

3. For Plaintiffs' Incidents, the Acevedo Matter, and any specifically identified Public-Way Amplification Matter, the scope includes the complete matter from the originating report or encounter through final disposition, return or nonreturn of property, complaint, review, and corrective action, even if part of that lifecycle falls outside the Relevant Period.

4. The City must prepare each designee after a reasonable inquiry into information known or reasonably available to the City, including relevant City records, databases, electronically

stored information, policies, training materials, and persons whose knowledge is reasonably available to the City. A designee's lack of personal involvement does not limit the City's preparation duty.

5. The City may designate more than one person. If it does, the City must identify the Matters for Examination assigned to each person and ensure that the testimony of all designees collectively provides the City's complete testimony on every matter.

6. The Matters seek nonprivileged facts, operational interpretations and practices, organizational knowledge, and the factual bases for City positions. They do not seek attorney-client communications, protected work product, counsel's mental impressions, settlement communications, or a witness's legal opinion on ultimate constitutional liability. Underlying nonprivileged facts are not excluded merely because they were communicated to counsel.

7. The words "including" and "includes" identify subjects within the stated matter and do not limit the matter to the listed examples. They do not expand a matter beyond its stated subject, time period, and objective definitions.

8. If the City's position is that responsive information does not exist, is not maintained, cannot be identified, or is not reasonably available, the designee must be prepared to explain the reasonable inquiry undertaken and the nonprivileged factual basis for that position.

9. Plaintiffs reserve the right to serve an amended or supplemental notice consistent with Rules 26 and 30 based on the City's rolling email production, additional discovery, individual depositions, or information first disclosed during the required Rule 30(b)(6) conference.

**MATTERS FOR EXAMINATION**

1. The organizational structure and allocation of responsibility and authority within the City during the Relevant Period for: interpreting and issuing operational guidance concerning the Amplification Ordinance; responding to and dispatching amplified-sound or noise

complaints; investigating and enforcing the Amplification Ordinance; training and supervising CPD members; issuing, reviewing, correcting, cancelling, prosecuting, adjudicating, and tracking ANOVs; processing custodial arrests and seized property; receiving and investigating complaints; and maintaining the associated records. This matter includes the responsible departments, offices, divisions, units, and positions, their reporting relationships, and the scope of their responsibilities and authority.

2. The City's interpretation and operational application during the Relevant Period of the Amplification Ordinance, including: "average conversational level"; the 100-foot distance requirement; ambient noise; the distinctions between Sections 8-32-020 and 8-32-070 and their subsections; the distinction between public and private locations; the observations, measurements, investigation, and documentation considered sufficient to establish a violation; the role of a decibel meter, mobile-phone application, complainant estimate, officer estimate, or other measurement; and the standards communicated to officers for determining whether probable cause or another legally sufficient factual basis exists for enforcement.

3. The permits, licenses, registrations, or other authorizations, if any, that the City makes available or requires for a person using portable voice or music amplification while speaking, preaching, singing, performing, or promoting goods or services on a public way, including: whether a separate amplification permit exists; the relationship between any street-performer license and the Amplification Ordinance; how a person obtains such authorization; what conduct it authorizes or restricts; how CPD members are instructed to identify and evaluate such authorization; and the operational effect of the absence or possession of such authorization on warning, ANOV issuance, arrest, or other enforcement.

4. The content, purpose, effective dates, origin, implementation, revision history, reasons for material revisions, and persons or positions responsible for adopting, revising, approving,

interpreting, communicating, or enforcing the City's policies, general orders, special orders, directives, bulletins, written instructions, and guidance during the Relevant Period concerning: First Amendment activity and public gatherings; free exercise of religion; public forums; amplified sound and noise complaints; preliminary investigation and evidentiary sufficiency; permits and licenses; ANOV issuance, correction, cancellation, prosecution, and hearings; field arrests, detention, and processing; property seizure, inventory, retention, and return; and supervisory review of enforcement actions involving public speech or gatherings.

