**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| BRETT RAIO; PEREZ NDI; and REETIK DHAMALA,<br>*Plaintiffs,*<br>*v.*<br>The CITY OF CHICAGO, an Illinois municipal corporation, and Chicago Police Officers MARIO L. JACKSON, NICO A. SUTOR, CARLOS R. CAMEY SANDOVAL, MICHAEL P. JOYCE, WILLIAM E. GATLIN, and MICHAEL PETRASKI in their official and individual capacities,<br>*Defendants.* | Case No. 1:25-cv-02709<br><br>**The Hon. Sara L. Ellis** |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' JOINT MOTION TO BIFURCATE PLAINTIFFS' *MONELL* CLAIMS AND STAY *MONELL* DISCOVERY PENDING SUMMARY JUDGMENT**

# TABLE OF CONTENTS

**INTRODUCTION** ... 1

**BACKGROUND** ... 1

**LEGAL STANDARD** ... 3

**ARGUMENT** ... 3

**I. Defendants Have Not Shown That Bifurcation and a Stay Would Promote Efficiency.** ... 3

A. The *Monell* claims do not rise or fall with the officers' liability. ... 3

B. The discovery Defendants label "*Monell*-only" is needed for the claims against the officers ... 8

C. Defendants have not shown undue burden. ... 10

**II. Bifurcation and a Stay Would Prejudice Plaintiffs.** ... 12

A. Indemnification does not give Plaintiffs what their *Monell* claims seek. ... 12

B. Defendants' indemnification assurances are incomplete. ... 13

C. A stay would force Plaintiffs to oppose summary judgment without evidence to which they are entitled. ... 13

**III. Bifurcation for Trial Is Premature and Unnecessary.** ... 14

**IV. There Is No Basis for a Stay While the Motion Is Pending.** ... 15

**CONCLUSION** ... 15

## INTRODUCTION

By and through counsel, Plaintiffs respectfully respond to Defendants' Joint Motion to Bifurcate Plaintiffs' *Monell* Claims and Stay *Monell* Discovery Pending Summary Judgment. Dkt. 79. Three street preachers were cited or arrested for preaching with amplification—two of them held in jail for about seven hours—on a downtown corner where, as alleged, their sound measured no louder than the city around them. Dkt. 58 at 1–5. This Court held that Plaintiffs plausibly allege the City violated their constitutional rights through a widespread practice, and it sent those claims to discovery, observing that "[d]iscovery will uncover whether Plaintiffs can prove their *Monell* claims[.]" *Id.* at 10. Fact discovery closes on December 1, 2026.

By Defendants' own account, the City is already 70 percent through its document review. They nonetheless ask this Court to halt that discovery pending a potential summary-judgment motion. Defendants' motion rests on the mistaken premise that the City's liability depends entirely on the individual officers' liability—a proposition the Seventh Circuit has rejected. The City may be independently liable, and the comparative, training, and enforcement evidence it seeks to withhold is necessary to prove Plaintiffs' claims. Bifurcation should be denied.

## BACKGROUND

**The Court's ruling.** The Court allowed Plaintiffs' First Amendment retaliation (Count I), free exercise (Count II), IRFRA (Count V), false arrest (Count VI), and retaliatory arrest (Count VII) claims to proceed. Dkt. 58 at 25. Three features of that opinion matter here. *First*, the Court held that Plaintiffs plausibly alleged a City practice, supported by "two instances, involving different police officers," and recognized their allegations "suggest widespread practices, not isolated events." *Id.* at 9. *Second*, the Court analyzed the free exercise and IRFRA claims as challenges to the practice itself, which leaves Plaintiffs with "a choice: abstain from amplified street preaching or engage in the practice and risk more citations and arrests." *Id.* at 17. *Third*, the Court declined to resolve the central factual dispute

(whether Plaintiffs' sound actually violated the Ordinance) because body-camera audio does not reveal "the true volume of Plaintiffs' amplification." *Id.* at 7.

