**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| BRETT RAIO, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 1:25-cv-02709 |
| | ) | |
| v. | ) | Honorable Sara L. Ellis |
| | ) | |
| CITY OF CHICAGO, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' JOINT REPLY IN SUPPORT OF MOTION TO BIFURCATE PLAINTIFFS' *MONELL* CLAIMS AND STAY *MONELL* DISCOVERY PENDING SUMMARY JUDGMENT**

Defendants Officers Mario L. Jackson, Nico A. Sutor, Michael P. Joyce, and William E. Gatlin, Sergeant Carlos R. Camey Sandoval, Lieutenant Michael Petraski (the "Defendant Officers"), and the City of Chicago, by their attorneys, file this Reply in support of their Motion to Bifurcate Plaintiffs' *Monell* Claims and Stay *Monell* Discovery Pending Summary Judgment (ECF No. 79) (the "Motion").

## INTRODUCTION

*Monell* discovery in this case is and will be burdensome to the parties and the Court. Plaintiffs do not deny this obvious fact. And that Defendants have completed some of that discovery in its good faith effort to resolve this case is not a reason to ignore that burden; it only confirms the burden is real. Bifurcation provides relief by potentially obviating the need to litigate and resolve Plaintiffs' claims against the City.

In their Response, Plaintiffs instead argue that their claims against the City can be wholly detached from the foundation of their case—their encounter with the Defendant Officers—and that *Monell* discovery overlaps with discovery they need to litigate their individual claims.

Neither argument holds water. If the Defendant Officers did not violate their rights, Plaintiffs' claims against the City based on a purported widespread and unwritten practice cannot survive unhinged from any instance of the practice itself. Further, the two discrete categories of discovery that Plaintiffs assert are relevant to their claims against the Defendant Officers—comparator and training evidence—have been provided already. In any case, carveouts for discrete *Monell* discovery are not a reason to deny bifurcation altogether.

## ARGUMENT

### I. Bifurcation Would Promote Litigation Efficiency.

#### A. The *Monell* Claims Depend on the Claims Against the Defendant Officers.

Bifurcation is efficient because Plaintiffs' claims against the City can be dismissed if their claims against the Defendant Officers are dismissed. That two-for-one rule is well-established in this Circuit: "[A] municipality cannot be liable under *Monell* when there is no underlying constitutional violation by a municipal employee." *Sallenger v. City of Springfield, Ill.*, 630 F.3d 499, 504 (7th Cir. 2010).

Plaintiffs invoke the narrow exception to that rule from *Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293 (7th Cir. 2010),[1] which allows municipal liability where such liability would not be inconsistent with a verdict in favor of individual defendants. *Id.* at 305. But municipal liability would be inconsistent here. Plaintiffs' arguments to the contrary fail for several reasons.

[1] Plaintiffs fault Defendants for describing the holding from *Thomas* as an "exception," ECF No. 83 at 5, but that is exactly how courts in this district refer to *Thomas*'s holding. *See, e.g.*, *Lyons v. City of Chicago*, 20-CV-03412, 2023 WL 2390364, at *4 (N.D. Ill. Mar. 7, 2023) (referring to a "*narrow* exception" (emphasis in original)). And the Seventh Circuit has itself made clear that *Thomas* only applies "[i]n *some* civil-rights cases." *Swanigan v. City of Chicago*, 775 F.3d 953, 962 (7th Cir. 2015) (emphasis added). *Thomas* itself involved a jail medical-care claim in which the alleged injury flowed from systemic failures, not from the defendant officers' own acts. 604 F.3d at 305.

First, Plaintiffs' attempt to divorce several of their claims—e.g., Counts II (free exercise) and V (IRFRA)—from their encounters with the Defendant Officers is unavailing. Plaintiffs argue that those claims would survive against the City even without a constitutional violation by the Defendant Officers because the City's unwritten policy or practice imposes its own, independent burden against Plaintiffs' religious exercise. ECF No. 83 at 6. But that defies both the law in this district and common sense. In *Williams v. City of Chicago*, for example, the district court concluded that the *Thomas* exception was inapplicable because "[a]ny harm caused by a policy or practice . . . could only manifest itself through the Officers." 315 F. Supp. 3d 1060, 1081 (N.D. Ill. 2018) (Kendall, J.). Same here. The alleged policy against street preachers does not burden Plaintiffs' exercise of religion or otherwise violate their constitutional rights except through its alleged enforcement against them. That is consistent with Plaintiffs' own allegations. *See* ECF No. 17 (First Amended Complaint) ¶ 127 ("Ordering Plaintiffs to cease using amplification and arresting them for doing so substantially burdened their exercise of religion."). And contrary to Plaintiffs' insistence otherwise, this Court recognized that any burden resulting from the alleged policy would have been "[b]ecause of this targeted enforcement" against them, ECF No. 58 at 23–24—not because of the policy in a vacuum.[2]