5. The development, content, implementation, delivery, attendance, testing, evaluation, and remedial or corrective training during the Relevant Period provided to: the named Defendant officers; their supervisors; Sergeant Tomasz Zatora; CPD members assigned to or reasonably likely to respond to public-way amplified-sound complaints; and personnel responsible for reviewing such enforcement. This matter includes course content, learning objectives, scenarios, examinations or evaluations, attendance and completion records, material changes, identified deficiencies, and remedial or corrective instruction concerning First Amendment activity and public gatherings; free exercise of religion; public forums; amplified sound and noise complaints; interpretation and enforcement of the Amplification Ordinance; preliminary investigation and evidentiary sufficiency; permits and licenses; ANOV issuance and review; custodial arrests and detention; property seizure and return; supervisory review of enforcement actions; and interactions with individuals engaged in expressive activity on public ways.

6. The City's policies, standards, procedures, and actual practices during the Relevant Period for supervising and reviewing public-way amplified-sound enforcement, including: the circumstances requiring a supervisor to respond to or approve an enforcement action; review of body-worn-camera recordings, reports, ANOVs, arrests, charges, and property inventories;

the standards applied in reviewing compliance with the Amplification Ordinance and constitutional-policing requirements; identification, documentation, and escalation of deficient investigations or recurring misinterpretations; and the persons, positions, or units responsible for such review and for initiating corrective action.

7. The criteria, policies, and actual practices during the Relevant Period for selecting among or escalating the following responses to a suspected Amplification Ordinance violation on a public way: no enforcement; an informal warning; a direction to reduce volume; relocation; a direction to cease amplification; dispersal; an investigatory stop; issuance, correction, or cancellation of an ANOV; custodial arrest; ordinance or criminal charging; detention and pretrial processing; and seizure, inventory, retention, or return of sound equipment and related property. This matter includes required supervisory approval and the facts officers are expected to investigate and document for each response.

8. All information known or reasonably available to the City concerning the December 10, 2024 response at East Madison Street and North Michigan Avenue, including: the originating call or request for service and OEMC Event No. 2434505532; information communicated to responding units; the roles of Officers Mario L. Jackson, Nico A. Sutor, Carlos R. Camey Sandoval, and other City personnel; the investigation performed or not performed concerning volume, distance, ambient noise, permits, or licenses; the detention and handcuffing of Brett Raio; the handling of the speaker; the selection, preparation, and legal or administrative processing of charges under MCC Sections 8-4-055 and 2-84-300(a); the February 21, 2025 dismissal; any supervisory, administrative, or corrective review; and the nonprivileged factual basis for the City's present position concerning the response and charges.

9. All information known or reasonably available to the City concerning the February 24, 2025 response at East Madison Street and North Michigan Avenue, including: the originating 911

call and OEMC Event No. 2505506988; information communicated to responding units; the roles of Officers Michael P. Joyce and William E. Gatlin, Lieutenant Michael Petraski, and other City personnel; the investigation performed or not performed concerning volume, distance, ambient noise, permits, or licenses; the factual basis for the arrests and charges under MCC Section 8-32-070; the decision to use custodial arrest and pretrial processing rather than an ANOV, warning, or lesser response; the seizure, inventory, retention, and return or nonreturn of Plaintiffs' equipment; the length and conditions of detention; the disposition of the charges; any supervisory, administrative, or corrective review; and the nonprivileged factual basis for the City's present position concerning probable cause, arguable probable cause, and the propriety of the response.

10. OEMC policies and procedures actually applicable to Plaintiffs' Incidents and the City's handling of OEMC Event Nos. 2434505532 and 2505506988, including: call intake and questioning of callers; event classification and priority; recording and transmitting caller descriptions; dispatch and assignment of units; radio and PDT communications; unit-status entries; GPS information; event closure; quality assurance; retention and retrieval of records; prior or recurring complaints reflected in the event information; and how statements describing religious content, street preaching, or recurring speaker activity were recorded and conveyed to CPD personnel.

11. The creation, operation, retention, preservation, retrieval, completeness, and authentication of City records concerning Plaintiffs' Incidents and the Acevedo Matter, including body-worn-camera recordings and associated audit logs, in-car-camera recordings, 911 audio, OEMC event and unit queries, radio and PDT communications, GPS data, reports, ANOVs, arrest and detention records, property and inventory records, and administrative or court disposition

records. This matter includes whether the City-produced records are complete and the explanation for any missing, unavailable, overwritten, corrupted, or unproduced record.