**Discovery to date.** The parties have already engaged in substantial discovery concerning both Plaintiffs' claims against the individual officers and their *Monell* claims against the City. By Defendants' account, the City has produced body-camera video, 911 audio, event records, charging records, CPD directives, general orders, and training materials on the First and Fourth Amendments and ordinance enforcement. Dkt. 79 at 3–4. The City identified "nearly 100" enforcement actions under the Ordinance over a five-year period and collected substantial volumes of potentially responsive communications. *Id.* Defendants acknowledge that "*Monell* discovery is already substantial." *Id.*

Yet discovery remains incomplete. The City acknowledges that it has reviewed approximately 70 percent of the documents returned by Plaintiffs' search terms. *Id.* Its production of responsive emails and other communications has proceeded on a rolling basis, with additional production into late October. *See* Defendants' Oct. 9, 2026, Email (Ex. 4); Plaintiffs' Oct. 22, 2026, Email (Ex. 6).

The parties also devoted considerable time to the City's Rule 30(b)(6) deposition. Plaintiffs served their notice of proposed topics on September 4, 2026, identifying matters concerning the City's enforcement practices, policies, training, supervision, and handling of amplified speech. *See* Plaintiffs' Sept. 4, 2026, Email (Ex. 1). After the City objected, Plaintiffs made significant concessions to narrow the disputed topics and facilitate depositions. *See* Defendants' Sept. 30, 2026, Email (Ex. 2); Plaintiffs' Oct. 16, 2026, Email (Ex. 5). Rather than complete that process or provide dates before the December 1 discovery cutoff, the City proposed suspending negotiations and deferred depositions pending its bifurcation motion. *See* Ex. 4; Ex. 6.

The City's incomplete production also disrupted officer depositions: because of the Defendants' failure to provide production, Plaintiffs postponed the October depositions, leaving only Officer Sutor's November 12 deposition confirmed before the December 1 cutoff; Officer Jackson

remains unavailable until mid-December. *See* Plaintiffs' Oct. 9, 2026, Email (Ex. 3); Defendants' Oct. 9, 2026, Email (Ex. 4).

Having already undertaken substantial discovery on these claims, Defendants have not explained what meaningful efficiencies would be gained by staying that discovery now, particularly where the remaining discovery overlaps with Plaintiffs' claims against individual officers.

## LEGAL STANDARD

Rule 42(b) permits separate trials "[f]or convenience, to avoid prejudice, or to expedite and economize." Before ordering them, a court must find that separation would avoid prejudice or promote economy, that it would not unfairly prejudice the non-movant, and that it would not offend the Seventh Amendment. *Houseman v. U.S. Aviation Underwriters*, 171 F.3d 1117, 1121 (7th Cir. 1999). Defendants, as movants, must carry that showing: "The party seeking bifurcation has the burden of demonstrating that judicial economy would be served and that no party would be prejudiced by separate trials." *William Reber, LLC v. Samsung Elecs. Am., Inc.*, 220 F.R.D. 533, 536 (N.D. Ill. 2004).

## ARGUMENT

### I. DEFENDANTS HAVE NOT SHOWN THAT BIFURCATION AND A STAY WOULD PROMOTE EFFICIENCY.

#### A. The *Monell* claims do not rise or fall with the officers' liability.

Defendants' lead argument is that "no City practice could have caused Plaintiffs any constitutional injury unless the Defendant Officers violated Plaintiffs' rights." Dkt. 79 at 1. That is not the law in this Circuit. *Thomas v. Cook Cty. Sheriff's Dep't* rejected a rule "that requires individual officer liability before a municipality can ever be held liable," as "unreasonable," explaining that "[t]he actual rule . . . is much narrower: a municipality can be held liable under *Monell*, even when its officers are not, unless such a finding would create an inconsistent verdict." 604 F.3d 293, 305 (7th Cir. 2010). Defendants would confine *Thomas* to an exception. The Seventh Circuit did not. It characterized its holding as "[t]he actual rule." *Id. Matthews v. City of East St. Louis*, 675 F.3d 703, 709 (7th Cir. 2012),

did not hold otherwise; it emphasized the same possibility "if the officers were acquitted based on a defense of good faith, because there is still an argument that the city's policies caused the harm, though the officer was acting in good faith." *Id.*; *see also Swanigan v. City of Chicago*, 775 F.3d 953, 963 (7th Cir. 2015) ("[D]istrict courts cannot prevent plaintiffs from pursuing potentially viable *Monell* claims that seek additional equitable relief or are distinct from the claims against individual defendants."). Whether verdicts would be inconsistent depends on "the nature of the constitutional violation, the theory of municipal liability, and the defenses set forth." *Thomas*, 604 F.3d at 305. Each factor cuts against bifurcation here. *See Rodriguez v. City of Chicago*, 2018 U.S. Dist. LEXIS 120594, at *7 (N.D. Ill. 2018).