As for common sense, the Court need only consider the simple hypothetical posed by *Thomas*, i.e., a favorable verdict for the Defendant Officers. That Plaintiffs would still be affected by just an "unwritten policy"—one that is necessarily defined by conduct or practice—where no conduct or practice against them pursuant to that policy is at issue is nonsensical. After all, "it is necessary in a free exercise case for one to show the coercive effect of the enactment *as*

[2] The Court's description of the "choice" offered to Plaintiffs by the alleged unwritten policy confirms this reading: "abstain from amplified street preaching or engage in the practice and risk *more* citations and arrests." ECF No. 58 at 17 (emphasis added). It is the prior, and allegedly improper, "citations and arrests" that create the burden.

*it operates against him* in the practice of his religion." *Sch. Dist. of Abington Twp., Pa. v. Schempp*, 374 U.S. 203, 223 (1963) (emphasis added). In other words, all that would remain after a finding that Plaintiffs' citation and arrest were proper and not an impermissible burden on their religious exercise is that Plaintiffs *were* able to exercise their religion regardless of any alleged unwritten policy or practice. No coercive effect remains.

Second, Plaintiffs argue that their First Amendment retaliation claim (Count I) would also survive against the City post-favorable verdict for the Defendant Officers. *See* ECF No. 83 at 8. A retaliation claim requires that "the First Amendment activity was 'at least a motivating factor' in the Defendants' decision to take the retaliatory action." *FKFJ, Inc. v. Vill. of Worth*, 11 F.4th 574, 585 (7th Cir. 2021) (citation omitted). Here, the unwritten policy or practice is the only adverse action independent of officer conduct upon which Plaintiffs could hang a retaliation claim against the City, but both incidents allegedly resulted from that policy—not the other way around. *See* ECF No. 17 ¶ 102. Any retaliation claim against the City for the alleged policy itself would therefore fail because Plaintiffs' speech came after—and was not a motivating factor of—the institution of the policy. *See Diadenko v. Folino*, 741 F.3d 751, 756 (7th Cir. 2013). Accordingly, *Monell* liability under Count I can only result from the alleged actions (i.e., retaliatory arrest) of the Defendant Officers, and the *Thomas* exception does not apply.

Third, Plaintiffs argue that the possibility of qualified immunity for the Defendant Officers allows for an independent verdict against the City. ECF No. 83 at 9–10. But that argument fails for multiple reasons. To begin, that result is avoidable. Defendants' motion will ask the Court to decide whether any constitutional violation occurred, not merely whether the law was clearly established. The Court has discretion to reach the merits prong first. *Pearson v.*

*Callahan*, 555 U.S. 223, 236 (2009). A merits ruling for the officers would end the *Monell* claims.

Moreover, that result is also foreclosed by the particular immunity at issue here and well-reasoned caselaw. As Plaintiffs acknowledge, the qualified immunity inquiry here generally turns on whether the Defendant Officers had "arguable probable cause." ECF No. 83 at 10 "Arguable probable cause" exists where "a reasonable police officer in the same circumstances and . . . possessing the same knowledge as the officer in question *could* have reasonably believed that probable cause existed in light of well-established law." *Humphrey v. Staszak*, 148 F.3d 719, 725 (7th Cir. 1998) (citation omitted) (emphasis in original).