12. The City's systems and practices during the Relevant Period for issuing, coding, recording, reviewing, amending, cancelling, prosecuting, resolving, and tracking ANOVs under MCC Section 8-32-070, including: the roles of CPD, City prosecuting personnel, and DOAH; the data fields and records maintained; identification of matters involving public-way or portable amplification; dispositions including nonsuit, not liable, default, plea, set-aside, dismissal, or amendment to another charge; reasons known to the City for nonsuits, dismissals, corrections, or failures of proof; and the use of outcomes to train, supervise, review, or correct personnel.

13. Enforcement of MCC Section 8-32-070 during the Relevant Period, to the extent reflected in or identifiable through the City's record systems, including aggregate data, analyses, reports, summaries, databases, and information sufficient to identify the responsive population. This matter includes the number and geographic distribution of ANOVs, arrests, and other charges; the conduct reported; the type and location of the amplification involved; the investigation performed and evidence documented; whether distance, conversational level, ambient noise, permits, or licenses were considered; warnings or other lesser enforcement responses; the identity, assignment, and unit of involved personnel; the disposition of the matter; and whether the records and data produced by the City constitute the complete responsive population maintained or reasonably retrievable by the City.

14. The City's knowledge and handling of the following Public-Way Amplification Matters reflected in its production: the Andrew Johnston matters beginning approximately in July 2019; the Eugene Quack or Kwak and Ajamu Lawrence matters at or near 410 N. Michigan Avenue; the Ivan Lupa, Eugene Clay or Kwau, and Linford Vaughn matters; and other public-way amplification matters identified in or reflected by the City's production involving

portable amplification on a public way that resulted in a warning, ANOV, arrest, charge, nonsuit, dismissal, not-liable finding, or other disposition. This matter includes the conduct reported, evidence gathered, officer interpretation, enforcement response, disposition, and City review or corrective action.

15. Complaints, service requests, 911 calls, CAD or OEMC events, dispatches, and CPD responses during the Relevant Period involving portable amplification on a public way that did not result in an ANOV, arrest, or charge, to the extent reflected in or identifiable through the City's record systems. This matter includes the records, databases, data fields, coding practices, reports, summaries, and other information the City maintains concerning such responses; the criteria and methods used to identify, classify, search for, retrieve, or code such matters; the response and investigation undertaken; the reasons reflected in the City's records for the absence of formal enforcement; and the City's ability to identify, quantify, or retrieve materially comparable non-enforcement matters from its records systems.

16. The City's policies, instructions, criteria, communications, data, and actual practices during the Relevant Period concerning enforcement involving amplified religious speech, street preaching, singing, musical performance, political or other expressive activity, and commercial promotion on public ways, including similarities or differences in the investigation, permit demands, warnings, ANOVs, arrests, seizures, and dispositions applied to those categories when the message or activity was known to City personnel.

17. All information known or reasonably available to the City concerning the Acevedo Matter, including: the originating call or request for service; information available to responding officers; Sergeant Tomasz Zatora's interpretation and application of the Amplification Ordinance and any permit requirement; the investigation of volume and distance; the arrest, charges, seizure and handling of equipment, detention, prosecution, and disposition; policies,

training, and supervision applicable to Zatora; any City review, complaint, remedial action, or knowledge derived from the incident or its adjudication; and nonprivileged facts concerning similarities or differences between the Acevedo Matter and Plaintiffs' Incidents.

18. The City's receipt, identification, aggregation, investigation, disposition, and use during the Relevant Period of complaints, administrative outcomes, lawsuits, judicial rulings, supervisory reports, audits, or other information alleging or indicating that City personnel: misinterpreted or improperly enforced an amplified-sound or noise ordinance against expressive or religious activity; required a nonexistent or inapplicable permit; failed to assess the required distance or sound standard; used arrest, detention, or seizure without a sufficient factual basis; or otherwise interfered with protected public speech. This matter includes what responsible City personnel learned, when they learned it, and how the information was communicated and used.