***1. The nature of the violation and the theory of liability.*** Defendants describe Plaintiffs' theory as merely officers enforcing a valid ordinance "regardless of evidence," so that the only injuries are those the officers inflicted. Dkt. 79 at 6–7. But this Court read Counts II and V differently. Plaintiffs "do not allege that the Amplification Ordinance burdens their religious exercise"; they allege that an "unwritten policy and custom of targeting religious activity" does. Dkt. 58 at 16–17. The Court held that "Defendants' unwritten policy targeting amplified religious speech" plausibly imposes a substantial burden, *id.* at 17, and that the IRFRA claim survives because the alleged "unwritten selective enforcement policy amounted to a coercive tactic." *Id.* at 24. The injury alleged in Counts II and V is the standing coercive choice: abstain from amplified street preaching or continue and risk citation and arrest. This injury exists regardless of whether any individual officer lacked probable cause.

Defendants' own proposed schedule effectively concedes the point. They place the IRFRA "government-action element" in Phase Two, alongside *Monell*, and acknowledge the claim as "limited to prospective relief." Dkt. 79 at 10–11, 13. IRFRA makes government "laws, ordinances, policies, procedures, practices, [or] governmental actions" the source of liability, 775 ILCS 35/10(b), and relief on that claim runs against the City. A summary judgment win for or against the officers on individual-capacity claims would not dispose of it; and Defendants' assertion that substantial burden "turns

entirely" on the two encounters, Dkt. 79 at 10–11, cannot be squared with the Court's framing or with the rule that substantial burden "is ordinarily an issue of fact." Dkt. 58 at 23 (citation omitted). Defendants identify no authority for disassembling an IRFRA claim in this manner. Even if the two encounters demonstrate that the burden became concrete, that does not make them the *exclusive* source of the burden or justify postponing discovery into the alleged City practice that gives those encounters their continuing coercive effect. The "government-action element" Defendants would sequester cannot be severed from the remaining elements: substantial burden and causation. The alleged City practice is the coercive mechanism that creates Plaintiffs' burden.

Free exercise is still more clearly independent of an officer-liability verdict. Count II does not ask merely whether a particular officer made an unlawful arrest. The governing question, as this Court framed it, is whether "a government entity burdened a sincere religious practice pursuant to a policy that was not neutral or generally applicable." Dkt. 58 at 17. The Court then identified the challenged government conduct as "Defendants' unwritten policy targeting amplified religious speech," not simply the discrete decisions of six officers. *Id.* That distinction is dispositive for bifurcation: the constitutionality of the municipal practice cannot be resolved by deciding only whether an individual officer had probable cause, possessed retaliatory animus, or is personally immune from damages.[1] The burden is likewise continuing and institutional. The Court held that the alleged policy leaves Plaintiffs with a prospective choice: "abstain from amplified street preaching or engage in the practice and risk

[1] The elements of Count II confirm the point. Neutrality and general applicability are assessed by examining the operation of the challenged rule or practice, including whether comparable secular conduct receives more favorable treatment and whether the government affords discretionary exemptions or enforcement latitude. *See generally Fulton v. City of Philadelphia*, 593 U.S. 522 (2021). Those questions *necessarily* extend beyond what happened during the two body-camera encounters. Evidence concerning other amplification complaints, nonreligious speakers, enforcement decisions, supervisory direction, and officer training bears directly on whether the alleged practice singles out religious exercise. Defendants cannot characterize that proof as irrelevant to Phase One while simultaneously announcing a summary-judgment argument that the City's application of its laws did not burden religion; that question is dependent upon the very evidence Defendants seek to withhold.

more citations and arrests." Dkt. 58 at 17. That pressure does not disappear if one officer establishes probable cause for one encounter, lacks personal animus, or reasonably misunderstood the law. So long as the City allegedly maintains the practice, Plaintiffs face the same choice the next time they preach. And because Count II challenges a policy alleged to be nonneutral or not generally applicable, the City must ultimately justify that policy under the corresponding constitutional standard; an officer's personal defense does not supply that justification.