Courts, including in this district, have held that a finding of "arguable probable cause" for individual defendants precludes *Monell* liability as a matter of causation. In *Schaffer v. Beringer*, 842 F.3d 585 (8th Cir. 2016), the plaintiffs were two individuals arrested following a traffic stop who sued the officers and brought a *Monell* claim, alleging a policy "authorizing officers to perform [certain] arrests with less than probable cause." *Schaffer*, 842 F.3d at 597. After finding that the officers were entitled to arguable probable cause, the Eighth Circuit concluded that the plaintiffs' *Monell* claim failed as well, explaining that "[b]ecause the officers had arguable probable cause, the [plaintiffs] cannot show that the alleged policy or failure to train was the moving force behind or the actual cause of the alleged violation."[3] *Id.* at 597. A court in this district reached the same conclusion in *Lindsey v. Orlando*, 232 F. Supp. 3d 1027 (N.D. Ill. 2017) (Pallmeyer, J.). In *Lindsey*, the plaintiff similarly brought individual and *Monell* claims, alleging a policy of "encourage[ing] officers to make arrests without a legitimate basis." 232 F.

[3] "[A] *Monell* plaintiff must prove that the municipality's action was the 'moving force' behind the federal-rights violation." *First Midwest Bank Guardian of Estate of LaPorta v. City of Chicago*, 988 F.3d 978, 987 (7th Cir. 2021)

Supp. 3d at 1033–34. Ruling on the City and officers' request for bifurcation, the *Lindsey* court rejected the *Thomas* exception, explaining that it "has doubts that the City's [policy] could make an officer's mistake about the existence of probable cause *objectively* reasonable, thereby causing an officer to have qualified immunity on that basis but leaving the City open to liability for the bad policy." *Id.* at 1036.

The reasoning of *Schaffer* and *Lindsey* applies here. A finding of arguable probable cause for the Defendant Officers requires an objectively reasonable, but mistaken, belief that probable cause existed. It would make no sense to find that an alleged policy or practice to cite all street preachers regardless of probable cause, *see* ECF No. 17 ¶ 87, was the moving force behind an arrest or citation in which a reasonable officer would have believed probable cause existed.[4] Thus, even if there was no such policy or practice, Plaintiffs may very well have been arrested or cited anyways, and qualified immunity does not enable the *Thomas* exception here.

**B. *Monell* Discovery is Disproportionate to the Claims in this Case.**

Bifurcation is also efficient because it avoids *Monell* discovery, and Plaintiffs do not dispute that such discovery is burdensome. Instead, Plaintiffs argue that: (1) two categories of discovery needed for the individual claims overlap with *Monell* discovery; and (2) Defendants have already done most of the work, so no burden remains. *See* ECF No. 83 at 10–14. Neither argument is persuasive.

First, Plaintiffs argue that staying *Monell* discovery would prevent them from receiving two categories of evidence necessary to litigate their individual claims—"comparator evidence" and "training, direction, and enforcement history." But identifying two discrete categories of

---

[4] Even if the subjective intent of the Defendant Officers was relevant for *Monell* liability, whether any particular officer arrested or cited Plaintiffs in order to enforce the alleged policy is a matter of individual, not *Monell*, discovery—which Defendants do not request the Court to stay.

overlapping evidence is not a reason to deny bifurcation and continue the remaining extensive and burdensome *Monell* discovery. *See* ECF No. 79 at 7–8. That would throw the baby out with the bathwater. At best, it is a reason to carve out those categories from the otherwise stayed discovery. In any case, neither category warrants denial of the Motion.

As to "comparator evidence," Plaintiffs contend they need such evidence to address their argument that the probable cause exception under *Nieves v. Bartlett*, 587 U.S. 391, 407 (2019) applies. ECF No. 83 at 10. The *Nieves* exception is "very narrow." *Lund v. City of Rockford*, 956 F.3d 938, 944 (7th Cir. 2020). *Nieves* allows consideration of "objective evidence that [the plaintiff] was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been." *Nieves*, 587 U.S. at 407. The Supreme Court gave the example of "jaywalking," which "is endemic but rarely results in arrest." *Id.* Thus, to "squeeze[ ] through the crack of an opening that *Nieves* left ajar," Plaintiffs would have to show that the Ordinance is not typically enforced, and so its enforcement against them, even with probable cause, suggests a motive to retaliate against them for their speech. *Lund*, 956 F.3d at 944.