19. Any supervisory review, investigation, counseling, discipline, policy change, training change, remedial instruction, audit, or corrective action taken, considered, rejected, or not taken in response to: Plaintiffs' Incidents; the Acevedo Matter; complaints or lawsuits concerning similar enforcement; ANOV dismissals, nonsuits, or not-liable findings; or identified recurring officer interpretations concerning amplification, permits, distance, conversational level, religious activity, arrest, or property seizure. This matter includes the nonprivileged reasons for the City's action or inaction.

20. The City's policies, criteria, recordkeeping, and actual practices during the Relevant Period for seizing, inventorying, storing, retaining, releasing, returning, forfeiting, or disposing of speakers, microphones, stands, cameras, telephones, and other property associated with an amplification-related ANOV, arrest, or charge, including the handling and current status of property taken during the February 24, 2025 incident and the Acevedo Matter.

21. The nonprivileged factual basis known to the City concerning Plaintiffs' allegation that the City maintained, tolerated, or failed to correct an unwritten widespread custom or practice of enforcing the Amplification Ordinance against street preachers or amplified religious speakers without evidence satisfying the ordinance. This matter includes: the frequency and geographic distribution of relevant enforcement; recurring officer statements or interpretations that amplification itself is prohibited, that a permit is always required, or that a sound assessment at 100 feet is unnecessary; similarities and differences among Plaintiffs' Incidents, the Acevedo Matter, identified comparators, and other Public-Way Amplification Matters; City data, analyses, audits, or reviews; facts supporting any City position that the incidents were isolated; and actions taken to prevent recurrence.
22. The nonprivileged facts known or reasonably available to the City relating to: whether any challenged action was motivated by Plaintiffs' protected speech or religious exercise; whether the Amplification Ordinance was enforced neutrally and generally applicable in actual practice; and whether the City's actions substantially burdened Plaintiffs' religious exercise. This matter excludes counsel's legal analysis, mental impressions, and privileged communications.
23. The nonprivileged facts, complaints, studies, analyses, audits, reports, data, operational experience, and other information known or reasonably available to the City concerning the governmental interests served by applying the Amplification Ordinance to amplified speech on public sidewalks and other public ways, including interests concerning sound levels, pedestrian or vehicular access, public safety, disruption, complaints, or competing uses of public space; the means by which the City evaluates or measures those interests; and the enforcement alternatives available, considered, used, recommended, or rejected to address those interests, including warnings, requests for volume reduction, relocation, verification at

100 feet, ANOVs, or other measures short of custodial arrest, detention, seizure, or complete cessation of amplification.

24. The City's current policies, instructions, training, and actual practices concerning public-way voice amplification and enforcement of MCC Section 8-32-070, including: current safeguards against enforcement based solely on the use of amplification, the absence of a permit, religious content, or an assessment that does not apply the ordinance's distance and conversational-level standards; and the nonprivileged facts known or reasonably available to the City concerning how Plaintiffs' intended future amplified street preaching at or near Millennium Park would be handled under current practice.

25. Nonprivileged internal and external Communications during the Relevant Period that conveyed, adopted, revised, implemented, or explained Citywide interpretations, instructions, training, supervisory guidance, or corrective action concerning the Amplification Ordinance or amplified expressive activity on public ways. This matter includes the senders, recipients, dates, subjects, information communicated, decisions or instructions conveyed, and actions taken as a result.

26. The City's nonprivileged preservation, collection, search, review, and production of emails and other electronically stored information responsive to Plaintiffs' discovery requests, including: the custodians and data sources searched; the date ranges and the parties' agreed search terms applied; whether any agreed custodians, sources, date ranges, or search terms were modified, omitted, or limited in implementation; the status and completion date of the City's rolling production; quality-control or validation measures used to confirm that the agreed searches were implemented; known gaps, inaccessible sources, deleted information, or failed searches; and the factual information concerning the implementation of searches and collections. This matter does not seek attorney-client communications, counsel's mental

impressions, legal advice, or the reasons underlying the parties' selection of the agreed search terms.

**CERTIFICATE OF SERVICE**

I certify that on ___________, 2026, I caused the foregoing Plaintiffs' Notice of Rule 30(b)(6) Deposition of Defendant City of Chicago to be served by electronic mail upon counsel for Defendants at the email addresses identified in the Notice.

_______________
Liam R. Harrell