Count I is similar. The Court allowed the First Amendment retaliation theory to proceed, requiring protected speech, a deprivation likely to deter speech, and protected speech as a motivating factor. Dkt. 58 at 16. That theory is broader than whether officers arrested or cited Plaintiffs without probable cause. All three Plaintiffs allege deterrence from future amplified preaching, and the claimed retaliatory pattern involves two sets of officers acting ten weeks apart. Evidence that the same enforcement response recurred, that comparable secular amplification was treated differently, or that officers acted pursuant to shared training or direction bears on motivation and causation even if no single officer admits religious hostility. Nor would an officer's favorable verdict necessarily negate municipal retaliation. An officer might prevail because Plaintiffs cannot prove that the officer personally knew enough to infer retaliatory purpose or because qualified immunity shields damages. Neither ground decides whether a City practice predictably imposed adverse action on protected religious speech or caused the deterrent injury. The City's proposed sequence thus risks adjudicating Count I on an artificially truncated record while withholding the evidence most probative of why the action occurred. *See Obrycka v. City of Chicago*, No. 07 C 2372, 2012 U.S. Dist. LEXIS 22818, at *11 (N.D. Ill. Feb. 23, 2012) (*Monell* claim based on a *de facto* policy did not depend on the officer's liability).

Counts VI and VII implicate distinct inquiries. Probable cause is a complete defense to the ordinary false-arrest claim in Count VI. But Count VII may expressly proceed despite probable cause

where a plaintiff shows that similarly situated persons not engaged in the same protected speech were not arrested. *Nieves v. Bartlett*, 587 U.S. 391, 406–07 (2019); Dkt. 58 at 20–21; *see also Gonzalez v. Trevino*, 602 U.S. 653 (2024). Thus, even the summary-judgment ruling Defendants pursue—probable cause—would not dispose of retaliatory arrest. It would make comparator proof more important. That comparator proof is *not* confined to the arresting officers' files. Plaintiffs need to know how CPD responded when secular, political, musical, or commercial speakers used amplification; when complaints or 911 calls produced no enforcement; and when officers exercised discretion short of citation or arrest. Those subjects correspond to the discovery Defendants place in Phase Two. Staying those subjects would force Plaintiffs to satisfy the *Nieves* exception while denying them access to the City-controlled evidence needed to do so. The proposal is circular in the precise sense that matters for Rule 56. Defendants intend to rest on probable cause—thereby making comparator evidence indispensable under *Nieves*—and simultaneously to classify the City's records of how comparable speakers were treated as "*Monell*-only" discovery unavailable until after summary judgment. Far from promoting efficiency, that sequence would virtually guarantee a Rule 56(d) dispute, supplemental discovery, and renewed summary-judgment proceedings.

Claim by claim, Defendants' premise fails. Counts II and V challenge a City practice and seek relief from its continuing coercive effect; Counts I and VII depend on recurring, comparative, or institutional evidence that Defendants would defer; and qualified immunity or reasonable reliance may absolve individual officers without resolving municipal causation. The proposed Phase One therefore would not dispose of the case; it would produce an incomplete summary-judgment record followed by renewed discovery and overlapping adjudication. *See Love v. City of Chicago*, 363 F. Supp. 3d 867, 870 (N.D. Ill. 2019) (declining bifurcation where claims overlapped the *Monell* allegations).

***2. The defenses.*** Defendants claim the officers "had a lawful basis" and "probable cause for Ndi and Dhamala's arrests," and were not motivated by religion. Dkt. 79 at 7. The Court has