But Plaintiffs admit they have already received the "nearly 100 enforcement actions" taken under the Ordinance, ECF No. 83 at 4, which are dispositive of whether "otherwise similarly situated individuals" were arrested or cited. Moreover, Plaintiffs' insistence that they must be allowed to investigate all "complaints and 911 calls that produced no enforcement" through a Rule 30(b)(6) deposition—rather than through written discovery—is only further proof of how burdensome their *Monell* discovery would be. ECF No. 83 at 10.

As to "training, direction, and enforcement history," Plaintiffs argue that such materials are necessary to understand "what a reasonable officer would have understood." ECF No. 83 at 11. But again, "CPD directives, general orders, and training materials relevant to the First and

Fourth Amendments and to ordinance enforcement" have already been produced. ECF No. 79 at 3. Plaintiffs do not specify what more is needed, and they will have ample opportunity to question the six Defendant Officers (who include supervisors) about their training.

Second, Plaintiffs argue that bifurcation would not avoid burdensome discovery because Defendants have already completed much of their written discovery. ECF No. 83 at 12–13. Plaintiffs do not, however, deny that the remaining *Monell* discovery—written, testimonial, expert, etc.—will be burdensome. *See* ECF No. 79 at 4. Indeed, courts in this district have rejected the argument "that much of the discovery in the case is complete" as a reason to forgo bifurcation. *Bradford v. City of Chicago*, 16 CV 1663, 2019 WL 5208852, at *5 (N.D. Ill. Oct. 16, 2019). That is because courts also "disfavor[] bifurcation motions filed prior to discovery." *Id.* Here, Defendants have undertaken discovery in good faith and now request bifurcation based on their understanding of the actual burden Plaintiffs' requests for *Monell* discovery pose.

Moreover, Plaintiffs' reliance on this Court's decision in *Gibson v. City of Chicago*, 19 C 4152, 2021 WL 2127182 (N.D. Ill. Apr. 6, 2021) is unfounded. In *Gibson*, this Court explained that bifurcation would not aid judicial economy because "the City has already produced some of the requested information in other cases." *Id.*, at *2. Plaintiffs do not make that argument here.

### C. Bifurcation Will Conserve the Court's Resources.

Finally, bifurcation is efficient because it avoids the need for judicial intervention to resolve *Monell* discovery disputes and to decide the substantive *Monell* issues themselves. ECF No. 79 at 8–9. Plaintiffs do not dispute that such judicial intervention would burden the Court.

## II. Bifurcation Will Not Prejudice Plaintiffs.

Plaintiffs are not prejudiced by bifurcation because either their claims against the Defendant Officers fail and they would not recover from either the officers or the City; or they prevail against the Defendant Officers and can subsequently pursue their desired recovery

against the City regardless.[5] And prejudice does not generally flow from just having to wait for resolution. *See Theta IP, LLC v. Motorola Mobility LLC*, No. 22-cv-3441, 2025 WL 3679827, at *2 (N.D. Ill. Apr. 23, 2025) (regarding a motion to stay, "the Court can discount the general prejudice of having to wait for resolution." (cleaned up)). Plaintiffs' arguments for prejudice otherwise fail.

First, as to indemnification, Plaintiffs argue that their recovery against the Defendant Officers would not satisfy their non-monetary requests. ECF No. 83 at 14. However, "bifurcation is not dismissal," *Carr v. City of N. Chicago*, 908 F. Supp. 2d 926, 935 (N.D. Ill. 2012), and Plaintiffs will still be able to pursue those non-monetary interests in a later phase of litigation, if they prevail against the Defendant Officers. Further, at least two courts in this district have concluded that a monetary award would effect the same institutional change desired regardless. *See Williams v. City of Chicago*, 315 F. Supp. 3d 1060, 1084 (N.D. Ill. 2018); *Carr*, 90 F. Supp. 2d at 935. Finally, Plaintiffs' request for injunctive relief against the Defendant Officers would remain in Phase One and vindicate much the same interest. *See* ECF No. 17 at 18.

Plaintiffs' reference to this Court's decision in *Gibson* is again inapposite. In *Gibson*, the City proposed a "Limited Consent" effectively allowing for indemnification of individual officers. *Gibson*, 2021 WL 2127182, at *2. There, the Court determined the consent "may have little deterrent effect" because it "denie[d] any wrongdoing on the City's part." *Id.* Defendants have not proposed that same arrangement here.