recognized the existence of possible qualified immunity based on "arguable probable cause." Dkt. 58 at 22. Qualified immunity is not a finding that no constitutional violation occurred; it is a defense the City does not have. *Owen v. City of Independence*, 445 U.S. 622, 638 (1980). Officers may therefore prevail on immunity while the practice that shaped what they did remains unconstitutional. An officer who acts on a department-wide understanding that street preachers using amplification are to be cited without measuring volume may lack personal animus. The City that fostered the practice has no such shield. That is the verdict combination *Thomas* permits. *See Nessel v. City of Northlake*, No. 93 C 6176, 1994 U.S. Dist. LEXIS 17345, at *2 (N.D. Ill. Dec. 5, 1994) (city officials could be found not liable for First Amendment violation due to qualified immunity defense); *Love*, 363 F. Supp. 3d at 874 (same); *Medina v. City of Chicago*, 100 F. Supp. 2d 893, 896 (N.D. Ill. 2000) (same). "Defendant Officers might not be liable based on qualified immunity even if they are found to have engaged in constitutional violations, and so bifurcation would not necessarily avoid a second trial on the *Monell* claim should Defendant Officers be found immune." *Rodriguez*, 2018 U.S. Dist. LEXIS 120594, at *9.

### B. The discovery Defendants label "*Monell*-only" is needed for the claims against the officers.

Defendants' efficiency argument assumes a clean line between officer discovery and *Monell* discovery. As this Court has emphasized, no clean line exists. *See Cadle v. City of Chicago*, No. 15 C 4725, 2015 U.S. Dist. LEXIS 148344, at *6 (N.D. Ill. Nov. 2, 2015) ("A stay of *Monell* discovery could, and often does, give rise to arguments about whether Plaintiff's discovery requests relate to his *Monell* claim or to his other claims."); *Terry v. Cook Cty. Dep't of Corr.*, No. 09C3093, 2010 U.S. Dist. LEXIS 68623, at *8 (N.D. Ill. July 8, 2010) (noting that disputes over whether *Monell* evidence has bearing on individual liability "may add unnecessary complexity and confusion to the discovery process").

**Comparator evidence.** As explained above, comparator enforcement is necessary to address Defendants' anticipated probable-cause argument and the *Nieves* exception. The pertinent Rule 30(b)(6) subjects include complaints and 911 calls that produced no enforcement and CPD's treatment

of religious, political, musical, and commercial speakers. Dkt. 79 at 4 (Matters 15, 16, 21). Those subjects therefore cannot be pigeonholed as "*Monell*-only" discovery and thus deferred. This evidence is not exclusively relevant to *Monell*; it bears directly on the individual officers' potential liability.

**Training, direction, and enforcement history.** The City acknowledges producing CPD directives, general orders, and training materials relevant to the individual claims. Dkt. 79 at 3. The rest of the policy, training, and enforcement-record discovery bears on what a reasonable officer would have understood, whether the officers followed what they were taught, and why two different sets of officers, ten weeks apart, reached the same result. Dkt. 58 at 9. Discovery concerning Sergeant Zatora's separate 2024 enforcement encounter goes to the same questions and may likewise illuminate the instructions and enforcement practices relevant to Defendant Officers' actions. These subjects cannot categorically be deferred as *Monell*-only discovery merely because they also bear on municipal liability.

Courts decline to bifurcate where the line is this blurry. *See Mann v. City of Chicago*, 2017 U.S. Dist. LEXIS 146029, at *4 (N.D. Ill. Sep. 8, 2017) ("questions about the authority of the individual officers … would be fair discovery even absent the *Monell* claim"). Phasing would produce two rounds of depositions of overlapping City witnesses and two rounds of summary judgment on overlapping facts. The same Rule 30(b)(6) designees and supervisors would first be examined about the officers' authority, training, understanding of the Ordinance, and the two encounters, then recalled after Phase Two opens about the City practices and enforcement history that informed those subjects. Counsel would have to prepare twice, witnesses would have to testify twice, and the parties and Court would have to revisit the same documents and factual disputes in successive summary-judgment records.

"Given the factual overlap between the *Monell* claims and the constitutional claims, a stay of *Monell* discovery will likely result in continual discovery disputes between the parties about whether Plaintiff's discovery requests invoke her *Monell* claim or her other claims." *Estate of Loury v. City of Chicago*, 2017 U.S. Dist. LEXIS 60459, at *10–11 (N.D. Ill. April 20, 2017). For each request,

deposition question, and document category, the parties would have to debate whether the evidence concerns an officer's knowledge, motive, authority, or reasonableness; the City's practice and causation; or both. Because the same evidence often serves both purposes, the Court would be asked to police a line that cannot be drawn cleanly. *See Cadle*, 2015 U.S. Dist. LEXIS 148344. Nor can the problem be solved by permitting the same evidence only after Phase One depositions are complete. If comparator records, enforcement files, supervisory communications, or Rule 30(b)(6) testimony are withheld until later, Plaintiffs must either proceed on an incomplete record or reserve the right to reopen witnesses. Both choices defeat the asserted purpose of phasing: the first prejudices Plaintiffs, and the second increases cost, delay, and judicial supervision.