Second, Plaintiffs complain that indemnification would not cover their attorneys' fees. ECF No. 83 at 15. Plaintiffs' counsel, the American Center for Law and Justice ("ACLJ"), represents its clients "free of charge." *Get Legal Help*, Am. Ctr. for Law & Just.,

---

[5] Plaintiffs do not dispute that they may, in fact, be prejudiced *without* bifurcation. *See* ECF No. 79 at 10.

https://aclj.org/get-legal-help/get-our-legal-help (last visited Nov. 2, 2026).[6] Accordingly, a lack of attorneys' fees does not prejudice Plaintiffs themselves.

Third, Plaintiffs argue that a stay of discovery would prevent them from opposing summary judgment. ECF No. 83 at 15–16. As discussed above, *see* Part I.B, Plaintiffs have already received the discovery they contend overlaps with their *Monell* claims. And while Plaintiffs lament that they will be forced to seek relief under Federal Rule of Civil Procedure 56(d) when the time comes, the Court and parties can determine the scope of the stay now, if needed; they need not wait to create inefficiencies down the line, as Plaintiffs propose.

**III. Bifurcation For Trial Is Necessary to Avoid Unfair Prejudice To Defendants.**

As to bifurcation of trial, Plaintiffs primarily argue that the Court need not decide the issue now, relying on *Jackson v. City of Chicago*, 14 C 6746, 2017 WL 8199322 (N.D. Ill. Dec. 12, 2017). ECF No. 83 at 16–17. But the *Jackson* court held off on bifurcating the trial for "when the court (and the parties) will have a much better understanding of the evidence and its relevance to the individual and *Monell* claims." *Jackson*, 2017 WL 8199322, at *3. Here, the Court has already been provided with that understanding of the evidence through this briefing and the *Monell* discovery that Plaintiffs both seek and have already received. It need not wait for another day to decide what can be decided efficiently now.

Moreover, Plaintiffs only argument as to the prejudice that Defendants will face is that straightforward claims against the Defendant Officers do not involve the kind of "sprawling" evidence that cause confusion. ECF No. 83 at 16. But Plaintiffs miss the point. Litigating the *Monell* claims *will* involve that sprawling evidence, and doing so alongside the individual officer claims is what will "contaminate the mind of the finder of fact." *Ojeda-Beltran v. Lucio*, No. 07

[6] Jay Sekulow, *ACLJ Mission*, https://jaysekulow.com/aclj-mission/index.html (last visited Nov. 2, 2026) ("As a non-profit organization, the ACLJ does not charge for its services[.]").

C 6667, 2008 WL 2782815, at *3 (N.D. Ill. July 16, 2008). "[T]hat prejudice alone can justify bifurcation." *Bradford*, 2019 WL 5208852, at *4.

## CONCLUSION

Defendants respectfully request that the Court: (1) bifurcate Plaintiffs' *Monell* claims against the City; (2) stay all remaining *Monell* discovery, including Rule 30(b)(6) depositions and the deposition of Sergeant Tomasz Zatora, pending the Court's ruling on Defendants' motion for summary judgment on Plaintiffs' claims; (3) stay *Monell* discovery while the Motion to Bifurcate is pending; (4) enter the schedule proposed in the Motion to Bifurcate; and (5) grant such further relief as the Court deems just.

Date: November 2, 2026

Respectfully submitted,

RENEE CAMILLE HATCHER,
Acting Corporation Counsel for
the City of Chicago

By: <u>*/s/ Ellen W. McLaughlin*</u>
Chief Assistant Corporation Counsel

ELLEN W. MCLAUGHLIN
ellen.mclaughlin@cityofchicago.org
HANNAH L. PITCHER
hannah.pitcher@cityofchicago.org
City of Chicago Department of Law
2 North LaSalle Street, Suite 520
Chicago, Illinois 60602
(312) 742-5147 / -6238
*Attorneys for Defendant City of Chicago*

ERIC SEELEMAN
eric.seeleman@cityofchicago.org
NURA ZAKI
nura.zaki@cityofchicago.org
City of Chicago Department of Law
2 North LaSalle Street, Suite 420
Chicago, Illinois 60602
(312) 742-3902
*Attorneys for Defendant Officers*