The more efficient course is therefore the more straightforward one: complete the discovery; take the relevant witnesses once; and present one complete factual record for summary judgment. A categorical stay, by contrast, postpones necessary evidence, multiplies proceedings, and ensures that the Court will confront the same issues again. In *Gibson*, this Court rejected the City's very same theory, reasoning that bifurcation could generate "two rounds of depositions and document production," that the City's prior production of similar materials reduced any incremental burden, and that disputes over requests claimed to be overbroad should be tailored through the meet-and-confer process and targeted judicial assistance—not a categorical stay. *Gibson v. City of Chicago*, No. 19 C 4152, 2021 U.S. Dist. LEXIS 100974, at *6–7 (N.D. Ill. Apr. 6, 2021) (Ellis, J.) (citation omitted); *see Maysonet v. Guevara*, 2020 U.S. Dist. LEXIS 102298, at *10 (N.D. Ill. June 11, 2020) ("[M]uch of the evidence required to litigate the individual claims will be relevant to the *Monell* claim and *vice a versa*, such that bifurcation could result in two rounds of depositions and document production."); *see, e.g.*, *Gomez v. Guevara*, 2019 U.S. Dist. LEXIS 155120, at *11 (N.D. Ill. 2019) (same).

**C. Defendants have not shown undue burden.**

Defendants describe *Monell* discovery as one that "dwarfs" the officer case, but the figures in

their own motion cut the other way. The City says it is roughly 70 percent through review, so most of the cost it invokes is already incurred. The enforcement history Defendants call overwhelming consists of "nearly 100" actions across five years in a city of millions. Matters 12 and 13, which Defendants say require "reviewing individual files one at a time," would involve review of roughly the same number of files. Dkt. 79 at 8. And Defendants' exhibits consist of requests, notices, objections, and correspondence; none quantifies hours, cost, or custodians. This Court rejected a very similar burden argument of these defendants; "the Court discounts the City's arguments of potentially burdensome and unnecessary discovery. Love indicates that the City has already turned over documents concerning its policies and procedures[.]" *Love*, 363 F. Supp. 3d at 875.

Moreover, courts in this District have repeatedly rejected the City's materially similar contention in motions for bifurcation, rejecting arguments that the burdens of *Monell* discovery warrant bifurcation. This Court in *Gibson* rejected the City's burden showing, reasoning that potential burden from broad requests warrants tailoring particular requests—not bifurcating the case—especially where the City has produced similar information before. 2021 U.S. Dist. LEXIS 100974, at *6–7; *see Cadle*, 2015 U.S. Dist. LEXIS 148344, at *5 ("The City is very familiar with this type of discovery, and the Court has no doubt that the City has produced similar information in other cases. The incremental burden of doing so again here does not militate heavily in favor of bifurcation."). At least ten decisions cited here rejected the City's efforts to bifurcate, stay, or prematurely terminate related *Monell* litigation, repeatedly concluding that overlapping proof, recurring discovery obligations, or speculative trial prejudice did not establish efficiency. Although each case turns on its own facts, that consistent experience undermines the City's unsupported prediction that ordinary *Monell* discovery will overwhelm this case.

The remaining disputes are narrowing, not expanding: Plaintiffs have agreed to narrow Matters, and the City concedes it "may ultimately need" a protective order. Dkt. 79 at 8. That is a

reason to resolve scope through targeted briefing on specific Matters or requests, as Rule 26(c) contemplates, not to stay a whole category of discovery. Nor is judicial economy served by deferring those disputes: if, as shown above, the IRFRA and free exercise claims survive any summary judgment ruling on the officers, the scope of *Monell* discovery will have to be decided anyway, later, and on a worse schedule. This is not the run-of-the-mill case the stay presupposes.

## II. BIFURCATION AND A STAY WOULD PREJUDICE PLAINTIFFS.

### A. Indemnification does not give Plaintiffs what their *Monell* claims seek.

Defendants' no-prejudice argument is that Plaintiffs "cannot recover additional compensatory damages" from the City. Dkt. 79 at 9–10. But Plaintiffs do not litigate against the City only for money. Plaintiffs seek declaratory and injunctive relief to "prevent future constitutional violations." Dkt. 58 at 24 (citation omitted); *see Estate of McIntosh v. City of Chicago*, 2015 U.S. Dist. LEXIS 116780, at *1, *9–10, 2015 WL 5164080 (N.D. Ill. Sep. 2, 2015) (noting that non-economic reasons exist for pursuing a *Monell* claim that are not addressed by entering a consent to judgment). An officer verdict therefore cannot provide all the relief sought in this case, much less render discovery into the existence, scope, administration, and comparative application of the practice unnecessary.

A judgment against the officers, indemnified or not, would neither reach nor remedy the practice recognized by this Court as forcing Plaintiffs to choose between their ministry and arrest. Dkt. 58 at 23–24. *Gibson* rejected materially the same attempt to reduce a *Monell* claim to indemnified damages. This Court held that a proposed consent to judgment did not eliminate prejudice because deterrence, accountability, justice, and institutional change are legitimate nonmonetary interests; a consent denying City wrongdoing "may have little deterrent effect"; and the plaintiff remained "the master of his complaint" entitled to pursue both individual and municipal liability. 2021 U.S. Dist. LEXIS 100974, at *8–10. Those considerations carry still greater force here because Plaintiffs seek prospective relief from an alleged ongoing practice.

**B. Defendants' indemnification assurances are incomplete.**

*Swanigan v. City of Chicago*, 775 F.3d 953 (7th Cir. 2015), on which Defendants rely, involved a City stipulation to indemnify the officers for compensatory damages, to pay reasonable attorney's fees and costs, and to pay nominal damages on the *Monell* claim. Even then, the Seventh Circuit *vacated* the dismissal of the *Monell* suit. The remark Defendants quote was dicta from a case in which the *Monell* claim was already severed, as Defendants acknowledge. Dkt. 79 at 9 n.1. Here the City offers no stipulation. It points to a statute and to a collective bargaining agreement. 745 ILCS 10/9-102 directs payment of compensatory damages but provides only that a municipality "may pay" associated attorney's fees and costs, so fee indemnification is discretionary. *Winston v. O'Brien*, 773 F.3d 809 (7th Cir. 2014). It accordingly does not fully resolve even the financial claims. Nor have Defendants shown that any of the six Defendant Officers is a member of the bargaining unit covered by the Chicago Lodge No. 7 agreement they cite. They identify no evidence of membership, coverage, or entitlement to indemnification under that agreement. The agreement therefore cannot substitute for a binding stipulation applicable to every Defendant Officer and every category of relief on which Defendants ask the Court to rely.

**C. A stay would force Plaintiffs to oppose summary judgment without evidence to which they are entitled.**

If Defendants move for summary judgment on probable cause, retaliatory motive, or substantial burden before comparator, training, enforcement-history, and Rule 30(b)(6) discovery is complete, Plaintiffs will be required to oppose the motion without evidence bearing directly on those issues. Comparator records are necessary to invoke the *Nieves* exception; training and supervisory direction bear on what the officers understood and why separate groups of officers responded alike; and citywide enforcement evidence bears on whether religious amplification was treated differently and whether the alleged practice created a continuing burden. Much of that evidence is controlled exclusively by the City.

Plaintiffs would therefore have to seek relief under Rule 56(d), identifying the withheld evidence and asking the Court to defer or deny summary judgment until discovery is completed. A Rule 56(d) motion would not be a remote possibility; it would be the ordinary consequence of Defendants moving for judgment on the same issues for which they simultaneously refuse to provide discovery. The Court would first have to adjudicate the Rule 56(d) request, then supervise the delayed discovery, and then receive renewed summary-judgment briefing. The proposed stay thus creates the very motion practice, expense, and delay that Defendants invoke as reasons for bifurcation.

## III. Bifurcation for Trial Is Premature and Unnecessary.

Defendants concede the case "may never reach trial." Dkt. 79 at 11. Rule 42(b) separate trials can be ordered at any time, and whether one is needed is best decided at the final pretrial conference, on a developed record, with motions in limine. *Jackson v. City of Chicago*, No. 14 C 6746, 2017 U.S. Dist. LEXIS 203937, at *9 (N.D. Ill. Dec. 12, 2017) ("[T]he better time to evaluate [prejudice from trying individual and *Monell* claims together] is shortly before trial, when the court (and the parties) will have a much better understanding of the evidence and its relevance to the individual and *Monell* claims.").

Defendants' own description undercuts the claimed "contamination": they describe the officer claims as simple and recorded on body-worn cameras, state those claims "would allow for a short and concise trial," and note that they involve the same Ordinance enforced against the same kind of speaker. Dkt. 79 at 11. That is not the sprawling collection of "various acts of alleged police misconduct committed by numerous non-party officers" that concerned the courts in the decisions Defendants cite. *Id.* (citation omitted). The probative value of how CPD enforces this one Ordinance extends to the officers' claims, as shown in Part I.B. Any residual risk of confusion can be addressed by limiting instructions. *Weeks v. Angelone*, 528 U.S. 225, 234 (2000).

*Jackson* supplies the appropriate course: deny the present request to bifurcate trial without prejudice to a targeted request closer to trial, when the claims, evidence, and genuine risks of prejudice

are known. 2017 U.S. Dist. LEXIS 203937, at *9. Defendants ask the Court to decide, before discovery is complete, that unidentified evidence will confuse a jury at a trial that may never occur. That speculation cannot justify restructuring discovery today. If the case proceeds to trial, the Court can then assess whether limiting instructions, evidentiary rulings, special verdict forms, sequencing particular issues, or—only if necessary—separate trials would address any concrete prejudice. As in *Gibson*, deferring that determination preserves every trial-management tool without imposing the immediate cost and prejudice of Defendants' proposed stay. "[T]he Court cannot determine at this time the evidence the parties intend to introduce at trial, making it difficult to assess the potential prejudice" of trying *Monell* and individual claims together. 2021 U.S. Dist. LEXIS 100974, at *10.

## IV. THERE IS NO BASIS FOR A STAY WHILE THE MOTION IS PENDING.

Only this Court can stay discovery. A pending motion cannot, by its own weight, do so, and Defendants offer no particularized reason for a stay here. With fact discovery set to close December 1, 2026, a stay during briefing would grant most of the relief Defendants seek before the Court decides the motion. Defendants' concerns about scope are better addressed by the process the parties are already engaged in: continued conferral over the Rule 30(b)(6) matters, with specific disputes brought to the Court as needed. *Gibson* confirms that approach. Faced with overlapping proof, asserted discovery burden, speculative trial prejudice, and a proposed financial substitute for litigating municipal liability, this Court denied both bifurcation and the stay, while directing that any genuinely overbroad requests be narrowed through ordinary discovery procedures. 2021 U.S. Dist. LEXIS 100974. Alternatively, even if the Court orders bifurcation, Plaintiffs request that *Monell* discovery proceed to avoid unnecessary delay and duplicative proceedings for the reasons set forth above.

## CONCLUSION

Plaintiffs respectfully request that the Court deny Defendants' Joint Motion.

Dated: October 26, 2026

Respectfully submitted,

By: /s/ Nathan J. Moelker*
Nathan J. Moelker*
Stuart J. Roth
Liam R. Harrell**
Lindsey C. Bachman**
AMERICAN CENTER FOR LAW & JUSTICE
201 Maryland Avenue, NE
Washington, D.C. 20002
Tel: (202) 641-9160
Fax: (202) 546-9309
Email: nmoelker@aclj.org
lharrell@aclj.org
lbachman@aclj.org

Geoffrey R. Surtees*
AMERICAN CENTER FOR LAW & JUSTICE
PO Box 60
New Hope, KY 40052
Tel: (502) 827-0951
Email: gsurtees@aclj.org

*Admitted to this Court's General Bar
** Admitted *Pro Hac Vice*

*Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies that on October 26, 2026, he caused a copy of the foregoing Plaintiffs' Response to Defendants' Motion to Bifurcate to be e-filed using the CM/ECF e-filing system which will serve all parties of record.

*/s/ Nathan J. Moelker*